## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND and INDIANA CARPENTERS WELFARE FUND, | ) ) ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-00046-S |
| | ) ) | |
| CVS HEALTH CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

### DEFENDANT CVS HEALTH CORPORATION'S MOTION TO DISMISS

Defendant CVS Health Corporation ("CVS") moves to dismiss with prejudice and in its entirety the Complaint of Plaintiffs Sheet Metal Workers Local No. 20 Welfare and Benefit Fund and Indiana Carpenters Welfare Fund (collectively, "Indiana Funds" or "Plaintiffs").

CVS makes its motion pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) and relies on the attached Memorandum of Law of in Support of CVS's Motion to Dismiss ("Memorandum of Law") and the Declaration of Grant A. Geyerman (including two appended exhibits) ("Geyerman Declaration").

For the reasons set forth in its Memorandum of Law and the Geyerman Declaration, CVS respectfully requests the Court to dismiss with prejudice the Indiana Funds' Complaint, in its entirety, and grant such other relief as the Court deems just and proper.

CVS respectfully request oral argument.

1

Dated: April 8, 2016

Respectfully submitted,

By: /s/Robert C. Corrente
Robert C. Corrente
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street; Suite 710
Providence, RI 02903
Telephone:  (401) 270-4500
Facsimile: (401) 270-3760
RCorrente@wckslaw.com

Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lshur@wc.com
ggeyerman@wc.om

*Attorneys for CVS Health Corporation*

## CERTIFICATE OF SERVICE

I certify that on April 8, 2016, **CVS HEALTH CORPORATION'S MOTION TO DISMISS** was filed electronically and is available for viewing and downloading from the ECF.

Dated: April 8, 2016                    By: /s/Robert C. Corrente

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND and INDIANA CARPENTERS WELFARE FUND, | ) ) ) ) | |
| Plaintiffs, | ) ) | **ORAL ARGUMENT REQUESTED** |
| v. | ) ) | Case No. 1:16-cv-00046-S |
| CVS HEALTH CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CVS HEALTH CORPORATION'S MOTION TO DISMISS**

Robert C. Corrente
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street; Suite 710
Providence, RI 02903
Telephone:  (401) 270-4500
Facsimile:  (401) 270-3760
RCorrente@wckslaw.com

Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
emainigi@wc.com
lshur@wc.com
ggeyerman@wc.com

*Attorneys for CVS Health Corporation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND........................................................................................3
      A.      Background On Prescription Drugs And Pharmacy Claims.....................3
      B.      The Health Savings Pass Program. ........................................................5
      C.      This Case.................................................................................................6

ARGUMENT..............................................................................................................7
I.      THE COMPLAINT DOES NOT PLEAD THE INDIANA FUNDS' CLAIMS
      WITH THE PARTICULARITY RULE 9 REQUIRES......................................7

II.     CONSTITUTIONAL REQUIREMENTS OF DUE PROCESS AND ARTICLE
      III STANDING BAR THE INDIANA FUNDS FROM PROSECUTING ANY
      CLAIMS OTHER THAN THOSE ARISING UNDER INDIANA LAW..........9

III.    THE INDIANA FUNDS' STATUTORY CLAIMS FAIL FOR MULTIPLE
      OTHER REASONS. ...................................................................................13
      A.      The Indiana Funds Have Not Alleged The Elements Of Each Consumer
            Protection Statute Cited In The Complaint............................................14
      B.      The Indiana Funds Have No Claim Under Indiana's Statute. ................15
            1.      The Indiana Funds are not suing for damages suffered "as a
                  consumer." ................................................................................15
            2.      The Indiana Funds fail to state a claim for prescriptions purchased
                  prior to July 1, 2014................................................................18
      C.      The Indiana Funds Cannot State Claims Under Twenty-Nine Other
            Statutes...................................................................................................20
            1.      The Indiana Funds have no claim under the twenty-five statutes
                  expressly requiring residence or injury within the relevant state. ............20
            2.      Eleven statutes limit suits to consumers or natural persons, which
                  the Indiana Funds are not.........................................................21
            3.      Six statutes bar class actions. ..................................................23

IV.    THE INDIANA FUNDS' COMMON LAW CLAIMS FAIL ON THE MERITS. ..........24
      A.      The Indiana Funds Common Law Claims Are Disguised Contract Claims. .........24
      B.      The Negligent Misrepresentation Claim Fails For Two Additional
            Reasons. ................................................................................................28
      C.      The Unjust Enrichment Claim Fails. ....................................................31

CONCLUSION.........................................................................................................31

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................12

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009) ...............................24

*Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13 (1st Cir. 2002) .......................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................14

*Baker v. Elam*, 883 F. Supp. 2d 576 (E.D. Va. 2012) ...................................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................14

*Bulldog N.Y. LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 166 (D. Conn. 2014) ...............21

*Carlson v. Gillette Co.*, 2015 WL 6453147 (D. Mass. Oct. 23, 2015) ...........................8

*Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, 2009 WL 3245485 (D.N.J. Oct. 7, 2009) ...................................................................................................................17, 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005) ...............................................................11

*City of Findlay v. Hotels.com, L.P.*, 441 F. Supp. 2d 855 (N.D. Ohio 2006) ...............23

*Corcoran v. CVS Health Corp.*, --- F. Supp. 3d ----, 2016 WL 948880 (N.D. Cal. Mar. 14, 2016) .......................................................................................................6

*Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585 (W.D. Wash. Mar. 9, 2009) ...................................................................................................................12

*Davis v. FEC*, 554 U.S. 724 (2008) ...............................................................................10

*Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399 (N.D. Ill. 1996) ......21

*Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144 (D.N.J. 2015) ...................................19

*Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304 (D.N.J. 2014) ....................................19

*Enercon v. Glob. Comput. Supplies, Inc.*, 675 F. Supp. 2d 188 (D. Me. 2009) ............22

*Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006) ..........................12

*Friedman v. Dollar Thrifty Auto Grp.*, 2013 WL 5448078 (D. Colo. Sept. 27, 2013) ...................................................................................................................21

ii

*Grovatt v. St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005) ........................................15

*Haft v. Eastland Fin. Corp.*, 755 F. Supp. 1123 (D.R.I. 1991)....................................7, 8

*In re Actimmune Mktg. Litig.*, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .........................12

*In re Actiq Sales and Marketing Practices Litigation*, 790 F. Supp. 2d 313 (E.D. Pa. 2011) ................................................................................................................18

*In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251 (D. Conn. 2015) ....................................13

*In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*, 495 F. Supp. 2d 1027 (N.D. Cal. 2007) ................................................................18

*In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002) ........................................15

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013).............................................................................................................11

*In re Digitek Prods. Liab. Litig.*, 2010 WL 2102330 (S.D. W. Va. May 25, 2010) ......................21

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007)...................................12

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308 (D.N.J. Oct. 2, 2013)...................................................................................12

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................12

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................................................................................................10, 12

*In re Herley Indus. Inc. Sec. Litig.*, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009).........................11

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.* 1 F. Supp. 3d 34 (E.D.N.Y. 2014)..............................................................................................................11

*In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ..............12, 21

*In re Motor Fuel Temperature Sales Practices Litig.*, 2012 WL 1672994 (D. Kan. May 14, 2012)................................................................................................................23

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014)...............................................11

*In re OnStar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich. 2009).........................................21

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)................................12

*In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365 (E.D. Mich. July 17, 2012).....................................................................................................................11

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ...........................4, 17, 22

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL
   2043604 (D.N.J. 2009)......................................................................................................17, 22

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570
   (D. Mass. Sept. 16, 2015) .....................................................................................................12

*In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 5607600 (D. Kan. Sept. 11,
   2015) .....................................................................................................................................21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728 (N.D. Cal. June
   29, 2010) ..........................................................................................................................10, 12

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)....................................12, 13

*Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, 2014
   WL 2115498 (E.D. Pa. May 21, 2014) .............................................................................15, 21

*Lewis v. Casey*, 518 U.S. 343 (1996) ...........................................................................................10

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................................................12

*Mahon v. Ticor Title Ins.*, 683 F.3d 59 (2d Cir. 2012)...................................................................13

*Marshall v. Scotia Prince Cruises Ltd.*, 2003 WL 22709076 (D. Me. Nov. 17,
   2013) .....................................................................................................................................21

*Miller v. U.S. Steel Corp.*, 902 F.2d 573 (7th Cir. 1990)...............................................................25

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683
   (W.D. Ky. 2010) ....................................................................................................................22

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8 (1st
   Cir. 2009)...........................................................................................................................8, 31

*Nash v. GMAC Mortg., LLC*, 2011 WL 2470645 (D.R.I. May 18, 2011)................................8, 29

*New England Data Servs., Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987) .......................................9

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014).....................................................29

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..........................................................................12

*Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) .......................................11

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) .......................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011)....................................................................................................9

*Protegrity Corp. v. Paymetric, Inc.*, 2014 WL 3849972 (D. Conn. Aug. 5, 2014) ................14, 15

*Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636 (N.D. Ill. 2015) ...............................................23, 24

*S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009).......................................................................................17

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) (en banc) ..............................................................8

*Sherman v. Ben & Jerry's Franchising, Inc.*, 2009 WL 2462539 (D. Vt. Aug. 10, 2009) ...................................................................................................................................21

*Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333 (N.D. Ohio 1991) ..........................21

*Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997).........................................................................7

*Tecnomatic, S.P.A. v. Remy, Inc.*, 2012 WL 2376066 (S.D. Ind. June 22, 2012).........................27

*Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007).....................12

*Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011)....................19

*U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116 (1st Cir. 2013) ........................................8, 9

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412 (D. Mass. 2015) ....................................................................................................................................6

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398 (S.D.N.Y. 2014) ....................................................................................................................................6

*W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329 (D.R.I. 2012) ..................................................................................................................................29

*W. Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270 (D.R.I. 2010) (Smith, J.) ...............................................................................................26, 27

*Warth v. Seldin*, 422 U.S. 490 (1975)...........................................................................................12

*Williams v. Davey Tree Expert Co.*, 2010 WL 3490992 (M.D. Fla. Aug. 16, 2010) .............14, 15

*Winer Family Tr. v. Queen*, 503 F.3d 319 (3d Cir. 2007) ...........................................................11

## STATE CASES

*Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365 (1997)........................................25

*Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218 (Ariz. 1987) .......................................25

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986 (Wash.
    1994) (en banc) ..............................................................................................................27

*Boston Inv. Prop. No. 1 State v. E.W. Bruman, Inc.*, 658 A.2d 515 (R.I. 1995) .....................25, 28

*Cal. Grocers Ass'n. v. Bank of Am.*, 22 Cal. App. 4th 205 (1994) ..........................................17, 22

*City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809 (N.J. Super. Ct. App.
    Div. 1990) ......................................................................................................................22

*Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So.2d 1012 (Fla. 3d DCA 1999) ......................25

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2d Dist. 2009) ...............................................21

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701 (Ohio 2005) ....................28

*Cromwell v. Allen*, 151 Ill. App. 404 (Ill. App. Ct. 1909) ...........................................................25

*Dema v. Tenet Physician Servs.–Hilton Head, Inc.*, 678 S.E.2d 430 (S.C. 2009) ........................24

*Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623 (Ind. Ct. App. 1983) ......................................28

*Engelbrecht v. Prop. Developers, Inc.*, 296 N.E.2d 798 (Ind. Ct. App. 1973) .............................27

*Estate of Braswell ex rel. Braswell v. People's Credit Union*, 602 A.2d 510 (R.I.
    1992) ..............................................................................................................................28

*eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002) ................................25

*Franklin Grove Corp. v. Drexel*, 936 A.2d 1272 (R.I. 2007) ............................................25, 27, 28

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002) ...........................................21

*Gridley v. State Farm Mut. Auto. Ins.*, 840 N.E.2d 269 (Ill. 2005) ...............................................21

*Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp.*, 2011 WL
    3687451 (N.J. Super. Ct. App. Div. Aug. 24, 2011) .......................................................25

*Horizon Prop., LLC v. Indian Corner Homes, LLC*, 2004 WL 254582 (R.I. Super.
    Ct. Jan. 27, 2004) ...........................................................................................................27

*Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090 (Fla. Dist. Ct. App. 2003) ..............................21

*Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E.2d 724 (Ind. Ct. App. 1979) .....................31

*Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929
    N.E.2d 722 (Ind. 2010) .........................................................................................25, 26, 28

*JRS Products, Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168 (2004), *as modified on denial of reh'g* (Feb. 25, 2004) ...........................................................25

*Lawrence v. UMLIC-Five Corp.*, 2007 WL 2570256 (N.C. Super. Ct. June 18, 2007) ..................................................................................................................................21

*Lawson v. Hale*, 902 N.E.2d 267 (Ind. Ct. App. 2009) ............................................................19, 20

*Long v. Humble Oil & Ref. Co.*, 154 S.W.2d 925 (Tex. Civ. App. 1940), *writ refused W.O.M.* (Dec. 10, 1941) ............................................................................................25

*McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233 (N.Y. 2d Dep't 1991) .......................................................................................................................................25

*Miller v. Nat'l Wildlife Fed'n*, 1987 WL 488717 (Va. Cir. Ct. Sept. 11, 1987) ............................24

*Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419 (La. Ct. App. 2000) .........................................24

*Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214 (4th Dist. 1999) ...................................21

*Plymale v. Upright*, 419 N.E.2d 756 (Ind. Ct. App. 1981) .............................................................31

*Reed v. Central Soya Co.*, 621 N.E.2d 1069 (Ind. 1993) ...............................................................25

*Roberts v. Agricredit Acceptance Corp.*, 764 N.E.2d 776 (Ind. Ct. App. 2002) ..........................30

*Rollander Enters., Inc. v. H.C. Nutting Co.*, 2011 WL 2671929 (Ind. Ct. App. July 8, 2011) .......................................................................................................................................26

*Sec. Tr. Co. v. O'Hair*, 197 N.E. 694 (Ind. Ct. App. 1935) (en banc) ...........................................31

*ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517 (Ga. 2001) ....................................................25

*State ex rel. Corbin v. Goodrich*, 726 P.2d 215 (Ariz. Ct. App. 1986) .........................................21

*Takian v. Rafaelian*, 53 A.3d 964 (R.I. 2012) ...............................................................................29

*Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587 (Wash. 2015) (en banc) .............................21

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742 (Ind. 2010) .................................27

*Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434 (Ohio 2010) .................................24

*Wilmington Trust Co. v. Clark*, 289 Md. 313 (1981) .....................................................................25

*Wisconics Eng'g, Inc. v. Fisher*, 466 N.E.2d 745 (Ind. Ct. App. 1984) .......................................30

*Woodcliff Mgmt., Inc. v. Clark*, 1977 WL 200074 (Ohio Ct. App. Apr. 5, 1977) ........................25

vii

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ................................................................................................................................8

Fed. R. Civ. P. 9 ........................................................................................................................ passim

Fed. R. Civ. P. 12 ..........................................................................................................................6, 9

Fed. R. Evid. 201 .............................................................................................................................6

Ala. Code § 8-19-3..........................................................................................................................17

Cal. Civ. Code § 1761 ...............................................................................................................17, 22

Del. Code Ann. Title 6, § 2512 ......................................................................................................21

Idaho Code Ann. § 48-602..............................................................................................................21

Ind. Code Ann. § 1-1-4-1 ...............................................................................................................16

Ind. Code Ann. § 24-5-0.5-1 ..........................................................................................................15

Ind. Code Ann. § 24-5-0.5-2 ..........................................................................................................15

Ind. Code Ann. § 24-5-0.5-3 ...............................................................................................15, 19, 20

Ind. Code Ann. § 24-5-0.5-4 .....................................................................................................16, 19

Ind. Code Ann. § 34-6-2-29 ............................................................................................................16

2014 Ind. Legis. Serv. Pub. L. No. 65-2014 ..................................................................................19

Kan. Stat. Ann. § 50-634 ................................................................................................................24

La. Stat. Ann. § 51:1409 .................................................................................................................24

La. Stat. Ann. § 51:1418 .................................................................................................................21

Mass. Gen. Laws Ann. Chapter 93A, § 11 ....................................................................................21

Me. Rev. Stat. Ann. Title 5, § 213 .................................................................................................22

Mich. Comp. Laws Ann. § 445.911 ...............................................................................................24

N.H. Rev. Stat. Ann. § 358-A:2......................................................................................................21

Neb. Rev. Stat. § 59-1601 ...............................................................................................................21

Ohio Rev. Code Ann. § 1345.09......................................................................................................24

S.C. Code Ann. § 39–5-140 .........................................................................................................24

Tex. Bus. & Com. Code Ann. § 17.45 ..................................................................................21, 23

Va. Code Ann. § 59.1-198 ..........................................................................................................23

Va. Code Ann. § 59.1-204 ..........................................................................................................24

Vt. Stat. Ann. Title 9, § 2451a ...................................................................................................22

Vt. Stat. Ann. tit. 9, § 2461 ........................................................................................................22

Wyo. Stat. Ann. § 40-12-108 ......................................................................................................23

Restatement (Second) of Torts § 537 ..........................................................................................29

Restatement (Second) of Torts § 552 ..........................................................................................28

74 Am. Jur. 2d *Torts* § 24 (2015)..............................................................................................26

## INTRODUCTION

Plaintiffs Sheet Metal Workers Local No. 20 Welfare and Benefit Fund and Indiana Carpenters Welfare Fund (collectively, "Indiana Funds" or "Plaintiffs") are Indiana-based employee benefit plans offering prescription drug coverage to plan members. The Indiana Funds have sued CVS Health Corporation,[1] claiming on behalf of themselves and a nationwide putative class of entities providing prescription drug insurance (*i.e.*, third-party payors or "TPPs"), that CVS perpetrated an eight-year fraud by limiting the preferential pricing of CVS's Health Savings Pass ("HSP") program to customers who actually enrolled in that program.

Like many other retailers who offer special membership programs, CVS's HSP program entitled its members, and only its members, to discount pricing for certain generic drugs. Any CVS customer, including the Indiana Funds' beneficiaries, could have joined the HSP program by completing an enrollment application, agreeing to the program's terms and conditions, and paying the annual membership fee. Customers who were ***not*** HSP members and who did not have prescription drug insurance paid CVS's "usual and customary" ("U&C") prices for prescriptions. The U&C price is an industry term meaning the cash price paid by the general public; a "cash" customer typically means a customer who purchases a drug without using insurance.

The Indiana Funds allege that they paid "inflated" reimbursements because CVS reported as its U&C price what CVS's cash-paying customers not enrolled in the HSP program paid for a prescription, rather than the HSP price paid by HSP members. Plaintiffs' claims fail for multiple reasons.

---

[1] For simplicity, we use "CVS" to refer to CVS Health Corporation and its subsidiaries. CVS Health Corporation is a holding company and has no operations beyond its functions as a holding company, such as issuing stock and filing reports with the Securities and Exchange Commission. Thus, it is not a proper defendant. Nonetheless, for purposes of this motion, we have to accept the Indiana Funds' factual allegations as true.

*First*, although the Class Action Complaint ("Complaint") [Dkt. No. 1] sounds in fraud, the Indiana Funds have not alleged basic facts critical to their theory with the particularly required under Federal Rule of Civil Procedure 9(b). They fail to allege: (1) that they received the purported misrepresentation—the U&C price—from CVS or anyone else; or (2) any facts explaining the circumstances of any such unpled misrepresentation, including the typical "who, what, when, where, and how."

*Second*, as a matter of due process and Article III standing principles, the Indiana Funds cannot prosecute any claims other than those arising under the laws of Indiana, where they claim to reside and presumably paid the supposedly inflated reimbursements. They cannot assert claims on behalf of absent class members that arise under the laws of other jurisdictions, pursuant to which the Indiana Funds themselves have no claims.

*Third*, Plaintiffs' statutory consumer protection claims fail because the Indiana Funds have not properly pled the elements of the 37 state statutes they attempt to invoke. In addition, under the Indiana statute, Plaintiffs have no claim because they are not suing for damages suffered "as a consumer" and do not (and cannot) allege wrongful conduct actionable under the statute before it was amended in 2014. Finally on this point, most of the other states' statutes limit a civil remedy to in-state residents or those injured within the state; to consumers or natural persons as opposed to entities such as Plaintiffs; or to individual actions rather than class actions.

*Fourth*, Plaintiffs' common law claims of negligent misrepresentation and unjust enrichment are contract claims masquerading as tort claims and, as such, are barred by the principle that contract claims cannot be pled as torts. They also are barred by Plaintiffs' failure to allege that they received and justifiably relied on a false statement.

For these reasons, the Court should dismiss the Complaint with prejudice.

2

**FACTUAL BACKGROUND**

CVS operates one of the largest retail pharmacy chains in the United States.  Compl. ¶ 9.
In November 2008, CVS introduced its HSP program, which provided special pricing for
approximately 400 generic prescription medications ("HSP drugs") to individuals who
completed an application, agreed to the program's terms and conditions, and paid an annual
membership fee.  *Id.* ¶¶ 21, 23–24; *id*, Ex. A at 3 (referencing "applicable terms of the
membership agreement").  Plaintiffs here, two Indiana-based "'employee benefit plan[s]'" who
provide "comprehensive healthcare benefits to [their] participants," *id.* ¶¶ 6–7, do not allege that
they or their participants enrolled in HSP.  Yet the Indiana Funds claim CVS "overcharged"
them by not reporting the HSP price as its U&C price, which allegedly resulted in the Indiana
Funds paying higher reimbursement amounts for HSP-eligible drugs purchased by their plan
participants.  *Id.* ¶ 4.  The Indiana Funds cast CVS's policy of limiting HSP pricing to HSP
members as a "massive fraud," *id.* ¶ 4, and assert claims under state consumer protection
statutes, negligent misrepresentation, and unjust enrichment.  *Id.* ¶¶ 61–82.  For purposes of this
motion only, although they are wrong, CVS assumes the truth of the Indiana Funds' factual
allegations, as it must.

**A.    Background On Prescription Drugs And Pharmacy Claims.**

The "majority of patients in the United States" allegedly are enrolled in insurance plans
subsidizing "medical and pharmaceutical expenses."  Compl. ¶ 12.  When an individual with
prescription drug insurance fills a prescription, the pharmacy dispensing the medicine receives
reimbursement from one of two sources, if not both:  (1) the TPP, which allegedly bears "the
majority" of the drug cost, and (2) the insured, which pays a "deductible[]" or "copay[]" directly
to the pharmacy.  *Id.* ¶ 2.  The formula for apportioning a drug's cost between the TPP and the
insured varies by insurance plan.  *See id.* ¶¶ 14, 17.  Unlike customers with insurance,
individuals without insurance must pay the full cost of a prescription themselves; the Complaint
describes individuals purchasing prescriptions without insurance as "cash customers."  *Id.* ¶ 20.

3

CVS pharmacies dispense prescription medicines.   Compl. ¶ 9.   When an insured customer fills a prescription at CVS, the pharmacist generates a "claim" by transmitting certain patient, prescription, and insurance information electronically to either the customer's TPP or an intermediary entity acting for the TPP.   *Id.* ¶ 14 (referencing the "Third-Party Payor (or its agent)").   During this real-time process known as claims "adjudication," a response is sent to the pharmacy, again by either the TPP or the intermediary, (1) confirming the customer is an eligible beneficiary and the drug is a covered benefit; (2) identifying the total amount the pharmacy will receive for dispensing the prescription; and (3) apportioning that amount between the TPP and the insured.   *Id.*

The Complaint does not explain the role played by the intermediary entities—the purported "agents," Compl. ¶ 14—who contract with TPPs to administer the TPP members' benefits.   But federal courts have written about such entities:   pharmacy benefits managers ("PBMs").   *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 600–03 (S.D.N.Y. 2005).   The Complaint also omits details that would show whether—*or not*—CVS and the Indiana Funds ever actually interact or communicate with each other when CVS dispenses medicines to the Indiana Funds' members, including whether (1) the Indiana Funds contract with a PBM "agent" or (2) they (the Indiana Funds) administer their members' benefits themselves and contract directly with CVS.

The CVS-to-PBM or CVS-to-TPP communications exchanged during the adjudication process utilize standardized data fields developed by the National Council for Prescription Drug Programs ("NCPDP"), a standard-setting organization for the healthcare industry.   Compl. ¶¶ 3, 15–16.   One data field on NCPDP's standard layout is Field No. 426-DQ, the U&C field.   *Id.* ¶ 16.   According to the Indiana Funds, NCPDP defines the U&C price as "the cash price to the general public, which is the amount charged ***cash customers*** for the prescription, exclusive of sales tax or other amounts claimed."   *Id.* ¶ 16 (emphases added).   Based on unspecified "data" CVS reports during adjudication, Plaintiffs say, "the Third-Party Payor sets the reimbursement amount and any applicable copayment."   *Id.* ¶¶ 14, 17.

Regarding the Indiana Funds in particular, the Complaint does not allege what NCPDP data elements they (or their PBM) used to calculate CVS's reimbursement payments; what reimbursement amount(s) CVS supposedly received for prescriptions covered by the Indiana Funds; or where, when, or in what volume those prescriptions were filled (*e.g.*, in what states, during which years, etc.).

### B.     The Health Savings Pass Program.

HSP was an enrollment-based generic discount program.  Compl. ¶¶ 21, 23.  Although "designed . . . to appeal to price-sensitive customers," *id.* ¶ 25, including elderly and disabled customers, *id.*, any CVS customer willing to become a member could enroll, *id.* ¶ 23 ("open to cash-paying customers"); Ex. A at 3 (identifying no restrictions on who may join).   CVS customers carrying insurance could enroll in HSP, although the HSP "[m]embership discount prices [could] not be combined with any insurance" on a given purchase.  *Id.*, Ex. A at 3.  To become a member, customers had to complete an application, agree to HSP's terms and conditions, and pay an annual enrollment fee ($10 through 2010; $15 starting in 2011).  *See* Compl. ¶ 23, *id.*, Ex. A at 3 ("[E]nroll in-store or online"; "the applicable terms of the membership agreement").   After enrolling, HSP members could purchase a standard 90-day supply of a predefined list of generic medicines for a fixed price (*e.g.*, $9.99 through 2010; $11.99 since 2011).  Compl. ¶ 23.  For customers who purchased drugs without insurance, and not as part of the HSP program, CVS charged such "cash customers" the pharmacy's "usual and customary charge," *id.* ¶¶ 28, 31—*i.e.*, the "U&C price."

There is no law mandating that a pharmacy must treat as its U&C price the price charged under a fee-based membership program.  The Complaint identifies no such law.  Illustrating the point, in August 2009, the Department of Health and Human Services, Office of Inspector General ("OIG") reported that the federal agency administering Medicare and Medicaid took no position on the issue:

> If the pharmacy ***charges a fee*** to join their discount generic

program, *[the Center for Medicare & Medicaid Services ("CMS")] does not have a stated policy as to whether the prices charged under that program would meet the definition of a usual and customary charge to the public.*

Declaration of Grant A. Geyerman (Apr. 8, 2016) ("Geyerman Decl."), Ex. 1 at 7 n.26 (emphases added).[2]   In other words, OIG reported CMS did not mandate that a pharmacy's membership club price be the pharmacy's U&C price.

### C.   This Case.

In August 2011, *qui tam* relators filed a lawsuit under the federal False Claims Act ("FCA") and corresponding state statutes alleging that CVS, since 2008, had defrauded the Medicare and Medicaid programs by failing to treat the HSP price as the U&C price.  *See U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412, 418 (D. Mass. 2015) (identifying filing date).   The government declined to intervene in the *Winkelman* action, and on July 29, 2015, the Hon. Denise J. Casper dismissed that case on CVS's Rule 12 motion under the FCA's "public disclosure bar," which prohibits *qui tam* litigation where the claim's factual premise was public information before the lawsuit was filed.   *Id.* at 421 ("[T]here was extensive publicity alleging that CVS deprived the government the benefit of its HSP prices."), *id.* at 425 ("[T]he public disclosure provision of the FCA bars this action.").

One day after the court dismissed *Winkelman*, a group of CVS customers with insurance filed a putative class action in federal court in California claiming CVS's supposed misreporting of its U&C price by not reporting the HSP price caused their copays to be inflated.  *See* Class Action Compl., *Corcoran, et al. v. CVS Health Corporation*, No. 3:15-cv-3504-YGR (N.D. Cal. July 30, 2015) [Dkt. No. 1].   In that case, the court dismissed all claims against CVS Health Corporation for lack of personal jurisdiction, and dismissed in part the claims against its subsidiary, CVS Pharmacy, Inc.  *Corcoran v. CVS Health Corp.*, --- F. Supp. 3d ----, 2016 WL

---

[2] CVS requests that the Court take judicial notice of the OIG Report and the one other attachment to the Geyerman Declaration. *See* Fed. R. Evid. 201(b)(2); *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398, 406 n.6 (S.D.N.Y. 2014) (taking judicial notice of OIG report on motion to dismiss).

6

948880 (N.D. Cal. Mar. 14, 2016). The parties are engaged in discovery on the claims that were not dismissed.

On February 1, 2016, the Indiana Funds filed this Complaint. The Indiana Funds' three counts are among those asserted by the customers in *Corcoran*. Specifically, the Indiana Funds seek to bring a consumer protection count "individually, and on behalf of similarly situated residents" of 36 different states invoking 37 consumer protection statutes; the Indiana Funds also seek to represent a "National Class" on common law counts for negligent misrepresentation and unjust enrichment. Compl. ¶¶ 62, 74, 82. The Complaint identifies the Indiana Funds' principal place of business as Indiana, *id.* ¶¶ 6–7, and alleges no facts suggesting they have a nexus to any other state. Although U&C prices are the representations at the centerpiece of the "massive fraud" alleged, *id.* ¶ 3, the Complaint does not allege that CVS's U&C prices were actually communicated to the Indiana Funds—by CVS or anyone.

## ARGUMENT

## I. THE COMPLAINT DOES NOT PLEAD THE INDIANA FUNDS' CLAIMS WITH THE PARTICULARITY RULE 9(b) REQUIRES.

Where, as here, a pleading alleges fraudulent conduct, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A party "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (quotations omitted); *see Haft v. Eastland Fin. Corp.*, 755 F. Supp. 1123, 1127 (D.R.I. 1991) ("The circumstances of the misrepresentation must be specified; the specific basis for the claim must be alleged."). In other words, Rule 9(b) requires plaintiffs to allege the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013).

7

Rule 9(b) applies to the Indiana Funds' three claims because their "core allegations effectively charge fraud." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (applying Rule 9(b) to negligent misrepresentation claim); *see Carlson v. Gillette Co.*, 2015 WL 6453147, at *4 (D. Mass. Oct. 23, 2015) (applying Rule 9(b) to consumer protection and unjust enrichment claims sounding in fraud even though no fraud cause of action alleged); *see, e.g.*, Compl. ¶ 3 ("CVS orchestrated and carried out a massive fraud"). Applying the Rule's requirements, the Complaint lacks sufficient factual allegations specifying the "circumstances constituting fraud," for a number of reasons.

**First**, most fundamentally, the Complaint does not allege that CVS (or anyone) ever communicated an alleged false statement, a U&C price, **to the Indiana Funds**. Identifying the false statement upon which a plaintiff relied is the most basic requirement of Rule 9(b). *See Nash v. GMAC Mortg., LLC*, 2011 WL 2470645, at *10 (D.R.I. May 18, 2011) (dismissal for failure to allege false statement); *Haft*, 755 F. Supp. at 1132 (failure to allege a false statement failed to satisfy Rule 8, much less Rule 9(b)); *cf. SEC v. Tambone*, 597 F.3d 436, 443 (1st Cir. 2010) (en banc) (affirming dismissal of fraud claim where no allegation appellees "made" a false statement).

**Second**, far from demonstrating how they were defrauded, the Indiana Funds provide **no information** whatsoever explaining their situation. They do not allege their plan beneficiaries actually purchased overpriced prescriptions from CVS pharmacies; **or** when, where, and how frequently any such (unalleged) purchases took place; **or** what U&C prices CVS supposedly reported during those purchases; **or** what amount the Indiana Funds purportedly overpaid for the purchases; **or** any details describing when or how CVS obtained such overpayments. *See Takeda*, 737 F.3d at 123 (requiring particularity in alleging the "who, what, and how"); *Arruda v.*

8

*Sears, Roebuck & Co.*, 310 F.3d 13, 19 (1st Cir. 2002) (where complaint does not allege a false statement communicated to the plaintiff, the pleading *ipso facto* has not alleged with sufficient particularity "the time, place, and content of the alleged false or fraudulent representations") (quotations omitted).

In the only semi-substantive allegation, the Indiana Funds state, "*[o]n information and belief*, there have been millions of instances where CVS intentionally submitted fraudulently-inflated U&C pricing information to Third-Party Payors for prescriptions purchased by members and beneficiaries of Plaintiffs."   Compl. ¶ 40.   This is insufficient: "allegations based on 'information and belief' . . . do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded."   *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief").

II.   **CONSTITUTIONAL REQUIREMENTS OF DUE PROCESS AND ARTICLE III STANDING BAR THE INDIANA FUNDS FROM PROSECUTING ANY CLAIMS OTHER THAN THOSE ARISING UNDER INDIANA LAW.**

Even if the Indiana Funds' claims did not fail under Rule 9(b), their statutory and common law claims arising under non-Indiana law must be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), because (1) due process precludes the Indiana Funds from invoking the laws of states to which they allege no significant connection (*i.e.*, all states other than Indiana), and (2) they lack Article III standing to prosecute any non-Indiana claims for absent class members.

The Indiana Funds reside in Indiana. *See* Compl. ¶¶ 6, 7.   Yet, in Count I, they expressly invoke consumer protection statutes of states other than Indiana without alleging any connection

9

to those jurisdictions.  *Id.* ¶ 62.  And, although in Counts II and III the Indiana Funds do not specify which states' common laws they purport to invoke, *id.* ¶¶ 67–82, Plaintiffs claim to be suing "on behalf of a nationwide class," *id.* ¶ 10, and thus appear to be invoking the common law of states throughout the nation.  Absent a meaningful nexus to these other states, the Indiana Funds cannot assert such claims.  *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 821–22 (1985) (due process requires a "significant contact or significant aggregation of contacts" between a party and the state at issue before that state's law can be applied to the party's claims) (quotations omitted); *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728, at *4 (N.D. Cal. June 29, 2010); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007).

Nor can the Indiana Funds assert out-of-state claims on behalf of a class under the laws of states to which the Indiana Funds themselves do not allege a connection.  As a constitutional matter, "a plaintiff must demonstrate standing for ***each claim*** he seeks to press and for each form of relief that is sought."  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added; citation omitted); *cf. Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross"). Article III standing requirements apply to class claims: "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis,* 518 U.S. at 357 (ellipsis in original; quotations omitted).   A class representative therefore must personally meet Article III's standing requirement and cannot rely on the standing of absent class members. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) ("initial inquiry . . . is whether the lead plaintiff individually has standing, not whether

10

or not other class members have standing."); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action.") (quotations omitted); *In re Herley Indus. Inc. Sec. Litig.*, 2009 WL 3169888, at *8 (E.D. Pa. Sept. 30, 2009) ("Whether a class has Article III standing is determined vis-à-vis the named parties.") (quotation omitted).

Based on these principles, courts overwhelmingly hold that "named plaintiffs lack standing to assert claims under the [statutory and common] laws of the states in which they do not reside or in which they suffered no injury." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757–58 (E.D. Pa. 2014) (quotations omitted) (dismissing consumer protection and unjust enrichment claims asserted under laws of states in which no named plaintiff resided or was injured); *accord In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.* 1 F. Supp. 3d 34, 48–49 (E.D.N.Y. 2014) (dismissing claims for states where named class plaintiffs failed to allege any injury); *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (granting motion to dismiss state law claims based on laws of states where no named plaintiff resided or was injured); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (holding that class plaintiffs "fail to satisfy their burden of showing Article III standing for states in which they do not reside and/or did not purchase the products at issue"); *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365, at *6–7 (E.D. Mich. July 17, 2012) (dismissing statutory and common law claims where complaint had "no factual allegations that connect any injuries by the named IP Plaintiffs [in class action] to any causes of action arising in these states"); *Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585, at *9–10 (W.D. Wash. Mar. 9, 2009) (holding plaintiffs do not have standing to

represent unnamed out-of-state plaintiffs); *cf. In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (holding that plaintiffs cannot state a claim for unjust enrichment if they "fail to link their claim to the law of any particular state"; "cobbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law," which does not exist for such claims).[3]

Article III standing is a "threshold question in every federal case," and without it no case may proceed. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). While some courts have held, relying on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), that the Article III standing question may be deferred until the class certification stage,[4] those courts have misapplied the Supreme Court's holdings beyond the context of a class settlement where the standing of ***absent class members*** is in question. As the court in *In re Wellbutrin XL Antitrust Litig.*, explained: "[*Ortiz* involved] a global settlement in which ***certain members of a proposed class*** may not have [had] standing to sue[,] and . . . the Court was presented with a request for ***class certification and standing issues simultaneously***" in evaluating the global settlement. 260 F.R.D. at 153 (emphases added). "Had the Court found that certification of the proposed class was improper, the issue of certain class members' standing would have been moot." *Id.*

---

[3] *Accord, e.g.*, *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11–12 (D.N.J. Oct. 2, 2013); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *7–10 (D.N.J. Oct. 20, 2011); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728, at *4 (N.D. Cal. June 29, 2010); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1163–64 (N.D. Cal. 2009); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007).

[4] *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *13–14 (D. Mass. Sept. 16, 2015); *but see, e.g.*, *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 (D. Mass. 2006) ("A plaintiff may not avoid the standing inquiry merely by styling his suit as a class action and courts have traditionally resolved questions of standing before reaching issues of class certification.") (citation omitted).

*Amchem* involved a similar issue: the standing question related to *absent class members* in the context of a global settlement. *Id.* at 153−54. In this Motion, CVS is not arguing the Indiana Funds' claims fail because absent class members lack standing; instead, CVS argues that the Indiana Funds' claims brought under non-Indiana law fail because *the Indiana Funds themselves* lack standing to assert non-Indiana claims. Nor is the Court confronting the issues of standing and certification simultaneously or as part of a global settlement.[5]

In sum, the Indiana Funds' statutory and common law claims under the laws of all states other than Indiana should be dismissed because, the Indiana Funds cannot assert claims, on their own or others' behalf, under the laws of states with which they do not have a meaningful connection.

## III. THE INDIANA FUNDS' STATUTORY CLAIMS FAIL FOR MULTIPLE OTHER REASONS.

Independent of the Rule 9(b) and standing deficiencies, the Court should dismiss Count I in its entirety for multiple other reasons. First, the Indiana Funds do not recite the *prima facie* elements of each state's consumer protection statute, let alone allege facts sufficient to state a claim. Second, a claim under Indiana's Deceptive Consumer Sales Act ("IDCSA"), the only potentially applicable statute, fails because the Indiana Funds (1) are not suing for injuries suffered "as a consumer," as the statute requires; and (2) allege conduct occurring prior to July 1, 2014, when the statute prohibited only certain enumerated practices in which Plaintiffs do not claim CVS engaged. Third, most of the other states' consumer protection statutes by their terms

---

[5] *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251 (D. Conn. 2015) (holding that (1) a "federal rule cannot alter a constitutional requirement," which requires standing to be resolved as a threshold matter, and (2) "with respect to each asserted claim, a plaintiff must always have suffered a distinct and palpable injury to herself") (quotations and citations omitted); *see also Mahon v. Ticor Title Ins.*, 683 F.3d 59, 64 (2d Cir. 2012) (deferring standing inquiry would cause "[a] federal rule [to] alter a constitutional requirement" by allowing named plaintiffs to assert claims they could not individually pursue).

limit their reach to conduct with a nexus to the forum state, limit civil remedies to consumers as opposed to non-consumer entities like Plaintiffs, or forbid class actions.

      **A.**    **The Indiana Funds Have Not Alleged The Elements Of Each Consumer Protection Statute Cited In The Complaint.**

To survive a motion to dismiss, a complaint must "provide the 'grounds' of [the plaintiff's] 'entitle[ment] to relief'" with more than a "formulaic recitation" of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted; second alteration in original). If "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy federal pleading requirements, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then *a fortiori* a complaint that fails even to recite the applicable elements is deficient as well, *see, e.g., Williams v. Davey Tree Expert Co.*, 2010 WL 3490992, at *1 (M.D. Fla. Aug. 16, 2010) ("This recitation of a laundry list of causes of action not only fails to include the elements for each claim, but also fails to provide any factual detail so as to give Defendant fair notice of what the claims are and the grounds upon which each rests."); *Protegrity Corp. v. Paymetric, Inc.*, 2014 WL 3849972, at *3 (D. Conn. Aug. 5, 2014) (dismissing complaint that "does not even offer a 'formulaic recitation of the elements of a cause of action'") (quoting *Iqbal*, 556 U.S. at 678).

Count I fails on this basis. Under that single count, the Complaint cites 37 state consumer protection statutes, followed by two paragraphs parroting generic phrases commonly found in consumer protection statutes ***without attempting to allege that CVS's conduct violates those general statutory terms*** as interpreted by each state. *See* Compl. ¶ 64 (CVS allegedly committed "unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated [37] statutes"); *see also id.* ¶ 65. Consumer protection laws "'vary considerably'" from state-to-state, yet the Complaint makes no meaningful attempt

to allege that CVS's conduct satisfies the prima facie elements of each statute. *Grovatt v. St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (quoting *In re Bridgestone/Firestone*, 288 F.3d 1012, 1018 (7th Cir. 2002)).   Other courts have dismissed claims alleged using a similar blunderbuss strategy, including claims filed by the Indiana Funds' same counsel in another consumer protection case. *See Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, 2014 WL 2115498, at *8 (E.D. Pa. May 21, 2014) (dismissing claims under 37 state consumer protection statutes); *accord Williams*, 2010 WL 3490992, at *1; *Protegrity Corp.*, 2014 WL 3849972, at *3.

### B.      The Indiana Funds Have No Claim Under Indiana's Statute.

Independently, Plaintiffs' IDCSA claim fails, in whole or in part, for two separate reasons.   First, the Indiana Funds do not allege that they suffered damages "as a consumer" and thus have no claim under the statute.   Second, Plaintiffs have no IDCSA claim for conduct prior to July 1, 2014, when recovery under the statute was limited to a narrow set of enumerated practices, none of which is relevant to their allegations.

#### 1.      The Indiana Funds are not suing for damages suffered "as a consumer."

The IDCSA's "purpose[]" is to "protect ***consumers*** from suppliers who commit deceptive and unconscionable sales acts."   Ind. Code Ann. § 24-5-0.5-1(b)(2) (emphasis added). The statue prohibits deceptive acts "in connection with a consumer transaction," Ind. Code Ann. § 24-5-0.5-3(a), where a "[c]onsumer transaction" is defined to include a sale of goods "for purposes that are primarily personal, familial, charitable, agricultural, or household . . . .," Ind. Code Ann. § 24-5-0.5-2(a)(1).   The statute empowers Indiana's Attorney General to enjoin a supplier's deceptive or unconscionable acts and authorizes courts to order, among other things,

restitution for "aggrieved consumers." Ind. Code Ann. § 24-5-0.5-4(c). It also creates a civil remedy for a consumer claiming injury from conduct prohibited by the statute: "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered *as a consumer* as a result of the deceptive act . . . ." Ind. Code Ann. § 24-5-0.5-4(a) (emphasis added).

Notably, the Complaint does not allege the Indiana Funds qualify as "consumers," that the allegedly inflated reimbursement payments they are seeking to recoup are "damages [the Indiana Funds] suffered as a consumer," or that they purchased anything in connection with a "consumer transaction." Nor could the Complaint so allege. Although the IDCSA does not define the terms, the plain meaning of a "consumer" is someone who "uses" or "utilizes" a purchased item.[6] *See* Ind. Code Ann. § 1-1-4-1) ("The construction of all statutes of this state shall be by the following rules . . . Words and phrases shall be taken in their plain, or ordinary and usual, sense."). Indiana has codified this everyday definition in other contexts. *See* Ind. Code Ann. § 34-6-2-29(2) (Indiana Products Liability Law: "'Consumer' . . . means: . . . any individual who uses or consumes the product"). Because the Indiana Funds do not "use" or "utilize" the prescription medicines CVS dispenses, but rather finance the purchases by others of those medicines, they are not "consumers" and cannot state a claim under the IDCSA.

Likewise, by insuring their beneficiaries' prescription purchases, the Indiana Funds have not *purchased* anything, let alone for their personal, familial, charitable, agricultural, or household use. TPPs do not possess, acquire title to, or have any right to use their beneficiaries' medications. *In re Rezulin*, 392 F. Supp. 2d at 609. They have "no relationship to the drugs at

---

[6] *Black's Law Dictionary* (10th ed. 2014) ("consumer" is "[s]omeone who buys goods or services for personal, family, or household *use*, with no intention of resale") (emphasis added); www.merriam-webster.com/dictionary/consumer ("consumer" is "one that *utilizes* economic goods") (emphasis added).

all other than indirectly funding their purchase." *Id.* The Indiana Funds are "trust[s]" providing "comprehensive healthcare benefits" to plan members. Compl. ¶¶ 6–7. When the members fill a prescription at CVS pharmacies, CVS (eventually) is reimbursed for the cost of the prescription at a contractually-established rate. Compl. ¶¶ 2, 6–7, 14, 17. While the members' purchases may be for personal use, the Indiana Funds are just "middlemen" subsidizing those purchases. *Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009) (quotations omitted).[7]

For similar reasons, the court in *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604 (D.N.J. 2009), dismissed a TPP's claims under New Jersey's Consumer Fraud Act, which like the IDCSA, provides a civil claim only for consumers. The court explained TPPs are not consumers because they "do not purchase drugs for their own use or consumption. Rather, they contract with beneficiaries to receive a stream of payments which, in turn, obligates them to pay for all or part of the cost of drugs prescribed to and purchased by their beneficiaries." *In re Schering-Plough*, 2009 WL 2043604, at *31. Other federal courts similarly have held that TPPs may not bring claims under consumer protection statutes reserving civil claims for "consumers." *See, e.g.*, *In re Rezulin*, 392 F. Supp. 2d at 616–17 (insurance companies are not "consumers" under New Jersey's consumer protection statute); *S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807, at *8–10 (S.D.N.Y. Sept. 30, 2009) (TPPs not "consumers" under the New Jersey, Ohio, and Texas consumer protection statutes).

---

[7] The laws of other states also define "consumer" with reference to purchases made for similar personal- or household-related purposes. *See, e.g., Cal. Grocers Ass'n. v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994) (California Legal Remedies Act defines "consumer" as a person who purchases goods or services for "'personal, family, or household purposes'") (quoting Cal. Civ. Code § 1761(d)); Ala. Code § 8-19-3 (defining "consumer" as "[a]ny natural person who buys goods or services for personal, family or household use").

Two non-controlling cases discussing the IDCSA do not warrant a different result. In *In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*, 495 F. Supp. 2d 1027 (N.D. Cal. 2007), the court granted the plaintiff-TPPs leave to assert claims under the IDCSA because, after very limited briefing on the issue, the defendants had not "demonstrated that their sale of Celebrex and Bextra to the TPPs for the patients' personal use does not qualify as a consumer transaction as a matter of law." *Id.* at 1037.[8]  Despite stating that "whether [a TPP] suffered damages 'as a consumer'" was a "difficult question," *id.*, the court did not analyze what actually constitutes suffering damage "as a consumer."  Likewise, *In re Actiq Sales and Marketing Practices Litigation*, 790 F. Supp. 2d 313 (E.D. Pa. 2011), based its holding, in part, on *In re Bextra*.  It cited no other case on the "consumer" issue.  It wrongly reasoned TPPs "utilize[] economic goods" when they reimburse part of a prescription's cost, which contradicts the plain meaning of "consumer" and "consumer transaction."  *In re Actiq*, 790 F. Supp. 2d at 325–26 (quotations omitted).  The case also effectively reads the phrase "damages actually sustained as a consumer" out of the IDCSA, concluding the statute does not require "that the plaintiff . . . be the consumer who purchased the goods primarily for personal purposes."  *Id.* at 326.  But that is ***exactly*** what the statute requires by its express terms.

The IDCSA requires that a plaintiff pursuing a civil claim be the consumer, suing on a consumer transaction, for "damages [he] suffered as a consumer."  Ind. Code Ann. § 24-5-0.5-4(a).  Given these requirements, the Indiana Funds do not state a claim under the IDCSA.

### 2.    The Indiana Funds do not state a claim for prescriptions purchased prior to July 1, 2014.

---

[8] In each of their respective briefs, the parties devoted less than one paragraph to this issue, citing only two statutory provisions and one case alluding to a prior version of the statute. *See* Pfizer Defs'. Mem. of P&A at 7 (Jan. 31, 2007); Purchaser Pls.' Resp. in Opp'n to Pfizer's Mot. to Dismiss Second Am. Purchase Claims Master Celebrex Compl. at 6 (Mar. 16, 2007); Pfizer Defs.' Reply in Supp. of Their Mot. to Dismiss Second Am. Purchase Claims Master Celebrex Compl. at 2 (Mar. 30, 2007), in *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 05-md-01699 (N.D. Cal.) [Dkt. Nos. 955, 1100, 1162].

In addition, the Court should dismiss the IDCSA claim insofar as it concerns allegedly overpriced prescriptions purchased prior to July 1, 2014. The version of the IDCSA in effect at the time of the transaction giving rise to a plaintiff's claim governs the cause of action. *See Lawson v. Hale*, 902 N.E.2d 267, 273 n.4 (Ind. Ct. App. 2009); *Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144, at *26 (D.N.J. 2015) (applying IDCSA). Indiana amended the IDCSA effective July 1, 2014. 2014 Ind. Legis. Serv. Pub. L. No. 65-2014 (West). Before July 1, 2014, "the categories of deceptive acts giving rise to liability under the IDCSA [were] very specifically defined." *Lawson*, 902 N.E.2d at 274. There was no catch-all category of deceptive acts under the old statute, and the statute's enumerated list of specific deceptive acts was interpreted to be exclusive. *Id.*; *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 343 (D.N.J. 2014). Courts thus routinely dismissed IDCSA claims involving pre-July 2014 transactions even where the plaintiff had pled facts sufficient to state common law fraud because "there [was] no general 'fraud' category" in the statute. *Lawson*, 902 N.E.2d at 274; *Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111, at *9 (C.D. Cal. Apr. 4, 2011). To survive a motion to dismiss, "a plaintiff's allegations must fit into one of the enumerated acts proscribed under the statute." *Dzielak*, 26 F. Supp. 3d at 343.

The Complaint does not allege which enumerated act in the old statute CVS supposedly violated, and it never could: the enumerated acts plainly do not apply to CVS's alleged conduct. Ind. Code Ann. § 24-5-0.5-3(a)(1)–(37) (West 2013). The Complaint's generic assertion that CVS's "acts and practices created a likelihood of confusion or of misunderstanding . . . and constituted the use or employment of deception, fraud, [or] false pretense," Compl. ¶ 65, constitute, at best, ***unactionable*** "general fraud." Likewise, the conclusory assertion that CVS "omit[ted] a material fact with intent that others rely upon the concealment, suppression or

omission," *id.*, is immaterial:  Omissions were not actionable under the old statute.  *Lawson*, 902

N.E.2d at 274.  Thus, at the very least, the Court should dismiss the IDCSA claim insofar as it

concerns conduct prior to July 1, 2014.[9]

### C.     The Indiana Funds Cannot State Claims Under Twenty-Nine Other Statutes.

Independently, the Indiana Funds also cannot allege viable claims under most of the non-

Indiana statutes for additional reasons:  (1) over and above what Article III and due process

require, a plaintiff cannot satisfy the *prima facie* elements of twenty-five statutes unless he is an

in-state resident or suffered injury within the state; (2) the Indiana Funds are neither consumers

nor natural persons, which bars any claim under eleven states' statutes; and (3) six statutes bar

class actions.  For these reasons alone, the Court should dismiss claims asserted under twenty-

nine of the various statutes.

### 1.     The Indiana Funds have no claim under the twenty-five statutes expressly requiring residence or injury within the relevant state.

The Indiana Funds reside in Indiana, and they do not allege suffering injury in any state

other than Indiana.  Consequently, they cannot meet one *prima facie* element of twenty-five

statutes which, either on their face or as interpreted by the case law, require that the plaintiff

satisfy one of these two conditions in order to state a claim.[10]   The Court should dismiss any

---

[9] Effective July 1, 2014, Indiana amended the statute to provide that the list of enumerated "deceptive acts" was not exclusive.  Ind. Code Ann. § 24-5-0.5-3(b) ("Without limiting the scope of subsection (a), the following acts, and the following representations . . . are deceptive acts.").  The amendment also made deceptive *omissions* actionable under the IDCSA.  *Id.* § 24-5-0.5-3(a).

[10] *State ex rel. Corbin v. Goodrich*, 726 P.2d 215, 221 (Ariz. Ct. App. 1986) ("The Consumer Fraud Act applies to acts committed within Arizona in violation of its provisions."); *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222–23 (4th Dist. 1999) (California Unfair Competition Law does not regulate conduct outside of California); *Cohen v. DIRECTV*, 178 Cal. App. 4th 966, 973 (2d Dist. 2009) (citing *Norwest Mortg., Inc.*, 72 Cal. App. 4th 214) (California Legal Remedies Act does not apply to transactions outside of California); *Friedman v. Dollar Thrifty Auto.* Grp., Inc., 2013 WL 5448078, at *6–7 (D. Colo. Sept. 27, 2013) (dismissing Colorado statutory claim where no conduct occurred within the state); *Bulldog N.Y. LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 166 (D. Conn. 2014) (Connecticut statutory claim must be "tied to a form of trade or commerce intimately associated with Connecticut"); Del. Code Ann. tit. 6, § 2512 (Delaware statute applies to "trade or commerce in part or wholly within this State") *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. Dist. Ct. App. 2003) (Florida statute

claim asserted under these statutes. *See Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund*, 2014 WL 2115498, at *8 (court "need not consider" claims for violations of 37 states' consumer protection statutes where TPP alleges it sustained damages only in Indiana).

> **2.     Eleven statutes limit suits to consumers or natural persons, which the Indiana Funds are not.**

The Indiana Funds are "employee benefit plan[s]." Compl. ¶¶ 6–7. The Complaint does not allege that these entities constitute "consumers" under any state's consumer protection statute. Eleven of the statutes, like Indiana's statute described above, limit civil claims only to consumers and/or natural persons, which the Indiana Funds are not. Under those eleven statutes, the Indiana Funds are not proper plaintiffs and cannot state a claim.

---

does not apply to transactions outside of the state); Idaho Code Ann. § 48-602 ( "trade" and "commerce" defined to include transactions "either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state"); *Gridley v. State Farm Mut. Auto. Ins.*, 840 N.E.2d 269, 274–75 (Ill. 2005) (Illinois statutory claim inapplicable where "majority of circumstances" occurred "primarily and substantially" in another state); *In re Digitek Prods. Liab. Litig.*, 2010 WL 2102330, at *11 (S.D. W. Va. May 25, 2010) (Kansas statute "does not appear to contemplate claims by those injured beyond the state's borders"); La. Stat. Ann. § 51:1418 (Louisiana statute applies "if the consumer is a resident of this state at the time of the consumer transaction" and the consumer transaction is "made in this state"); *Marshall v. Scotia Prince Cruises Ltd.*, 2003 WL 22709076, at *7 (D. Me. Nov. 17, 2013) (Maine statute "does not reach extra-territorial events"), *adopted* Dec. 8, 2003 [Dkt. No. 25]; Mass. Gen. Laws Ann. ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions . . . occurred primarily and substantially within the commonwealth"); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 866 (E.D. Mich. 2009) (the MCPA, "by its express terms, limits [causes of action] to persons residing or injured in Michigan"); *In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 5607600, at *49 (D. Kan. Sept. 11, 2015) (Minnesota statute applies only to conduct in Minnesota); Neb. Rev. Stat. § 59-1601 (Nebraska Consumer Protection Act defines "trade and commerce" to mean sales "directly or indirectly affecting the people of the State of Nebraska"); N.H. Rev. Stat. Ann. § 358-A:2 (barring unfair or deceptive acts or practices "in the conduct of any trade or commerce *within this state*") (emphasis added); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (transaction deceiving consumer must occur in New York); *Lawrence v. UMLIC-Five Corp.*, 2007 WL 2570256, at *7 (N.C. Super. Ct. June 18, 2007) (dismissed North Carolina statutory claim by out-of-state plaintiff arising out of an out-of-state injury); *Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333, 339 (N.D. Ohio 1991) (Ohio statute is "only applicable if the offending conduct took place within the territorial borders of the state of Ohio"); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *25 (D.N.J. Oct. 20, 2011) (South Carolina statute "require[s] that Defendants' unlawful conduct affect trade and commerce in the state"); Tex. Bus. & Com. Code Ann. § 17.45(6) (Texas statute applies to trade or commerce "directly or indirectly affecting the people of this state"); *Sherman v. Ben & Jerry's Franchising, Inc.*, 2009 WL 2462539, at *9 (D. Vt. Aug. 10, 2009) (Vermont statute inapplicable to nonresident absent a "sufficient nexus to Vermont"); *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 592 (Wash. 2015) (en banc) (out-of-state plaintiff must allege deceptive acts that "directly or indirectly affect the people of Washington"); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1414–15 (N.D. Ill. 1996) (Wisconsin statute applies only when the allegedly deceptive representation was "ma[de], publish[ed], disseminate[d], circulate[d], or placed before the public, in [Wisconsin]") (alterations in original; quotations omitted).

***First***, New Jersey courts construe New Jersey's Consumer Fraud Act to permit only a "consumer" to sue, and they define "consumer" as "'one who uses (economic) goods, and so diminishes or destroys their utilities.'" *In re Rezulin*, 392 F. Supp. 2d at 616 (quoting *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990)). Numerous courts have held TPPs are not "consumers" of prescription drugs and, therefore, cannot bring claims under New Jersey's statute. *See, e.g.*, *Cent. Reg'l Emps. Benefit Fund*, 2009 WL 3245485, at *3; *In re Rezulin*, 392 F. Supp. 2d at 616–17; *In re Schering-Plough*, 2009 WL 2043604, at *31.

***Second***, the statutes in Kentucky, Maine, Vermont, and California's Legal Remedies Act, confer a cause of action on a plaintiff purchasing goods or services for "'personal, family, or household purposes.'" *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994) (quoting Cal. Civ. Code § 1761(d)) (CLRA); *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010); Me. Rev. Stat. Ann. tit. 5, § 213(1); Vt. Stat. Ann. tit. 9, § 2451a(a); *id.* § 2461(b). Under these statutes, a plaintiff cannot satisfy this "personal, family, or household" requirement through a purchase made by the plaintiff's customer or client; the plaintiff ***himself*** must make such a purchase. *See, e.g.*, *Enercon v. Glob. Comput. Supplies, Inc.*, 675 F. Supp. 2d 188, 193 (D. Me. 2009). The Indiana Funds fail to state a claim under these statutes. The same applies for Virginia's statute, which is limited to "consumer transactions," a phrase defined to mean goods purchased "to be used primarily for personal, family or household purposes." Va. Code Ann. § 59.1-198. As a matter of Virginia law, "merchant-to-merchant" transactions are "not encompassed within the scope of the [Virginia Consumer Protection Act]." *Baker v. Elam*, 883 F. Supp. 2d 576, 579 (E.D. Va. 2012).

***Third***, the Wyoming Consumer Protection Act provides a claim only for someone who "actually suffered [damages] as a consumer." Wyo. Stat. Ann. § 40-12-108(a). Thus, any Wyoming claim fails for the reasons Plaintiffs' claim under the Indiana statute fails.

***Fourth***, the Indiana Funds are not "consumers" under Texas's statute because neither Plaintiff is an "individual, partnership, corporation, this state, or a subdivision or agency of this state," nor does the Complaint allege their assets are below $25 million. Tex. Bus. & Com. Code Ann. § 17.45(4).

***Fifth***, because the Indiana Funds are not natural persons, they are not consumers with potential claims under the Kansas and Ohio statutes. *In re Motor Fuel Temperature Sales Practices Litig.*, 2012 WL 1672994, at *5 n.8 (D. Kan. May 14, 2012) ("A corporation is not a consumer under the [Kansas Consumer Protection Act]."); *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp. 2d 855, 862 (N.D. Ohio 2006) ("[T]he OCSPA requires that a consumer be an individual, and the term individual has been interpreted to mean a natural person.") (alternation and internal quotations omitted).

***Finally***, the Indiana Funds have not alleged that they satisfy the "consumer nexus test" required to state a claim under Illinois's statute. *See Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 650–51 (N.D. Ill. 2015) (quotations omitted).[11]

### 3. Six statutes bar class actions.

Finally, the Court should dismiss Plaintiffs' claims under the six statutes barring class actions. The Louisiana and South Carolina statutes expressly prohibit class actions. *See* La. Stat. Ann. § 51:1409(A); *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419, 421 (La. Ct. App.

---

[11] To state a claim under the Illinois statute, a plaintiff must allege either that he or she *is* a consumer, *or* must show (1) his or her actions were "akin to a consumer's actions to establish a link between them and consumers;" (2) how the defendant's representations "concerned consumers other than [plaintiff];" (3) how the defendant's conduct "involved consumer protection concerns;" and (4) how the relief requested would "serve the interests of consumers." *Roppo*, 100 F. Supp. 3d at 651 (alteration in original; quotations omitted).

2000); S.C. Code Ann. § 39–5-140(a); *Dema v. Tenet Physician Servs.–Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009). Virginia's statute authorizes only an "individual action" for damages; it contains no provision allowing suits to proceed as class actions; and as a matter of Virginia law, class action relief is not available unless specifically authorized by statute. *See* Va. Code Ann. § 59.1-204; *Miller v. Nat'l Wildlife Fed'n*, 1987 WL 488717, at *1 (Va. Cir. Ct. Sept. 11, 1987); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 294 (D.N.J. 2009) (holding Virginia's statute does not permit class claims). Finally, the Kansas, Michigan, and Ohio statutes authorize class actions only if certain authorities have placed the defendant on notice that its conduct is an unfair or deceptive practice under state law. In particular, a ***specific*** statute, administrative rule, or a reported judicial decision from a state court must have addressed the defendant's conduct. Kan. Stat. Ann. § 50-634(d)(1)–(2) (listing preconditions to class actions); Mich. Comp. Laws Ann. § 445.911(3) (same);[12] Ohio Rev. Code Ann. § 1345.09(B); *Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434, 441 (Ohio 2010) (same). Because the Complaint cannot allege that such authorities have declared CVS's alleged conduct to be unlawful, Plaintiffs' attempt to bring class claims under these three statutes fails as well.

## IV. THE INDIANA FUNDS' COMMON LAW CLAIMS FAIL ON THE MERITS.[13]

### A. The Indiana Funds' Common Law Claims Are Disguised Contract Claims.

Contract and tort are separate and distinct bodies of law. *See, e.g., Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010) ("'[T]ort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of

---

[12] Under Michigan's statute, a decision from a federal court of appeals or the Supreme Court may also provide notice. *See* Mich. Comp. Laws Ann. § 445.911(3).

[13] We assume for purposes of this motion that Indiana law applies to the Indiana Funds' common law claims. We also cite Rhode Island law because the claims would have the same disposition under the forum state's law as under Indiana's law.

24

law designed for such disputes. It is called contract law.'") (quoting *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) (Posner, J.)); *accord Boston Inv. Prop. No. 1 State v. E.W. Bruman, Inc.*, 658 A.2d 515, 517–18 (R.I. 1995) ("The purpose of a tort duty of care is to protect society's interest from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises.") (quotations omitted). In Indiana (and elsewhere), the law forbids a plaintiff from alleging a breach of contract as a tort. *See, e.g.*, *Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 729 (describing "a tort remedy" as "inferior to commercial law" when contracts are involved) (citing *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1074–75 (Ind. 1993)); *accord Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007) "[C]ommercial transactions are more appropriately suited to resolution through the law of contract, than through the law of tort.").[14]

The long-standing principle that a breach of contract is not a tort is reflected in, among other rules, the Economic Loss Doctrine, which here bars the Indiana Funds' tort claims for negligent misrepresentation and unjust enrichment. The doctrine preserves the distinction between contract law and tort law. *See Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 739 ("A bright line distinction between the remedies offered in contract and tort with respect to economic damages . . . encourages parties to negotiate toward the risk distribution that is desired

---

[14] *See also, e.g.*, *Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218, 1222 (Ariz. 1987); *JRS Products, Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (2004), *as modified on denial of reh'g* (Feb. 25, 2004); *Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So.2d 1012, 1014 (Fla. 3d DCA 1999); *ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517, 523 (Ga. 2001); *Cromwell v. Allen*, 151 Ill. App. 404, 406 (Ill. App. Ct. 1909); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328 (1981); *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997); *Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp.*, 2011 WL 3687451, at *5 (N.J. Super. Ct. App. Div. Aug. 24, 2011); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234 (N.Y. 2d Dep't 1991); *Woodcliff Mgmt., Inc. v. Clark*, 1977 WL 200074, at *1 (Ohio Ct. App. Apr. 5, 1977); *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002); *Long v. Humble Oil & Ref. Co.*, 154 S.W.2d 925, 933 (Tex. Civ. App. 1940), *writ refused W.O.M.* (Dec. 10, 1941).

or customary. We preserve the incentive to adequately self-protect during the bargaining process." (quotation omitted)); *accord W. Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270, 289 (D.R.I. 2010) (Smith, J.) ("[Rhode Island law recognizes] that the economic loss doctrine preserves the distinction between tort and contract law, allows sophisticated parties freedom to allocate economic risk by contract, and enables the party best positioned to assess economic risk to allocate it.").

The Economic Loss Doctrine provides:

> If tort claims are based on duties that are imposed by contract, then under the economic-loss rule, contract law provides the remedies for economic losses. The economic-loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship. In other words, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach-of-contract claim.

74 Am. Jur. 2d *Torts* § 24 (2015).

Indiana recognizes that the Economic Loss Doctrine precludes tort claims, including negligent misrepresentation and unjust enrichment, where the plaintiff and defendant either have contracted with one another or are connected indirectly by a series of contracts. *See, e.g.*, *Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 741 (applying doctrine to parties connected in a series of contracts); *Rollander Enters., Inc. v. H.C. Nutting Co.*, 2011 WL 2671929, at *9 (Ind. Ct. App. July 8, 2011) (non-precedential) (affirming dismissal of negligent misrepresentation claim where series of contracts controlled); *Tecnomatic, S.P.A. v. Remy, Inc.*, 2012 WL 2376066, at *8 (S.D. Ind. June 22, 2012) (dismissing negligent misrepresentation claim where "contracts . . . established the relative expectations of the parties"); *Engelbrecht v. Prop. Developers, Inc.*, 296 N.E.2d 798, 801 (Ind. Ct. App. 1973) (dismissing unjust enrichment claim); *accord W. Reserve*, 715 F. Supp. 2d at 273 (dismissing negligence claim); *Franklin*

*Grove*, 936 A.2d at 1275–77 (dismissing negligence claim) (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 993 (Wash. 1994) (en banc) (applying doctrine to parties connected in a series of contracts)); *E.W. Burman*, 658 A.2d at 517 (applying doctrine to parties connected in a series of contracts); *Horizon Prop., LLC v. Indian Corner Homes, LLC*, 2004 WL 254582, at *4 (R.I. Super. Ct. Jan. 27, 2004) (dismissing unjust enrichment claims).[15]

The Economic Loss Doctrine bars the Indiana Funds' tort claims, because their assertion that CVS has "overcharged" them, Compl. ¶ 1, stems from CVS's alleged non-compliance with commitments in "contracts, network pharmacy manuals, [and] payor sheets" "not [to] charge a drug price greater than the U&C price," *id*. ¶ 27. If CVS's failure to honor such a commitment has caused the Indiana Funds economic injury, the remedy lies in contract law, not in a suit in tort.

The Indiana Funds cannot circumvent the prohibition on pleading contract claims as torts by omitting from the Complaint facts describing how CVS supposedly owes them—the Indiana Funds specifically—a duty "not [to] charge a drug price greater than the U&C price." Compl. ¶ 27. The Indiana Funds cite no statute, regulation, case, or any other basis, save a private contract, that could restrict CVS's reimbursement from the Indiana Funds to the U&C price. All the Complaint offers is paragraph 27, referencing unspecified "contracts." That ends the matter: Because a contract provides the Indiana Funds' basis for claiming CVS "overcharged" them, Compl. ¶ 1, contract law provides the exclusive remedy for CVS's purported non-compliance. *Indianapolis-Marion*, 929 N.E.2d at 734–37; *Boston Inv. Prop.*, 658 A.2d at 517–18; *accord,*

---

[15] Indiana law has carved out from the Economic Loss Doctrine negligent misrepresentation claims asserted "in the context of professionals giving opinions." *Tecnomatic*, 2012 WL 2376066, at *8; *see U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 750 (Ind. 2010) ("A professional may owe a duty to a third party with whom the professional has no contractual relationship, but the professional must have actual knowledge that such third person will rely on his professional opinion."). The exception is not relevant to Plaintiffs' negligent misrepresentation claim here.

*e.g.*, *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 705 (Ohio 2005) (Economic Loss Doctrine barred new hotel purchaser from asserting tort claims against concrete subcontractor where purchaser contracted with general contractor and not subcontractor; subcontractor "ha[d] no duty . . . to protect [purchaser] from purely economic [injury]"). Accordingly, the Court should dismiss the Indiana Funds' tort claims because, "when parties have contracted to protect against potential economic liability . . . contract principles override tort principles." *Franklin Grove*, 936 A.2d at 1275 (alteration and citation omitted).

### B.     The Negligent Misrepresentation Claim Fails For Two Additional Reasons.

To state a claim for negligent misrepresentation, a plaintiff must allege (1) receiving a misrepresentation made by the defendant and (2) justifiable reliance on the misrepresentation. *See* Restatement (Second) of Torts § 552; *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 628 (Ind. Ct. App. 1983) (following § 552); *Estate of Braswell ex rel. Braswell v. People's Credit Union*, 602 A.2d 510, 512 (R.I. 1992) (same).   The Complaint's allegations satisfy neither element.

*First*, the Complaint does not allege that CVS (or anyone else) ever communicated a U&C price (false or otherwise) to the Indiana Funds.   The Complaint alleges that U&C prices were reported to "Third-Party Payors" generically; it does not allege that U&C prices were reported to the Indiana Funds specifically.   Compl. ¶ 36.   Nor does the Complaint allege a purported PBM "agent," *id*. ¶ 14, received a false U&C price and, in turn, repeated it to the Indiana Funds.   This dooms the negligent misrepresentation count, which requires that the plaintiff receive the false statement. *See, e.g.*, *Takian v. Rafaelian*, 53 A.3d 964, 973 (R.I. 2012) ("[D]efendants point to no specific representations made by Randolph that resulted in any injury to them."); *Nash v. GMAC Mortg., LLC*, 2011 WL 2470645, at *10 (D.R.I. May 18, 2011) (same); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014) (no allegation

28

plaintiffs "saw any particular representation"); Restatement (Second) of Torts § 537 (confining reliance to the "recipient of a fraudulent misrepresentation").

*Second*, the Indiana Funds have not plausibly pled that they justifiably relied on an "erroneous" reported price. Indeed, the Complaint's allegations demonstrate the opposite: Even assuming CVS's U&C prices were "inaccurate" because they were not the HSP price (CVS vigorously disputes this premise), the Indiana Funds could not reasonably have believed CVS *was* reporting its HSP price as its U&C price. The core claim here is (1) CVS reported an erroneous U&C price to TPPs and (2) hid from the TPPs the fact that the U&C price was not the lower HSP price. Compl. ¶¶ 1–5. At the same time, however, Plaintiffs allege CVS launched the HSP program nearly eight years ago and publicized the program price. *Id.* ¶¶ 3, 29, 30, 35, 42 & Ex. A. They acknowledge CVS openly promoted HSP in marketing materials and on www.cvs.com/HealthSavingsPass. *Id.*, Ex. A (listing the HSP program's price and drug list). According to Plaintiffs' own Exhibit attached to the Complaint, CVS explained that individuals could "eas[ily]" enroll in HSP to "save on prescriptions" and disclosed that HSP discounts could *not* "be used in conjunction with any health insurance." *Id.* How much clearer a disclosure could CVS have made that customers using their insurance would not receive HSP benefits? *See W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329, 349 n.12 (D.R.I. 2012) ("[W]here the allegations set forth in the Complaint are inconsistent with a writing attached as an exhibit, the terms of the latter, fairly construed, must prevail over any averments differing therefrom." (quotation omitted)).

In addition, according to Plaintiffs, HSP was such a well-known program that (1) HSP accounted for more than "50%" of the purchases by CVS customers without insurance, (2) "most of CVS's cash-paying customers pay the HSP price," and (3) "the HSP price is the most

29

common price paid by CVS's cash-paying customers." Compl. ¶¶ 29, 30. They further allege "price sensitive" customers, including the "elderly" and "disabled," enrolled in HSP. *Id.* ¶ 25. If those large swathes of the public knew about HSP, then CVS could not possibly have been "hid[ing]" or keeping HSP "secret," *id.* ¶¶ 4, 53, 54, from sophisticated payors like the Indiana Funds. Promoting a program is not how a commercial entity perpetrates a secret scheme. Compl. ¶¶ 4, 53, 54.

As the Complaint's allegations establish, TPPs (1) knew what price CVS in fact reported as its U&C on pharmacy claims submitted for adjudication, Compl. ¶ 16; (2) knew or should have known the publicly-reported HSP price; and (3) by comparing the two, knew or should have known the prices were different. Under such circumstances, the Indiana Funds' failure to object to CVS's reported U&C price since 2008, despite public awareness of the lower HSP price, precludes any plausible claim of justifiable reliance. *See, e.g.*, *Roberts v. Agricredit Acceptance Corp.*, 764 N.E.2d 776, 779 (Ind. Ct. App. 2002) ("[I]t is also settled that where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment.") (quotation omitted); *Wisconics Eng'g, Inc. v. Fisher*, 466 N.E.2d 745, 756–58 (Ind. Ct. App. 1984) (sophisticated business buyers dealing at arm's length with sellers and with access to information had no right to rely upon seller's representation of value); *Plymale v. Upright*, 419 N.E.2d 756, 761 (Ind. Ct. App. 1981) ("[W]hen both parties are dealing at arm's length and one party, in spite of the facts well known to him, deliberately ignores such facts and chooses to believe statements to the contrary, he closes his eyes to the truth and deliberately takes a chance. It then cannot be said that he was injured in law. All that can be said is that he gambled and lost.") (quoting *Sec. Tr. Co. v. O'Hair*, 197 N.E. 694, 696–97 (Ind. Ct. App. 1935) (en banc)).

In sum, the Court should dismiss the negligent misrepresentation claim for either the absence of a false statement or justifiable reliance or both.

### C.    The Unjust Enrichment Claim Fails.

Finally, the Indiana Funds' unjust enrichment claim arises out of the same alleged factual predicate as Plaintiffs' other claims—"CVS knowingly charges plan participants artificially high copayments . . . ." Compl. ¶ 76.  Thus, the same conduct that Plaintiffs contend was actionable deception under state consumer protection statues and the common law of negligent misrepresentation also made it "unjust" for purposes of Count 3, their unjust enrichment claim. If the Court finds that Plaintiffs have not stated valid claims for consumer protection violations and negligent misrepresentation, the unjust enrichment claim must fail as well, since Plaintiffs provide no independent basis for finding CVS acted "unjustly" by reporting a U&C price that was not the HSP program price.  *Cardinale*, 567 F.3d at 15 n.3 (unjust enrichment requires "some wrong that makes the [defendant's] enrichment culpable"); *Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E.2d 724, 726 (Ind. Ct. App. 1979) (reversing finding of unjust enrichment because "[a]bsent a wrong, intervention by equity is inappropriate").

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: April 8, 2016                    Respectfully submitted,

                                        By: /s/Robert C. Corrente
                                        Robert C. Corrente
                                        WHELAN, CORRENTE, KINDER & SIKET LLP
                                        100 Westminster Street; Suite 710
                                        Providence, RI 02903
                                        Telephone:  (401) 270-4500
                                        Facsimile: (401) 270-3760
                                        RCorrente@wckslaw.com

Enu Mainigi (*Pro Hac Vice*)
Luba Shur (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lshur@wc.com
ggeyerman@wc.om

*Attorneys for CVS Health Corporation*

## CERTIFICATE OF SERVICE

I certify that on April 8, 2016, this **MEMORANDUM OF LAW IN SUPPORT OF CVS HEALTH CORPORATION'S MOTION TO DISMISS** was filed electronically and is available for viewing and downloading from the ECF.

Dated: April 8, 2016                    By: /s/Robert C. Corrente