IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, and INDIANA CARPENTERS WELFARE FUND, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:16-cv-00046-S |
| v. | |
| CVS HEALTH CORPORATION, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION

## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   SUMMARY OF FACTUAL ALLEGATIONS ............................................. 2

    A.    TPP Coverage and Claims Submission Generally ................................ 2

    B.    CVS's "Health Savings Pass" Program ............................................ 3

    C.    CVS Unlawfully Gouges TPPs by Charging Artificially Inflated
          U&C Prices for Generic Drugs ...................................................... 4

III.  ARGUMENT .................................................................................... 7

    A.    Plaintiffs Have Satisfied the Applicable Pleading Requirements ......................... 7

          1.    Standard of review on motion to dismiss ....................................... 7

          2.    Plaintiffs' Complaint satisfies Rule 9(b)'s "Who, What,
               Where, and When" pleading standards. ..................................... 7

               a.    "WHO" – The Complaint sufficiently alleges the
                    perpetrators and victims of the fraud. ........................... 8

               b.    "WHAT" – The Complaint sufficiently alleges the
                    nature and subject of the fraud. ................................... 8

               c.    "WHERE" – The Complaint sufficiently alleges
                    where the fraud occurred. ......................................... 10

               d.    "WHEN" – The Complaint sufficiently alleges
                    when the fraud occurred ........................................... 11

               e.    CVS cites inapposite authorities. ................................. 12

    B.    Plaintiffs Have Standing to Pursue Their State Law Claims .............................. 13

          1.    Since Plaintiffs have Article III standing, whether they may
               pursue the claims of absent class members in other states is
               determined by Rule 23. ........................................................ 14

    C.    Plaintiffs Have Adequately Plead Their Consumer Protection State
          Law Claims ............................................................................. 20

          1.    Plaintiffs are "consumers" and may bring claims under the
               state consumer protection laws. ............................................... 20

a. Plaintiffs are "consumers" under the laws of Indiana...................................................................20

b. Plaintiffs' claims for prescriptions purchased prior to July 1, 2014, are viable. ..........................23

2. Plaintiffs' claims are actionable under the state consumer protection laws. ......................................................24

a. Plaintiffs are "consumers" for the purposes of the laws of Kentucky, Maine, Vermont, California, Virginia, Wyoming, and Illinois. ..................................27

b. Louisiana, South Carolina, Virginia, and Michigan permit class actions. ....................................30

D. The Complaint Properly Asserts Viable Common Law Claims..........................33

1. Plaintiffs' common law claims properly sound in tort, not contract law. ..................................................................33

2. The economic loss rule does not bar Plaintiffs' common law claims. ..................................................................35

3. Plaintiffs adequately plead negligent misrepresentation claims. ..................................................................37

4. Plaintiffs adequately plead unjust enrichment claims.............................39

E. Plaintiffs Could Plead Additional Details in Support of Their State-Law Claims Should the Court Require ...........................................41

IV. CONCLUSION................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*,
   114 P.3d 862 (Colo. 2005) .......................................................................................37

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   2007 WL 1689899 (N.D. Cal. June 11, 2007) ........................................................39

*In re Actiq Sales & Mktg. Practices Litig.*,
   790 F. Supp. 2d 313 (E.D. Pa. 2011) ......................................................................22

*AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.*,
   2010 U.S. Dist. LEXIS 23181 (E.D. Pa. Mar. 11, 2010) ..................................20, 21

*In re Aggrenox Antitrust Litig.*,
   94 F. Supp. 3d 224 (D. Conn. 2015) ........................................................................18

*Air Prods. & Chems., Inc. v. Eaton Metal Prods., Co.*,
   256 F. Supp. 2d 329 (E.D. Pa. 2003) ......................................................................36

*Alloway v. General Marine Indus., L.P.*,
   695 A.2d 264 (N.J. 1997) .........................................................................................36

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
   374 F.3d 23 (1st Cir. 2004) ........................................................................................7

*American United Life Ins. Co. v. Douglas*,
   808 N.E.2d 690 (Ind. Ct. App. 2004) ......................................................................35

*America's Directories Incorporated, Inc. v. Stellhorn One Hour Photo, Inc.*,
   833 N.E.2d 1059 (Ind. Ct. App. 2005) ....................................................................34

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ..........................................................................33

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) ...................................................................................15

*Arruda v. Sears, Roebuck & Co.*,
   310 F.3d 13 (1st Cir. 2002) ......................................................................................12

*Ascension Tech. Corp. v. McDonald Invs., Inc.*,
   327 F. Supp. 2d 271 (D. Vt. 2003) ...........................................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................7

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014)................................................................31

*Baby Neal for and by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994)...................................................................................27

*Barcenas v. Federal Home Loan Mortg. Corp.*,
   2013 WL 286250 (S.D. Tex. Jan. 24, 2013).......................................................36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................7

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*,
   881 P.2d 986 (Wash. 1994)................................................................................36

*In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*,
   495 F. Supp. 2d 1027 (N.D. Cal. 2007) .......................................................21, 22

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*,
   866 A.2d 270 (Pa. 2005) ....................................................................................38

*Bond v. United States*,
   564 U.S. 211 (2011)..........................................................................................14

*Boston Inv. Prop. No. 1 State v. E.W. Burman, Inc.*,
   658 A.2d 515 (R.I. 1995) ...................................................................................36

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) .............................................................................15

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016).........................................................................................15

*In re Cardizem Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000).............................................................41

*Carlson v. The Gillette Co.*,
   2015 WL 6453147 (D. Mass. Oct. 23, 2015)......................................................12

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24, 2015)..............................31

*Center for Sci. in the Pub. Interest v. Bayer Corp.*,
   2010 WL 1223232 (N.D. Cal. Mar. 25, 2010)....................................................29

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*
   *Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005)............................................................19

*In re Chicago Flood Litig.*,
   680 N.E.2d 265 (Ill. 1997)...........................................................36

*City of New York v. Joseph L. Balkan, Inc.*,
   656 F. Supp. 536 (E.D.N.Y. 1987) ...............................................13

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1998) ....................................................12, 13

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*,
   835 N.E.2d 701 (Ohio 2005)........................................................36

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*,
   470 F. Supp. 2d 485 (E.D. Pa. 2006) ..........................................41

*Davis v. FEC*,
   554 U.S. 724 (2008)....................................................................19

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
   383 S.C. 115 (2009) ...................................................................31

*Dicuio v. Brother Int'l Corp.*,
   2015 WL 3103144 (D.N.J. May 27, 2015) ..................................24

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ......................................18

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
   2013 WL 5503308 (D.N.J. Oct. 2, 2013).....................................18

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014) ...............................................24

*Englebrecht v. Property Developers, Inc.*,
   296 N.E.2d 798 (Ind. Ct. App. 1973)..........................................36

*Eysoldt v. ProScan Imaging*,
   957 N.E.2d 780 (Ohio Ct. App. 2011).........................................36

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ......................................................15

*Ferrell v. Wyeth-Ayerst Labs., Inc.*,
   2004 U.S. Dist. LEXIS 15127 (S.D. Ohio June 30, 2004) ...........17

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*,
  717 F. Supp. 2d 156 (D. Mass. 2010) ....................................................................36

*Foman v. Davis*,
  371 U.S. 178 (1962).............................................................................................41

*Forsythe v. Sun Life Fin., Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) ....................................................................19

*Franklin Grove Corp. v. Drexel*,
  936 A.2d 1272 (R.I. 2007).....................................................................................36

*FTC v. Mylan Labs, Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999)...........................................................................21

*Giles v. GMAC*,
  494 F.3d 865 (9th Cir. 2007) ................................................................................36

*Gladstone, Realtors v. Village of Bellwood*,
  441 U.S. 91 (1979)................................................................................................18

*In re Grand Theft Auto Video Game Consumer Litig.*,
  2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ..................................................15, 17

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................18

*Grissom v. Moran*,
  290 N.E.2d 119 (Ind. Ct. App. 1972).....................................................................39

*Haft v. Eastland Fin. Corp.*,
  755 F. Supp. 1123 (D.R.I. 1991)............................................................................12

*Haimberg v. R&M Aviation, Inc.*,
  5 F. App'x 543 (7th Cir. 2001) ..............................................................................37

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..............................................................................26

*Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*,
  57 F. Supp. 3d 1389 (N.D. Ga. 2014)....................................................................36

*In re Herley Indus. Inc., Secs. Litig.*,
  2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) ........................................................19

*Horizon Props., LLC v. Indian Corner Homes, LLC*,
  2004 WL 254582 (R.I. Super. Ct. Jan. 27, 2004) ..................................................36

*Hoving v. Transnation Title Ins. Co.*,
    545 F. Supp. 2d 662 (E.D. Mich. 2008)................................................................17

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    545 N.E.2d 672 (Ill. Ct. App. 1989) ..............................................................39, 40

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2014) ...............................................................31, 32

*In re HSBC Bank, USA, N.A.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) .........................................................................19

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)................................................................................................18

*Indianapolis – Marion Cty. Pub. Library v. Charlier Clark & Linard P.C.*,
    929 N.E.2d 722 (Ind. 2010) ...................................................................................36

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ........................................................................41

*Kapoor v. Dybwad*,
    2015 WL 8914652 (Ind. Ct. App. Dec. 15, 2015) .................................................35

*KASP, Inc. v. Adesa Lexington, LLC*,
    2006 WL 385310 (E.D. Ky. Feb. 17, 2006) ..........................................................28

*KD & KD Enters., LLC v. Touch Automation, LLC*,
    2006 WL 3808257 (D. Ariz. Dec. 27, 2006) .........................................................36

*Keilholtz v. Lennox Hearth Prods.*,
    268 F.R.D. 330 (N.D. Cal. 2010)...........................................................................39

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    702 F. Supp. 2d 514 (E.D. Pa. 2010) .....................................................................41

*Kuhl v. Guitar Ctr. Stores, Inc.*,
    2008 WL 656049 (N.D. Ill. Mar. 5, 2008)............................................................17

*Lawson v. Hale*,
    902 N.E.2d 267 (Ind. Ct. App. 2009).....................................................................24

*Lewis v. Casey*,
    518 U.S. 343 (1996)................................................................................................19

*Liberty Publ'g, Inc. v. Carter*,
    868 N.E.2d 1142 (Ind. Ct. App. 2007), *rev'd on other grounds*, 887 N.E.2d 92
    (Ind. 2008)...............................................................................................................21

*In re Magnesium Oxide Antitrust Litig.*,
2011 WL 5008090 (D.N.J. Oct. 20, 2011) ..............................................................18

*Martin Rispens & Son v. Hall Farms*,
621 N.E.2d 1078 (Ind. 1993) ...............................................................................35

*In re Mercedes-Benz Tele Aid Litig.*,
257 F.R.D. 46 (D.N.J. 2009) ................................................................................40

*Miller v. National Wildlife Fed'n*,
1987 WL 488717 (Va. Cir. Ct. 1987) ...................................................................33

*Morris Aviation, LLC v. Diamond Aircraft Indus.*,
730 F. Supp. 2d 683 (W.D. Ky. 2010) .................................................................28

*Morris v. Sears, Roebuck & Co.*,
765 So.2d 419 (La. Ct. App. 2000) .................................................................31, 32

*Nash v. GMAC Mortg., LLC*,
2011 WL 2470645 (D.R.I. May 18, 2011) ............................................................12

*Neale v. Volvo Cars of N. Am.*,
794 F.3d 353 (3d Cir. 2015) .................................................................................16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) .................................................................................15

*Nesbit v. Gears Unlimited, Inc.*,
347 F.3d 72 (3d Cir. 2003) ...................................................................................14

*New England Data Servs., Inc. v. Becher*,
829 F.2d 286 (1st Cir. 1987) ................................................................................12

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) ....................................................................................27

*In re Nexium Antitrust Litig.*,
968 F. Supp. 2d 367 (D. Mass. 2013) ..................................................................16

*In re Niaspan Antitrust Litig.*,
42 F. Supp. 3d 735 (E.D. Pa. 2014) .....................................................................18

*North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d 8 (1st Cir. 2009) ....................................................................................12

*Nota Constr. Corp. v. Keyes Assocs., Inc.*,
694 N.E.2d 401 (Mass. Ct. App. 1998) ...............................................................37

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ................................................................26

*Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*,
    659 A.2d 267 (Me. 1995) ........................................................................28

*Overka v. Am. Airlines, Inc.*,
    265 F.R.D. 14 (D. Mass. 2010) ..........................................................26, 39

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ..................................................18

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..............................................19, 41

*Pennsylvania Emp. Benefit Trust Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010) ...................................................20, 21

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008) ..................................................... *passim*

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................19

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .....................................................................7

*Piazza v. Ebsco Indus.*,
    273 F.3d 1341 (11th Cir. 2001) ..............................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..................................................................12

*Powers v. Lycoming Engines*,
    245 F.R.D. 226 (E.D. Pa. 2007), *vacated on other grounds*, 328 F. App'x 121
    (3d Cir. 2009) ........................................................................................40

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..............................................................15, 26

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*,
    548 F. Supp. 2d 619 (N.D. Ill. 2008) ......................................................41

*Ramirez v. Dollar Phone Corp.*,
    2009 U.S. Dist. LEXIS 92972 (E.D.N.Y. Oct. 1, 2009) .......................14, 16

*Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*,
    965 A.2d 460 (Vt. 2008) ........................................................................29

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004) .................................................................15, 16, 17

*In re Rezulin Prods. Liab. Litig.*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005) ..............................................................21, 22

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  102 P.3d 268 (Cal. 2004) ........................................................................................36

*Rogers v. Wright*,
  366 P.3d 1264 (Wyo. 2016) .....................................................................................37

*Rollander Enters., Inc. v. H.C. Nutting Co.*,
  2011 WL 2671929 (Ind. Ct. App. July 8, 2011) ....................................................36

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ...................17

*In re Schering-Plough Corp. Intron*,
  2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ............................................22

*Schumacher v. Tyson Fresh Meats, Inc.*,
  221 F.R.D. 605 (D.S.D. June 7, 2004) ....................................................................27

*SEC v. Tambone*,
  597 F.3d 436 (1st Cir. 2010) ...................................................................................12

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
  559 U.S. 393 (2010) ...........................................................................................15, 31

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*,
  2008 WL 3833577 (D.N.J. Aug. 13, 2008) .............................................................17

*Singer v. AT&T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) .............................................................................39

*In re Solodyn Antitrust Litig.*,
  2015 WL 5458570 (D. Mass. Aug. 14, 2015) ....................................................15, 16

*Sosna v. Iowa*,
  419 U.S. 393 (1975) .................................................................................................14

*Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
  241 F.R.D. 85 (D. Mass. 2007) ...............................................................................26

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................................................18, 20

010582-11  867429 V1

*Suna v. Bailey Corp.*,
   107 F.3d 64 (1st Cir. 1997) ................................................................................12

*Tasker v. DHL Ret. Sav. Plan*,
   621 F.3d 34 (1st Cir. 2010) ...............................................................................2, 7

*Tecnomatic, S.p.A. v. Remy, Inc.*,
   2012 WL 2376066 (S.D. Ind. June 22, 2012) ......................................................36

*In re Telectronics Pacing Sys. Inc.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ........................................................................25

*In re TFT-LCD Antitrust Litig.*,
   2010 WL 2629728 (N.D. Cal. June 29, 2010) ......................................................18

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co.'s, Inc.*,
   110 So. 3d 399, 407 (Fla. 2013) .........................................................................36

*Tolan & Son v. KLLM Architects*,
   719 N.E.2d 288 (Ill. Ct. App. 1999) ...................................................................37

*Turbeville v. JPMorgan Chase Bank*,
   2011 WL 7163111 (C.D. Cal. Apr. 4, 2011) ........................................................24

*U.S. Bank v. Integrity Land Title Corp.*,
   929 N.E.2d 742 (Ind. 2010) ................................................................................36

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   2009 WL 5064468 (D. Conn. Dec. 15, 2009) .......................................................13

*UBS Fin. Servs., Inc. v. Thompson*,
   94 A.3d 176 (2014), *aff'd*, 115 A.3d 125 (Md. 2015) ..........................................36

*United States ex rel. Ge v. Takeda Pharm. Co., Ltd.*,
   737 F.3d 116 (1st Cir.), *cert. denied*, 135 S. Ct. 53 (2014) .................................12

*Virginia Beach Rehab. Specialists, Inc. v. Augustine Med., Inc.*,
   58 Va. Cir. 379 (Va. Cir. Ct. 2002).....................................................................30

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)................................................................................14

*W.S. Carnes, Inc. v. Board of Supervisors*,
   478 S.E.2d 295 (Va. 1996)..................................................................................33

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................27

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*,
    2009 WL 4730187 (D.N.J. Dec. 3, 2009) ..............................................................17

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) .................................................................................26

*Waters v. Advent Prod. Dev.*,
    2008 U.S. Dist. LEXIS 50686 (S.D. Cal. June 26, 2008) ......................................31

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ......................................................................36

*In re Wellbutrin XL Antitrust Litig.*
    260 F.R.D. 143 (E.D. Pa. 2009) .............................................................................18

*Western Reserve Life Assur. Co. v. Conreal, LLC*,
    715 F. Supp. 2d 270 (D.R.I. 2010) .............................................................8, 13, 36

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................27

*United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
    750 F.3d 111 (1st Cir. 2014) .................................................................................41

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007).................................................................................19

*Wright v. Pennamped*,
    657 N.E.2d 1223 (Ind. Ct. App. 1995)..................................................................34

### STATUTES

815 ILCS 505/1(c) ......................................................................................................30

815 ILCS 505/10a(a)...................................................................................................30

CAL. CIV. CODE § 1761 ...............................................................................................29

CAL. CIV. CODE § 1770 ...............................................................................................29

IND. CODE § 24-5-0.5-1 ..............................................................................................21

IND. CODE § 24-5-0.5-2 .........................................................................................21, 23

IND. CODE § 24-5-0.5-3 (2014) ..................................................................................23

IND. CODE § 24-5-0.5-3 (2016) ..................................................................................23

IND. CODE § 24-5-0.5-4..............................................................................................21

IND. CODE § 24-5-0.5-5 .................................................................................24

KAN. STAT. ANN. § 50-623, *et seq.* ...........................................................27, 31

KY. REV. STAT. ANN. § 367.170 ....................................................................28

KY. REV. STAT. ANN. § 367.220 ....................................................................28

LA. REV. STAT. ANN. § 51:1409 .....................................................................32

5 ME. REV. STAT. § 206 .................................................................................28

5 ME. REV. STAT. § 213 .................................................................................28

MICH. COMP. LAWS § 445.902 ..................................................................21, 32

MICH. COMP. LAWS § 445.903 ......................................................................32

MICH. COMP. LAWS ANN. § 445.911 ............................................................32

MICH. COMP. LAWS § 445.912 ......................................................................32

N.J. STAT. ANN. § 56:8, *et seq* .....................................................................27

OHIO REV. CODE ANN. § 1345.01, *et seq.* ...............................................27, 31

S.C. CODE ANN. § 39-5-140 ..........................................................................31

TEX. CODE ANN. BUS. & CON. § 17.41, *et seq.* ...........................................28

VT. STAT. ANN. TIT. 9 § 2451a ......................................................................28

WYO. STAT. ANN. § 40-12-101, *et seq.* .......................................................30

WYO. STAT. § 40-12-102 ...............................................................................30

## OTHER AUTHORITIES

7AA Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1785.1
    (3d ed. 2010) ..........................................................................................15

1 William B. Rubenstein, *et al.*, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.
    2011) ......................................................................................................15

2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS §§ 2.5, 2.7
    (4th ed. 2010) .........................................................................................14

Steven C. Tourek, Thomas H. Boyd & Charles J. Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, the Economic Doctrine and Common Law Causes of Actions for Fraud and Misrepresentation*, 84 IOWA L. REV. 875 (1999) ..................................................................................................36

RESTATEMENT (SECOND) OF TORTS, § 552 .................................................................38

Anthony Niblett, Richard A. Posner & Andrei Shleifer, *The Evolution of a Legal Rule*, 39 J. LEGAL STUD. 325 (2010).........................................................................36

## I.     INTRODUCTION

CVS Health Corporation implemented a scheme to defraud Third-Party Payors by submitting fraudulent prices when requesting reimbursement for prescriptions dispensed to Third-Party Payors' members and beneficiaries.

This is one of two actions challenging CVS Health Corporation's (CVS) fraud in the pricing of hundreds of generic drugs, but is the only one brought on behalf of Third-Party Payors (TPPs), like private health insurance companies, third-party administrators, health maintenance organizations, and self-funded health and welfare benefit plans.  In *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), the court recently denied CVS's motion to dismiss, finding that the consumer plaintiffs stated claims satisfying Rules 8 and 9(b) for common law fraud, consumer fraud, negligent misrepresentation, and unjust enrichment.[1] The result should be the same here.

Similar to its failed arguments in *Corcoran*, CVS asserts against Plaintiffs a series of state-law-specific arguments, including that these Plaintiffs lack standing to pursue any state-law claims except their own claims under the law of the state in which they reside.  As set forth in detail below, CVS's "standing" arguments conflate Article III standing (which Plaintiffs have) with Rule 23 typicality, have been rejected by courts in this Circuit, and contradict the overwhelming weight of judicial and scholarly opinion.[2]  CVS's litany of other state-law-specific arguments similarly lacks merit and Plaintiffs do, in fact, sufficiently allege:  (1) Rule 9(b)'s "who, what, where, and when" pleading standards; (2) Article III standing; (3) consumer

---

[1] Declaration of Stephen M. Prignano (Prignano Decl.), Ex. A (*Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016)).  Plaintiffs request that the Court take judicial notice of this *Corcoran* Order, Ex. A to the Prignano Decl.  *See* Fed. R. Evid. 201(b)(2).  Notably, CVS also requested judicial notice of the Second Amended Complaint in the same *Corcoran* case. Def. Mem. at 5-6 (referencing Geyerman Decl., Ex. 2).  But CVS did not include the *Corcoran* Order (Prignano Decl., Ex. A), that explicitly ruled on defendants' motion to dismiss the Second Amended Complaint, which was filed on March 14, 2016, over three weeks before CVS filed its motion to dismiss here.

[2] *Infra* at 13-20.

protection state law claims; and (4) common law claims as to negligent misrepresentation and unjust enrichment.  And since the Complaint "contain[s] sufficient factual matter," this Court should assume its factual veracity and determine that those facts plausibly give rise to an entitlement to relief.[3]  Accordingly, CVS's Motion to Dismiss should be denied.

## II.   SUMMARY OF FACTUAL ALLEGATIONS

CVS is a nationwide retail pharmacy chain with more than 7,866 pharmacies under the trade names CVS Pharmacy and Longs Drugs throughout the United States, District of Columbia and Puerto Rico.[4]  CVS is one of the nation's leading pharmacy businesses with over 150 million consumers, one of every two Americans, and has access to data on 30% of all prescriptions in the United States.[5]  CVS fills or manages more than 1 billion prescriptions per year.[6]  And in 2014, CVS's retail prescription drug sales were approximately $67 billion.[7]

## A.   TPP Coverage and Claims Submission Generally

Most patients in the United States have a health care plan that covers all or a portion of their medical and pharmaceutical expenses.[8]  CVS uses a uniform computerized claims processing system at its locations for each prescription drug transaction.[9]  Once the prescription and any insurance or benefit information is entered, CVS submits the prescription claim electronically in real time to a TPP or its agent.[10]  When a plan participant, a consumer, fills a

---

[3] *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 39 (1st Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[4] *See* ¶ 9. Except where otherwise noted, references to "¶__" are to paragraphs in the Class Action Complaint (Dkt. No. 1).

[5] *Id.*

[6] *Id*.

[7] *Id.*

[8] ¶ 12.

[9] ¶ 13.

[10] ¶¶ 13-14.

- 2 -

prescription under a third-party health care plan, a TPP pays the majority of the participant's

prescription drug costs, excluding deductibles and co-pays.[11]

At all times since November 2008 until the present (Class Period),[12] CVS used the

industry standard National Council for Prescription Drug Program (NCPDP) reporting for the

electronic submission and adjudication of its pharmacy claims.[13]  And as a requirement of the

adjudication process, CVS reports to Third-Party Payors CVS's usual and customary (U&C)

price for the drug dispensed.[14]  The amount collected by CVS may not exceed CVS's usual and

customary price, which is generally defined as the cash price to the general public for the same

drug.[15]  Under the NCPDP reporting standard, CVS pharmacies are required to report the amount

of its U&C price for each prescription transaction using the NCPDP's mandatory pricing

segment code 426-DQ.[16]  Using the drug price information from CVS, the TPP sets the

reimbursement amount and any applicable copayment or coinsurance.[17]

## B.    CVS's "Health Savings Pass" Program

In 2006, "big-box" retailers with pharmacy departments, like Wal-Mart, began offering

hundreds of generic prescription drugs at significantly reduced prices.[18]  In 2008, CVS launched

---

[11] ¶ 2.

[12] ¶ 42.

[13] ¶ 15.

[14] ¶ 16.  CVS requests that the Court take judicial notice of an OIG Report as it relates to the meaning of a "usual and customary" charge. Def. Mem. at 5-6 (referencing Geyerman Decl., Ex. 1 at 7 n.26).  In the companion case, the *Corcoran* court expressly discounted the relevance of this OIG Report, also referred to as the Department of Health and Human Services' 2009 report (DHS Report).  Although the *Corcoran* court granted defendants' judicial notice as to the DHS Report, exactly like CVS seeks to do here, the *Corcoran* court found "[a]t most, the DHS Report shows the agency was unwilling to take a position on the issue – not that it endorsed Defendants' view." *Corcoran* Order at 17-18 (referencing Dkt. No. 58, Ex. 2, DHS Report).  This Court should hold the same.

Moreover, the trier of fact will determine the plain meaning of the words "usual and customary" just as the trier of fact determined the plain meaning of words like "Average Wholesale Price" or "AWP" in a similar TPP case, *In re Pharm. Indus. Average Wholesale Price Litig. ("In re AWP")*, 252 F.R.D. 83, 87 (D. Mass. 2008).

[15] ¶¶ 2, 16.

[16] ¶ 16.

[17] ¶¶ 14, 17.

[18] ¶ 18.

- 3 -

its custom branded loyalty generic prescription drug program – the "Health Savings Pass" (HSP) program.[19]  The HSP program is a discount prescription drug program.[20]  Cash-paying customers can enroll in the HSP Program for a fee and pay a certain amount for a fixed-day supply.[21]  The HSP program includes 400 of the most commonly prescribed generics (HSP Generics).[22]  And the HSP program is designed to appeal to customers who take long-term maintenance medications and are price sensitive, many of whom are elderly or disabled.[23]

## C.  CVS Unlawfully Gouges TPPs by Charging Artificially Inflated U&C Prices for Generic Drugs

During the Class Period, CVS has knowingly and intentionally submitted false and artificially inflated U&C prices for generic drugs to TPPs.[24]  CVS knows that TPPs calculate the drug price to be paid to the pharmacy based on whether the U&C submitted to the TPP is less than or greater than any price set in an individual contract.[25]  Contracts, network pharmacy manuals, payor sheets, and CVS's own transaction data require that when the U&C price is lower than a contracted price, CVS may not charge a drug price greater than the U&C price.[26]

Yet CVS implemented the HSP program to create a new category of cash customers without lowering prices charged to TPPs:[27]  (1) customers who pay the retail price; and (2)

---

[19] ¶¶ 20-21.

[20] ¶ 23.

[21] From November 9, 2008, through 2010, such customers could join the HSP for a $10 fee.  During this time, CVS charged HSP members $9.99 for a 90-day supply of the most commonly prescribed generic drugs (HSP Generics).  Moreover, CVS pharmacists routinely prorated prescriptions written for less than 90-days.  For example, CVS would charge a HSP member roughly $3.33 for a 30-day supply.  In 2011, CVS raised its enrollment fee to $15 a year and the price of the over 400 HSP generics to $11.99 for a 90-day supply (or a prorated amount of approximately $3.99 for a 30-day supply). ¶ 23.

[22] ¶ 24.

[23] ¶ 25.

[24] ¶¶ 3, 22, 27.

[25] ¶ 27.

[26] ¶ 27.

[27] ¶ 28.

- 4 -

customers who pay the HSP price.[28]  While most cash-paying customers pay the HSP price,[29] CVS failed to include the HSP price in the calculation of the U&C price.[30]  Instead of reporting the more common HSP price as the U&C price to TPPs, CVS reported a significantly inflated price.[31]

To date, CVS deceptively submits the retail price as its purported U&C price to TPPs. CVS can do this because TPPs are not privy to what prices CVS charges its cash customers, including its HSP customers, and what percentage of CVS's customers pay each price.  So TPPs had no way of determining on their own whether the price CVS submits as its U&C price, is actually the common price offered to cash-paying members of the general public.[32]

CVS thus submitted false and inflated U&C prices to TPPs in amounts that exceeded the HSP drug prices sometimes by three or four hundred percent.[33]  And, CVS has reported to NCPDP, on which TPPs rely, U&C prices for generic prescription drugs that are up to 11 times the competitor U&C prices and HSP prices.[34]  CVS directly competes for customers with other national retail pharmacies, such as Wal-Mart, Target, Costco, and ShopRite.  In contrast to other national retail pharmacies who report the discounted price as the U&C price for reimbursement purposes, CVS unlawfully reports a marked-up and baseless U&C price that gouges and deceives.[35]  To illustrate CVS's scheme, the following chart shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication.

---

[28] ¶ 28.

[29] ¶ 29.

[30] ¶¶ 30, 33-34.

[31] ¶ 33.

[32] ¶ 31.

[33] *See*, *e.g.*, ¶¶ 4, 5, 33-34, 36, 40-41.

[34] ¶¶ 37-38.

[35] ¶ 37.

- 5 -

| Drug (90 Day Supply) | ShopRite Reported U&C | Wal-Mart Reported U&C | Target Reported U&C | Costco Reported U&C | CVS Reported U&C | CVS HSP Price |
|---|---|---|---|---|---|---|
| Carvedilol  12.5 mg tab | $9.99 | $10.00 | $10.00 | $9.99 | $120.99 | $11.99 |
| Lisinopril 20 mg tab | $9.99 | $10.00 | $10.00 | n/a | $42.19 | $11.99 |
| Lisinopril – HTCZ 20 12.5 mg tab | $9.99 | $24.00 | $24.00 | n/a | $58.59 | $11.99 |
| Metformin HCL 1000 mg tab | $9.99 | $24.00 | $24.00 | $9.99 | $86.59 | $11.99 |
| Metoprolol Tartrate 50 mg tab | $9.99 | $10.00 | $10.00 | $9.99 | $48.99 | $11.99 |
| Warfarin Sodium 5 mg tab | $9.99 | $10.00 | $24.00 | $28.00 | $48.39 | $11.99 |
| Meloxicam 15 mg tab | $9.99 | $10.00 | n/a | $9.23 | $79.59 | $11.99 |
| Alendronate Sodium 70 mg tab | $29.99 | $24.00 | n/a | $17.61 | $134.99 | $11.99 |

This chart exemplifies how the U&C prices submitted by CVS to the NCPDP and, subsequently, the TPPs, are unequivocally inflated.[36]

As a result of this scheme, CVS has collected billions of dollars from Plaintiffs and other class members since 2008.[37]  Accordingly, Plaintiffs seek to represent a class of TPPs that paid CVS between November 2008 and the present for generic prescription drugs that are listed on the CVS Health Savings Pass prescription drug list.[38]

---

[36] ¶ 38.  The chart shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication.

[37] ¶ 39.

[38] ¶ 42.

### III.    ARGUMENT

**A.    Plaintiffs Have Satisfied the Applicable Pleading Requirements**

**1.    Standard of review on motion to dismiss.**

A motion to dismiss a complaint under Federal Rule of Civil Procedure l2(b)(6), must be denied, so long as the complaint plausibly sets forth "a short and plain statement of the claim" sufficient to give notice to the defendant of the allegations against them.[39]   A court may not, at the pleading stage, decide "which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder."[40]

Likewise, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, including standing, should be denied if a plaintiff is entitled to relief "*under any reasonable reading of the complaint.*"[41]

**2.    Plaintiffs' Complaint satisfies Rule 9(b)'s "Who, What, Where, and When" pleading standards.**

Just as the *Corcoran* court found that the consumer plaintiffs satisfied Rule 9(b) in describing CVS's deceptive pricing scheme,[42] so have the TPP Plaintiffs here.  The requirements of Rule 9(b) are straightforward.  To state a claim sounding in fraud a party must allege the "who, what, where, and when" of the fraudulent representation.[43]  This requirement serves one of

---

[39] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[40] *Tasker*, 621 F.3d at 39 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and explaining how a complaint survives so long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

[41] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (emphasis added).

[42] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 15-17.

[43] *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

- 7 -

the goals of Rule 9(b): "to 'provide a defendant with fair notice' of the claim and discourage

baseless actions."[44]

### a.      "WHO" – The Complaint sufficiently alleges the perpetrators and victims of the fraud.

The Complaint alleges that CVS is the perpetrator of the fraud in reporting inflated prices

of generic prescription drugs to TPPs, which CVS misrepresents as its "usual and customary"

price, thereby overcharging those entities for the same drugs it sells to cash-paying customers at

substantially reduced prices.[45]  At the same time, the Complaint sets forth the victims of the

fraud, alleging that TPPs, including private health insurance companies, third-party

administrators, health maintenance organizations, self-funded health and welfare benefit plans,

and the Plaintiffs in this action, were significantly overcharged by CVS for their purchases of

generic prescription drugs on behalf of their members and beneficiaries.[46]

### b.      "WHAT" – The Complaint sufficiently alleges the nature and subject of the fraud.

The Complaint alleges that CVS overcharged the Plaintiffs and other TPPs for generic

prescription drugs by submitting claims for payment to these entities at inflated prices.[47]  Claims

for reimbursement were submitted at prices that CVS represented to be its "usual and customary"

price when, in fact, CVS charged a different and substantially lower price to its cash-paying

customers for the very same drugs.[48]

---

[44] *Western Reserve Life Assur. Co. v. Conreal, LLC*, 715 F. Supp. 2d 270, 282-83 (D.R.I. 2010) (Smith, C.J.) (quoting *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997)).

[45] *See*, *e.g.*, ¶¶ 1, 3, 4, 5, 8, 13, 14, 15, 16.

[46] *See*, *e.g.*, ¶¶ 1, 3, 4, 5, 6, 7, 13, 14, 15, 16.

[47] *See*, *e.g.*, ¶¶ 1, 3, 4, 5, 26, 28, 31, 32, 33, 34, 38.

[48] *Id*.

- 8 -

The Complaint also describes the subject of the fraud as manipulation of the "usual and customary" prices of the 400 generic drugs that are part of CVS's HSP program.[49] The Complaint further alleges the content of the fraud in discussing how, for example, CVS charged $9.99 and, later, $11.99 for common prescription generic drugs in its HSP program to cash customers, but transmitted claims for reimbursement for the very same drugs to TPPs at higher prices by excluding the HSP prices from its calculation of "usual and customary" pricing.[50]

CVS did this by using the industry standard NCPDP reporting system for the electronic transmission of its pharmacy claims.[51] Under this system, pharmacies are required to report the amount of their U&C price for each prescription transaction using NCPDP's mandatory pricing segment code 426-DQ.[52] Instead of transmitting the standard $9.99 or $11.99 HSP price for reimbursement, CVS excludes those prices and electronically reports a higher U&C price that was not, in fact, its usual and customary pricing.[53] For example, CVS electronically reports to the NCPDP the following U&C prices for generic drugs: Carvedilol 12.5 mg tablet ($120.99), Lisinopril 20 mg tablet ($42.19), Lisinopril HTCZ 20-12.5 mg tablet ($58.59), Metformin HCL 1000 mg tablet ($86.59), Metroprolol Tartrate 50 mg tablet ($48.99), Warfarin Sodium 5 mg tablet ($48.39), Meloxicam 15 mg tablet ($79.59), and Alendronate Sodium 70 mg tablet ($134.99).[54] These reported U&C prices by CVS were grossly inflated, and were up to 11 times the U&C prices of some of its most significant competitors and its own HSP prices.[55] Based on

---

[49] ¶¶ 24, 37, 41.

[50] ¶¶ 23, 24, 33, 34, 38.

[51] ¶ 15.

[52] ¶ 16.

[53] ¶¶ 33, 34, 38.

[54] ¶ 38. Moreover, the Complaint alleges that TPPs are not privy to what prices CVS charges its cash customers, including its HSP customers, and what percentage of CVS's cash customers pay each price. ¶ 31.

[55] ¶ 38. *See supra* at 5-6 (providing chart showing how U&C prices submitted to Pennsylvania's Medicaid program for claims adjudication).

- 9 -

the data reported by CVS through this electronic NCPDP reporting system, TPPs then reimburse the pharmacy.[56]  As a result, Plaintiffs pay inflated prices for these drugs because the prices reported through the electronic NCPDP reporting system exceed the actual U&C prices charged by CVS.[57]  The Complaint also describes how CVS received these overpayments via the NCPDP claims adjudication process.[58]

Contrary to CVS's assertion,[59] the Complaint adequately alleges that Plaintiffs paid for overpriced drugs:  "CVS has thereby caused (and continues to cause) Plaintiffs and other class members *to pay inflated prices to CVS*, because they exceed the actual U&C prices."[60]  And as a result of this pricing scheme "[s]ince 2008, CVS has collected billions of dollars from Plaintiffs and other Class members."[61]  Moreover, "CVS has overcharged and continues to overcharge hundreds or thousands of TPPs (including Plaintiffs and the Classes) which paid for some of the most commonly prescribed generic drugs from CVS Pharmacies around the country.  Class members were overcharged by at least the difference between their payments and the U&C."[62]

### c.   "WHERE" – The Complaint sufficiently alleges where the fraud occurred.

The Complaint alleges that the fraud occurs at CVS pharmacies located in the United States, District of Columbia, and Puerto Rico.[63]  At these locations, information concerning prescriptions is entered into CVS's computerized claims processing system.[64]  This system then

---

[56] ¶ 17.

[57] ¶ 36.

[58] ¶¶ 13-17, 36, 38, 40, 41.

[59] Def. Mem. at 8-9.

[60] ¶ 36 (emphasis added).

[61] ¶ 39.

[62] ¶ 41.

[63] ¶¶ 9, 12-16.

[64] ¶ 13.

010582-11  867429 V1

electronically reports the claim for payment to TPPs or their agents through the claim

"adjudication" process, which includes the inflated drug price information submitted by CVS.[65]

### d.     "WHEN" – The Complaint sufficiently alleges when the fraud occurred.

The Complaint alleges the fraud occurred each time CVS electronically submitted a claim

to TPPs using the NCPDP reporting system wherein it misrepresented the price for a prescription

generic drug to be the U&C price when, in fact, CVS cash-paying customers were charged

substantially lower prices for the same drug.[66]  Indeed, the Complaint describes how the fraud

occurs at the time of claim "adjudication," when CVS submits prescription claims electronically

in real time to the TPP or its agent.[67]  CVS started this fraudulent conduct in November 2008

when it created the HSP program, and continues to do so.[68]

Contrary to CVS's assertion,[69] the Complaint sufficiently alleges that CVS

communicated a false statement – an inflated "usual and customary" price – to Plaintiff TPPs:

- "*CVS knowingly and intentionally overcharged Plaintiffs* and private health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors and other health benefit providers ("Third-Party Payors" or "TPPS") for generic prescription drugs *by submitting claims for payment to Third-Party Payors at fraudulently inflated prices*."[70]

- "[F]or years, CVS has knowingly and intentionally *submitted a false and artificially inflated usual and customary prices for generic drugs to Third Party Payors*."[71]

- "CVS continues deceptively *to submit the retail price as its purported U&C price to Third-Party Payors*."[72]

---

[65] ¶¶ 13, 14.

[66] ¶¶ 3, 13, 14, 15, 16, 36.

[67] ¶¶ 14-17.

[68] ¶¶ 3, 36, 40, 41.

[69] Def. Mem. at 8.

[70] ¶ 1 (emphasis added).

[71] ¶ 3 (emphasis added).

- 11 -

- "CVS falsely reports, and continues to report, *to Third-Party Payors U&C prices for HSP Generics that are substantially higher than the HSP price it offers to the general public*."[73]

- "Beginning in November 2008 and continuing through the present, *CVS has reported to Third-Party Payors artificially inflated U&C prices for the same prescription drugs that CVS offers for lower prices under the HSP program*."[74]

- Listing specific examples of eight drugs for which CVS sought reimbursement at prices up to eleven (11) times the price most commonly charged to its cash-paying customers in the "Health Savings Pass" program.[75]

### e.   CVS cites inapposite authorities.

Rule 9(b) does not require more.  By contrast, the cases CVS relies upon for dismissal all involve threadbare allegations that fall far short of the instant Complaint, concern special pleading issues under the federal securities statutes, or were decided on substantive grounds unrelated to Rule 9(b).[76]  At this early stage of the litigation, Plaintiffs are not required to list the specific amounts and details of the potentially millions of transactions produced by CVS's fraudulent scheme.[77]  In *Cooper v. Pickett*, the court held: "[w]e decline to require that a

---

[72] ¶ 31 (emphasis added).

[73] ¶ 34 (emphasis added).

[74] ¶ 36 (emphasis added).

[75] ¶ 38.

[76] *See, e.g., United States ex rel. Ge v. Takeda Pharm. Co., Ltd.*, 737 F.3d 116, 124 (1st Cir.) (finding relator "alleged next to no facts" to show the alleged misconduct resulted in false claims"), *cert. denied*, 135 S. Ct. 53 (2014); *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14 (1st Cir. 2009) ("Nothing in the [fraud] count remotely describes facts from which an inference of fraudulent intent may be drawn."); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 292 (1st Cir. 1987) (finding only conclusory allegations of mail and wire fraud not enough); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-47 (7th Cir. 2011) (finding allegations based on the filing of other lawsuits did not satisfy Rule 9(b)); *Nash v. GMAC Mortg., LLC*, 2011 WL 2470645, at *10 (D.R.I. May 18, 2011) (finding complaint failed to identify who issued a false statement, when, and to whom); *Haft v. Eastland Fin. Corp.*, 755 F. Supp. 1123, 1129 (D.R.I. 1991) (finding securities fraud allegations "purely speculative"); *Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997) (failing to meet special "guidelines" regarding a securities fraud case); *Carlson v. The Gillette Co.*, 2015 WL 6453147 (D. Mass. Oct. 23, 2015) (using the term "guarantee" did not constitute a deceptive act or practice under Massachusetts law); *SEC v. Tambone*, 597 F.3d 436, 442-50 (1st Cir. 2010) (finding false statement did not support a securities fraud violation); *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13 (1st Cir. 2002) (failing to state claim for violation of the fair debt collection practices act).

[77] Further, CVS is in possession of all the information it needs to have "fair notice" of the fraud.  CVS submits the claims for payment, so CVS knows the identity of the TPPs as well as the terms and conditions of the health

- 12 -

complaint must allege specific shipments to specific customers at specific times with a specific dollar amount of improperly recognized revenue."[78]  This is especially true under these circumstances where numerous transactions are produced as part of a larger, routine fraudulent practice that is described in detail.[79]  Instead, Plaintiffs provide specific examples of how CVS reported U&C prices for generic prescription drugs that are up to 11 times the U&C prices reported by some of its most significant competitors and its own HSP prices.[80]  Like *Western Reserve Life Assur. Co. v. Conreal, LLC*, "[i]n the aggregate, all the allegations discussed above serve the goals of Rule 9(b) to 'provide a defendant with fair notice' of the claim and discourage baseless actions."[81]  The same is true here – this Complaint provides CVS with "fair notice" of its fraudulent conduct and satisfies Rule 9(b).[82]

## B.  Plaintiffs Have Standing to Pursue Their State Law Claims

CVS concedes Plaintiffs have Article III standing to assert individual claims under Indiana law.[83]  For that reason alone, CVS's motion should be denied.  Instead, through Rule 12(b)(1), they argue that Plaintiffs lack standing to assert state law claims on behalf of putative class members residing in other states.[84]

---

plans administered by those TPPs.  CVS also knows the relevant generic prescription drugs in its HSP program. And for those drugs, CVS received payments from TPPs that exceeded its HSP prices.  CVS cannot credibly claim ignorance of this scheme, nor can it claim the Complaint is devoid of allegations reciting fraudulent conduct.

[78] *See, e.g., Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998).

[79] *See, e.g., In re U.S. Foodservice, Inc. Pricing Litig.*, 2009 WL 5064468, at *18 (D. Conn. Dec. 15, 2009) (finding Plaintiff was not required to plead details of specific invoices sent by the thousands on a nearly daily basis where they were sent as part of a larger scheme to defraud); *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 545 (E.D.N.Y. 1987) (same).

[80] ¶ 38.

[81] 715 F. Supp. 2d at 282-83.

[82] *See, e.g., id.* at 282 ("[r]eading the Complaints in full," the allegations were sufficiently specific to satisfy a heightened pleading standard).

[83] Def. Mem. at 9-10.

[84] Def. Mem. at 9-13.

- 13 -

1.      **Since Plaintiffs have Article III standing, whether they may pursue the claims of absent class members in other states is determined by Rule 23.**

Plaintiffs are not bringing claims in their own name in other states; rather, they are seeking to represent similarly situated persons in other states.  This latter issue is not one of Article III standing,85 but will be addressed at class certification under Rule 23.  "The fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' [product] is immaterial on a motion to dismiss a class action."[86]

Article III individual standing to sue under a state law and the ability to obtain relief under Rule 23 for unnamed residents of other states are separate inquiries.[87]  The governing principle is straightforward:  once a named plaintiff establishes his own standing, "whether he will be able to represent the putative class . . . depends solely on whether he is able to meet the

---

[85] For standing under Article III, Plaintiffs must show:  "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  In determining standing, courts are not concerned with the issue of whether the class representative can represent a class.  Indeed, the three-part test for standing focuses solely on the rights of the individual plaintiff.  As a result, an individual that has a right to bring an individual claim under *any* state's law against the defendant has standing under Article III.

[86] *Ramirez v. Dollar Phone Corp.*, 2009 U.S. Dist. LEXIS 92972, at *24-25 (E.D.N.Y. Oct. 1, 2009) (internal quotations omitted).  CVS confuses statutory standing with Article III standing.  "[T]he question whether a plaintiff states a claim for relief goes to the merits in the typical case, not the justiciability of a dispute, and conflation of the two concepts can cause confusion."  *Bond v. United States*, 564 U.S. 211, 219 (2011) (citation omitted).  The Supreme Court has "criticized the implications of treating the validity of a cause of action as jurisdictional" as this approach would "essentially eviscerate[] the distinction between the jurisdictional and merits inquiry[.]"  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 80 (3d Cir. 2003) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998)).

[87] *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (explaining once the named plaintiff establishes that he has suffered an injury from the challenged conduct, it "shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class'");  *see also* 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS §§ 2:5, 2:7 (4th ed. 2010) ("The presence of individual standing is sufficient to confer the right to assert issues that are common to the class … Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.").

- 14 -

additional criteria encompassed in Rule 23."[88]  Numerous Courts of Appeals have also held that

no separate standing inquiry exists outside of Rule 23's requirements.[89]  For example, the

Seventh Circuit reasoned:

> Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing.  Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether a plaintiff is *entitled to relief*…In our view, it is best to confine the term "standing" to the Article III inquiry and thus keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria.[90]

At the class certification stage, under Rule 23, "[t]he relevant question [] is not whether the

Named Plaintiffs have standing to sue Defendants – they most certainly do – but whether their

injuries are sufficiently similar to those of the purported Class to justify the prosecution of a

nationwide class action."[91]  A "would-be class representative with a live claim of her own must

be accorded a fair opportunity to show that certification is warranted."[92]  The claims should not

be "shoehorn[ed] … into an Article III analysis" but rather evaluated under "Rule 23 to ensure

---

[88] 7AA Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1785.1 (3d ed. 2010); *see also* 1 William B. Rubinstein, *et al.*, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. 2011) (same).

[89] *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158-62 (2d Cir. 2012) (whether named plaintiff has "class standing" does not turn on whether she would have "statutory or Article III standing"); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (plaintiff with Article III standing is not limited to asserting "his own rights or redress his own injuries.  To the contrary . . . a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered."); *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (once plaintiff establishes standing to pursue his own claims "[w]hether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions"); *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (where named plaintiff has standing to assert his own claim, whether he can adequately represent the class is determined solely by Rule 23); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998) ("[O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998) ("[O]nce the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.'").  *Accord Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 397-98 (2010) (once Rule 23 is satisfied, the court must certify the class).

[90] *Arreola*, 546 F.3d at 794-95 (emphases in original).

[91] *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) (citing *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002)); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269-70 (D. Mass. 2004).

[92] *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016).

- 15 -

that classes are properly certified."[93]   Accordingly, this Court should reject CVS's attempt to dismiss such claims prior to class certification as analytically premature.[94]

Persuasive authority is also found in this Circuit.  In fact, CVS cites *In re Solodyn Antitrust Litig.*, which found Article III standing at the motion to dismiss stage for direct purchaser and end-payor plaintiffs and reasoned it would consider end-payors' standing to bring claims arising under the laws of the states where they are not residents at class certification.[95] Similarly, in *In re Nexium Antitrust Litig.*, the court determined that named direct purchaser and end-payor plaintiffs had Article III standing due to the alleged overpayment for drugs, postponing its determination as to whether the named plaintiffs may pursue claims on behalf of unnamed class members under the laws of the states where they had not purchased drugs until class certification.[96]

And in *In re Relafen Antitrust Litig.*, the court held that a single named direct purchaser or end-payor plaintiff bringing a claim under Illinois law could adequately represent the claims of class members arising under the laws of different states.[97]  The *Relafen* court expressly *rejected* precedent from one court "dismiss[ing] claims arising under the laws of states in which no named plaintiffs resided or purchased the branded drug."[98]  The *Relafen* court instead endorsed "the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with

---

[93] *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 368 (3d Cir. 2015).

[94] *Ramirez*, 2009 U.S. Dist. LEXIS 92972, at *24-25.

[95] Def. Mem. at 12 n.4 (referencing 2015 WL 5458570, at *14 (D. Mass. 2015)).

[96] 968 F. Supp. 2d 367, 407-08 (D. Mass. 2013).

[97] 221 F.R.D. at 263-64, 267-70.  In *Relafen*, the court rejected the argument that named direct purchaser and end-payor plaintiffs from a limited number of states lack standing to represent a class from a broader range of states.

[98] *Id.* at 268.

reference to the individual named plaintiffs."[99]  Specifically, defendant's approach in *Relafen*,
resurrected by CVS here, "would require class counsel to identify representatives from each state
involved in a multi-state class action, would render class actions considerably more cumbersome
to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual
rights and in 'achiev[ing] economies of time, effort, and expense.'"[100]  Since *Relafen* rejected
defendants' standing arguments on a Rule 23 motion to certify the class, those arguments carry
even less weight on a Rule 12(b)(6) motion to dismiss Plaintiffs' claims at the outset.  The
*Relafen* court's analysis has been followed with near unanimity, because "[i]t is only through a
determination of typicality of claims across the various state statutes that the court will know
whether standing is appropriate for all the claims asserted."[101]

     *Relafen*'s standing analysis and First Circuit precedent squarely applies here.  Each TPP
Plaintiff directly paid CVS for generic prescription drugs that are listed on the CVS Health
Savings Pass prescription drug list during the Class Period.[102]  And the Complaint alleges that as
a result of CVS's unlawful conduct, each Plaintiff paid more than they otherwise would have in
the form of an overcharge.[103]  Accordingly, each Plaintiff satisfies the threshold inquiry required
for Article III standing, namely, showing that they "personally … suffered some actual or

---

[99] *Id.* at 269 (quoting *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002)).

[100] *Id.*

[101] *Kuhl v. Guitar Ctr. Stores, Inc.*, 2008 WL 656049, at *2-3 (N.D. Ill. Mar. 5, 2008); *see also Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187, at *2 (D.N.J. Dec. 3, 2009); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010); *Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, 2008 WL 3833577, at *3-4 (D.N.J. Aug. 13, 2008); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667-68 (E.D. Mich. 2008); *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006); *Ferrell v. Wyeth-Ayerst Labs., Inc.*, 2004 U.S. Dist. LEXIS 15127, at *12 (S.D. Ohio June 30, 2004).

[102] ¶ 42.

[103] *Id.*

threatened injury as a result of putatively illegal conduct of the defendant."[104]  No more is

required to establish Article III standing to pursue the Plaintiffs' claims in this case.[105]

CVS's standing challenge also relies on distinguishable authorities.  CVS cites cases

focused on standing under federal and state antitrust law and does not speak to fraud claims – the

only claims Plaintiffs raise here.[106]  In the indirect purchaser antitrust context, courts require a

class representative from each state to meet an exception to *Illinois Brick Co. v. Illinois*,[107] a

Supreme Court case prohibiting indirect purchaser actions for damages under federal law.  Under

those circumstances, courts are strict to ensure that the class mechanism – a procedural right – is

not used to broaden the substantive right.  Those cases raise distinct standing issues and courts

treat them as such.[108]

The same is not true in this consumer protection context.  The circumstances here are

more akin to *In re AWP*, where the court certified two nationwide classes, which included TPPs,

under the unfair and deceptive trade practice laws of more than 30 states.[109]  In certifying

nationwide TPP classes of state consumer protection laws, the court reasoned that "[i]n a multi-

state class, the case law does not create a per se rule that the Court must appoint a separate

---

[104] *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979).

[105] *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 102-03.

[106] *See, e.g.*, *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757-58 (E.D. Pa. 2014) (emphasizing how for antitrust injury, "named plaintiffs may bring suit only under the laws of states in which they reside or in which they either purchased or made reimbursements"); *In re TFT-LCD Antitrust Litig.*, 2010 WL 2629728, at *4 (N.D. Cal. June 29, 2010) (dismissing plaintiffs' state law antitrust claims, but granting leave to leave to allege contacts with each state concerning the purchases of price-fixed goods in order to satisfy due process).  Here, Plaintiffs do not allege they paid for generic prescription drugs in states other than Indiana.

[107] 431 U.S. 720 (1977).

[108] *See, e.g.*, *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11-12 (D.N.J. Oct. 2, 2013) (finding no standing since indirect purchaser plaintiffs failed to allege that they suffered antitrust injury outside their home states); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-58 (E.D. Mich. 2011) (same); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *1, 10 (D.N.J. Oct. 20, 2011) (same); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (same); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 249-51 (D. Conn. 2015) (same); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (same); *In re Wellbutrin XL Antitrust Litig.* 260 F.R.D. 143, 156-57 (E.D. Pa. 2009) (finding indirect purchaser plaintiffs lacked standing in states where neither a plaintiff nor member is located).

[109] 252 F.R.D. at 85-86, 108-09.

representative for each state or even each group … There is no substantial conflict of interest between the three state groupings which would necessitate a class representative from each group."[110]  Like *In re AWP*, Plaintiffs or TPPs here directly overpaid for prescription drugs as a result of CVS's misstatements regarding U&C prices.[111]

Tellingly, CVS relies on case law that actually supports deferring standing challenges after the motion to dismiss stage.[112]  And, while CVS cites *Lewis v. Casey*, that case concerned inmates' access to courts, post-trial.[113]  In fact, the *Lewis* court recognized that "general factual allegations of injury resulting from defendant's conduct" suffice at the pleading stage.[114]  Here, Plaintiffs' factual allegations of injury resulting from CVS's misrepresentation of its U&C prices suffices.[115]

Here, while Plaintiffs have Article III standing under Indiana law, the Complaint has also alleged that CVS is doing business in all of the states listed in Count I, and the Class is comprised of persons nationwide.  This is all that is required to establish Plaintiffs' standing to pursue their own claims, and Plaintiffs will demonstrate their ability to act as representatives of a

---

[110] *Id*. at 104 (referencing *In re Relafen Antitrust Litig*., 221 F.R.D. 260, 266-70 (D. Mass. 2004)).

[111] Again, CVS conflates Article III standing in citing *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d 34, 48-49 (E.D.N.Y. 2014), and *Pardini v. Unilever United States, Inc*., 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013).  But this Circuit law is compelling where courts have certified consumer and TPP classes under many unfair and deceptive trade practice laws.  *See, e.g*., *In re AWP*, 252 F.R.D. at 94.  Additionally, the class allegations and standing issues here are not "plain enough to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim," so Rule 23 representative standing challenges should be addressed at the class certification stage.  *Pardini*, 961 F. Supp. 2d at 1061 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

CVS also cites unrelated cases in the unique securities and ERISA context.  *See, e.g*., *Winer Family Trust v. Queen*, 503 F.3d 319, 323, 325-26 (3d Cir. 2007) (securities); *In re Herley Indus. Inc., Secs. Litig*., 2009 WL 3169888, at *1, 8, 11 (E.D. Pa. Sept. 30, 2009) (securities); *Forsythe v. Sun Life Fin., Inc*., 417 F. Supp. 2d 100, 119 (D. Mass. 2006) (securities).  *See also Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 184, 203 (2d Cir. 2005) (ERISA).

[112] *See, e.g*., *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 799, 821-22 (1985); *Davis v. FEC*, 554 U.S. 724, 732 (2008).

[113] *Lewis v. Casey*, 518 U.S. 343, 346 (1996).

[114] *Id*. at 358.

[115] *Supra* at 4-10.

class of TPPs that paid for generic drugs at CVS pharmacies nationwide under Rule 23 at the

class certification stage.[116]

## C.   Plaintiffs Have Adequately Plead Their Consumer Protection State Law Claims

### 1.   Plaintiffs are "consumers" and may bring claims under the state consumer protection laws.

While Plaintiffs are corporate entities, they do not buy generic prescriptions for resale or

other business purposes, but pay for purchases for the personal use of their plan members.  When

CVS pharmacies in each of these states dispense a generic prescription, Plaintiffs and its plan

members jointly pay for it at the consumer retail level – it is a plan member's acquisition of a

CVS generic prescription for his or her own personal purpose and presentation of that

prescription to a pharmacy for dispensing that triggers TPPs' payments for that generic

prescription on behalf of that member.[117]

#### a.   Plaintiffs are "consumers" under the laws of Indiana.

CVS argues that Plaintiffs' claim under Indiana's Deceptive Consumer Sales Act

(IDCSA) fails because they "are not suing for injuries suffered 'as a consumer.'"[118]  In support

of that misguided proposition, CVS wrongly focuses on whether Plaintiffs "use" or "utilize" the

prescriptions dispensed by CVS.[119]  CVS concedes that Indiana law does not support this narrow

interpretation, and relies on the definition of "consumer" in the Black's Law Dictionary.[120]  The

IDCSA, however, provides a cause of action for "[a] person relying upon an uncured or

---

[116] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 102-03.

[117] *Supra* at 4-10; *Pennsylvania Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 483 (D. Del. 2010) ("the ultimate purpose for which the product is purchased is determinative in deciding whether plaintiff has a cognizable claim," not the identity of the purchaser); *AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181, at *12-13 (E.D. Pa. Mar. 11, 2010) (holding health and welfare trust fund plaintiffs had standing under the Pennsylvania Unfair Trade Practices and Consumer Protection Law because they "actually paid for the fentanyl patches on behalf of their members for their members' personal, family or household use").

[118] Def. Mem. at 13-15.

[119] Def. Mem. at 16.

[120] Def. Mem. at 16.

incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater."[121]  A "consumer transaction" includes the sale of personal property for purposes that are primarily personal.[122]  In fact, "person" includes a corporation under the IDCSA.[123]  Indeed, the court in *In re Bextra & Celebrex Mktg. Sales Practices & Liab. Litig.*, found that Indiana TPPs qualify as a "person" under the IDCSA.[124]  Courts commonly hold that end-payors, like Plaintiffs, have standing to assert consumer protection claims for prescription drug purchases on behalf of their plan participants.[125]

The following cases cited by CVS bear no resemblance to the allegations set forth in the Complaint.  The key distinction in the cases, *In re Rezulin Prods. Liab. Litig.*,[126] and *In re*

---

[121] IND. CODE § 24-5-0.5-4(a).  The IDCSA statute is liberally construed and applied to promote its purposes, which are to "(1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices; (2) protect consumers from suppliers who commit deceptive and unconscionable sales acts; and (3) encourage the development of fair consumer sales practices."  IND. CODE § 24-5-0.5-1(a), (b).

[122] IND. CODE § 24-5-0.5-2(1).

[123] IND. CODE § 24-5-0.5-2(2).  Indiana courts recognize that the protections afforded by the IDCSA are equally available to business entities.  *See also Liberty Publ'g, Inc. v. Carter*, 868 N.E.2d 1142, 1145 (Ind. Ct. App. 2007), *rev'd on other grounds*, 887 N.E.2d 92 (Ind. 2008).

[124] 495 F. Supp. 2d 1027, 1036-37 (N.D. Cal. 2007).  CVS's attempt to dampen the persuasiveness of *Bextra* is unavailing.  Def. Mem. at 18.  In that case, the court found "no serious dispute" that the plan purchased prescription drugs for the personal use of its members.  495 F. Supp. 2d at 1033-35.  It further held that TPPs had standing under Mich. Stat. § 445.902 as long as the defendants' challenged acts were in "trade or commerce," noting that "the Act does not require the plaintiff itself to have engaged in the 'trade or commerce' transaction with defendant."  The *Bextra* court also upheld TPP plaintiffs' claims under New York Deceptive Acts & Practices Act, Section 349, as sufficiently "consumer oriented." *Id.* at 1033-35.

[125] *See, e.g.*, *AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181, at *12-13 (holding health and welfare trust fund plaintiffs had standing under the Pennsylvania Unfair Trade Practices and Consumer Protection Law because they "actually paid for the fentanyl patches *on behalf* of their members for their members' personal, family or household use") (emphasis in original); *FTC v. Mylan Labs, Inc.*, 62 F. Supp. 2d 25, 48 (D.D.C. 1999) ("[d]rugs sold to state Medicaid programs or drug stores are not outside the scope of personal, family or household purchases"); *see also Pennsylvania Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d at 483 ("the ultimate purpose for which the product is purchased is determinative in deciding whether plaintiff has a cognizable claim," not the identity of the purchaser).

[126] Def. Mem. at 16-17 (citing 392 F. Supp. 2d 597, 599 (S.D.N.Y. 2005) (granting summary judgment and dismissing plaintiffs' consumer protection act claims because plaintiffs failed to sufficiently allege the pharmaceutical manufacturers misrepresented the safety and efficacy of the drug)).

- 21 -

*Schering-Plough Corp. Intron*[127] is that the misrepresentations concerned the efficacy or safety of the drugs to plan members.  Unlike *Rezulin* and *Schering-Plough*, the misrepresentations here are not indirect.  CVS made misrepresentations about the U&C prices to TPPs directly to cause the TPPs to overpay.[128]  Similar to *In re AWP*, CVS directly deceived the TPPs.[129]  Thus, cases regarding misrepresentations of efficacy and safety have no bearing here.

CVS also conflates the summary judgment holding in *In re Actiq Sales & Mktg. Practices Litig.*[130]  In that case, a union welfare fund was a "consumer," as required for standing to bring an action under the IDCSA alleging that, as a TPP for a prescription, it suffered monetary losses when the manufacturer engaged in the marketing and sale of the medication for purposes other than those approved by the Food and Drug Administration.  In fact, the *Actiq* court held that "third party payor Plaintiff ICWF falls squarely within the ordinary definition of 'consumer.'"[131]  The *Actiq* court stated:  "… the IDCSA does not require a direct transaction between the plaintiff and the defendant involving the sale of goods primarily for personal, family, charitable, agricultural, or household purposes.  To the contrary, it requires only that the plaintiff's damages arise from defendant's provision of such goods."[132]  Like *Actiq*, it is apparent here that Plaintiffs paid for generic prescription drugs for its members, which qualify as consumer transactions for personal purposes under the IDCSA.

---

[127] Def. Mem. at 17 (citing 2009 U.S. Dist. LEXIS 58900, at *1-2, 36 (D.N.J. July 10, 2009) (dismissing plaintiffs' civil RICO and New Jersey consumer fraud claims because plaintiffs failed to sufficiently allege the pharmaceutical products were ineffective for their off-label applications)).  The *Schering-Plough* plaintiffs did not allege claims under the IDCSA.

[128] *Supra* at 4-7.

[129] *In re AWP*, 252 F.R.D. at 85-90.

[130] Def. Mem. at 18 (citing 790 F. Supp. 2d 313, 326-27 (E.D. Pa. 2011) (holding TPPs have standing and qualified as a "consumer" under IDCSA even though the plaintiff itself did not consume or use the defendant's drug)).

[131] *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 325-26 (E.D. Pa. 2011).

[132] *Id.* at 325-26. *See also In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 495 F. Supp. 2d at 1036-37 (finding TPPs to be "consumers" under the IDCSA).

- 22 -

### b.   Plaintiffs' claims for prescriptions purchased prior to July 1, 2014, are viable.

Next, CVS mistakenly argues that the Plaintiffs cannot state a claim for prescriptions purchased prior to July 1, 2014, because the Complaint does not allege a violation of the 2013 version of the IDCSA.[133]  Although Plaintiffs' class claims go back to 2008, CVS solely cites the 2013 version of the IDCSA, even though there have been five versions to date.[134]  The current version of the IDCSA provides generally:

> A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.  Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.[135]

All versions of the IDCSA since 2007 further describe a deceptive act as one "[t]hat a specific price advantage exists as to such subject of the consumer transaction, if it does not and if the supplier knows or should reasonably know that it does not."[136]  That is exactly what Plaintiffs allege here – TPPs were guaranteed to pay no more than their contracted price *or* the U&C price, which CVS then manipulated to ensure that no price advantage existed.

Moreover, Plaintiffs' claims do fit comfortably within any version of the IDCSA since 2008.  First, CVS is a "supplier" for purposes of the IDCSA, since it "regularly engages in or solicits consumer transactions."[137]  Second, CVS committed a "deceptive act" within the meaning of the statute when it submitted false and inflated prices for generic prescription drugs orally, in writing, or via electronic communication, in order to deceive consumers, like the

---

[133] Def. Mem. at 18-19.

[134] *See* Ind. Code § 24-5-0.5-3(a), (b)(6) (2016); Ind. Code § 24-5-0.5-3(a)(6) (2014); Ind. Code § 24-5-0.5-3(a)(6) (2013); Ind. Code § 24-5-0.5-3(a)(6) (2011); Ind. Code § 24-5-0.5-3(a)(6) (2009).

[135] Ind. Code § 24-5-0.5-3(a) (2016).

[136] *See supra* at n.134.

[137] Ind. Code § 24-5-0.5-2(a)(3)(A).

- 23 -

Plaintiffs.[138]  Third, Plaintiffs allege how they had no way of determining on their own whether the prices they received from CVS were the common prices offered to cash-paying members of the public or a significantly inflated price.[139]

CVS's remaining arguments also fail.  While CVS cites cases that hinge on whether Plaintiffs provided notice to CVS,[140] the Complaint alleges that Plaintiffs complied with the statutorily-mandated notice requirements, including uncured notice under Indiana Code Section 24-5-0.5-5(a).[141]  While CVS cites to cases concerning non-disclosure or lack of misrepresentation,[142] Plaintiffs allege that "CVS deceived Plaintiffs by reporting U&C prices significantly above the prices available to members of the HSP program," which the *Corcoran* court agreed is a deceptive act as opposed to a "non-disclosure."[143]  Accordingly, dismissal is inappropriate at this early stage.

### 2.  Plaintiffs' claims are actionable under the state consumer protection laws.

CVS argues Plaintiffs have failed to allege "the elements of each consumer protection statute cited in the Complaint."[144]  However, as set forth above, Plaintiffs have alleged the facts demonstrating that Plaintiffs have satisfied the who, what, where, and when of CVS's scheme to submit false and inflated usual and customary prices for generic prescription drugs which

---

[138] ¶¶ 26-27, 31-36, 38, 40, 65.

[139] ¶¶ 26-38.

[140] Def. Mem. at 19 (citing *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 344 (D.N.J. 2014) (dismissing the IDCSA claim and reasoning plaintiff's failure to allege that he provided notice to defendants was "fatal to his claim"); *Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144, at *27-28 (D.N.J. May 27, 2015) (granting summary judgment on IDSCA claim for lack of notice)).

[141] ¶ 63.

[142] Def. Mem. at 19 (citing *Lawson v. Hale*, 902 N.E.2d 267, 273-74 (Ind. Ct. App. 2009), and *Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011)).

[143] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 18.

[144] Def. Mem. at 13-15.

deceived the insurers and caused them to pay billions in overcharges.[145]  Just as the *Corcoran*

court found that the consumer plaintiffs stated a plausible claim that CVS "engaged in deceptive

practices" "by reporting U&C prices significantly above the prices available to members of the

HSP program" resulting in the charge of higher prices (and thus higher copays to the

consumers),[146] this Court should also find that the TPP Plaintiffs have plausibly alleged how

CVS's scheme caused them to bear the brunt of the higher prices charged in violation of state

law.

      CVS makes much of the notion that the Plaintiffs fail to allege suffering in any state other

than Indiana.  While CVS cites a case for each state for the basic proposition that the state

consumer fraud act only applies to acts committed within that state,[147] Plaintiffs do not dispute

that the law of the state of residence will apply to each class members' claim.  Rather, this is just

another attempt by CVS to conflate Article III and Rule 23 standing.[148]

      In addition to erroneously invoking standing, CVS incorrectly suggests the differences

between state laws necessarily preclude class treatment here.  To the contrary, "if the elements of

the cause of action are the same and the legal standards on 'important/

meaningful/significant/pivotal' issues are substantially similar[,] the state laws can be grouped

for purposes of class certification."[149]  Practically speaking, "'[t]here will never be 50 different

substantive rules, or even fifteen or ten.  States tend to copy their laws from each other, and

many use identical or virtually identical rules.  In practice, the court will seldom have to deal

---

[145] *Supra* at 7-12; *see also* ¶ 39.

[146]*Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 18.

[147] Def. Mem. at 20-21, n.10.  *See also supra* at 13-20.

[148] *In re Telectronics Pacing Sys. Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997).

[149] *Id.*

- 25 -

with more than three or four formulations.'"[150]  Not surprisingly, a wealth of authority exists

certifying similar classes through the grouping of similar state laws.[151]

Ultimately, CVS merely complains of the manageability of Plaintiffs' state law claims, a

concern with a viable solution and one that simply does not compel dismissal.[152]  But CVS

cannot point to any dissimilarities between the various state consumer protection laws that

warrant dismissal.  Plaintiffs have, in fact, already engaged in reviewing and grouping the state

laws, which is precisely why the Complaint includes only 37 of the available 50 states' consumer

protection statutes.[153]  While the process can be challenging, such is the nature of complex

litigation and highlights precisely why resolving the issue on a motion to dismiss is particularly

rash.

Although Plaintiffs maintain that questions of class certification are inappropriate at this

early stage, Plaintiffs' complaint still meets Rule 23's requirements of commonality and

predominance.  The standard for commonality is whether there is a common question that is "of

---

[150] *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291 n.19 (E.D. Pa. 2003) (quoting Larry Kramer, Choice of Law in Complex Litigation, 71 N.Y.U. L. REV. 547, 583 (1996)).

[151] *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (affirming certification and grouping of eight states and rejecting defendant's arguments that "idiosyncratic" differences among state law precluded certification because "[a]s long as a sufficient constellation of common issues binds class members together," state law variations "will not automatically foreclose class certification under Rule 23(b)(3)"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 315 (explaining that in a class action may "differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit," particularly where the "elements of these common law claims [were] substantially similar and any differences fall into a limited number of predictable patterns"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) (explaining "[v]ariations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members," and any differences "are not sufficiently anomalous to deny class certification" because "idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *In re AWP*, 252 F.R.D. at 94 (certifying 36 state consumer fraud class of end-payors of pharmaceuticals); *Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 90 (D. Mass. 2007) (certifying 23 state breach of warranty group).

[152] *O'Keefe*, 214 F.R.D. at 291 n.19 ("Differing state law would complicate jury instructions, but this is a manageability complication that may be solved by categorizing sub-class of similar state laws for trial purposes."); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) ("The question before the Court here is not whether the laws of multiple states are identical, but whether the Court can manage the differences.").

[153] ¶ 62.  But to date, Plaintiffs now assert 33 consumer protection act claims because they are dropping four state consumer protection act claims under the laws of Kansas, New Jersey, Ohio, and Texas.  *See infra* at 27-28.

such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[154] "Because the requirement may be satisfied by a single common issue, it is easily met . . . "[155] The standard for predominance is whether questions of law or fact common to class members predominate over questions affecting individual members.[156]

Here, Defendant's conduct was identical as to all class members: CVS knowingly and intentionally overcharged Plaintiffs and TPPs for generic prescription drugs by submitting claims for payment to TPPs at fraudulently inflated prices.[157] Thus, a single, common question predominates across the class – namely, whether CVS's dissemination of deceptive and misleading U&C prices damaged Plaintiffs regarding the sale of and payments for generic prescription drugs within the meaning of the statute. These common facts render Plaintiffs' state law claims inappropriate for resolution on a motion to dismiss, and at the appropriate time, will support certification.[158]

### a. Plaintiffs are "consumers" for the purposes of the laws of Kentucky, Maine, Vermont, California, Virginia, Wyoming, and Illinois.

To start, in order to streamline the analysis of this issue, Plaintiffs withdraw the consumer protection claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq*. (Compl., ¶ 62 (w)), Kansas, Kan. Stat. Ann. § 50-623, *et seq.* (Compl., ¶ 62(m)); Ohio, Ohio Rev. Code Ann. § 1345.01, *et seq.* (Compl., ¶ 62(bb)), and Texas Deceptive Trade Practices-

---

[154] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[155] *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

[156] FED. R. CIV. P. 23(b)(3); *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 522 F.3d 6, 18 (1st Cir. 2008).

[157] *See, e.g., supra* at 4-7; *see also* ¶¶ 1, 3-5, 31-41, 76-81.

[158] *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."); *Schumacher v. Tyson Fresh Meats, Inc*., 221 F.R.D. 605, 612 (D.S.D. June 7, 2004) ("Where federal claims and common law claims are predicated on the same factual allegations and proof will be essentially the same . . . certification of the class for the whole action is appropriate.").

Consumer Protection Act, Tex. Code Ann. Bus. & Con. § 17.41, *et seq*. (Compl., ¶ 62(ff)).

Absent those claims, CVS's challenges to the capacity of TPPs to recover as "consumers" under

the laws of Kentucky, Maine, Vermont, California, Virginia, Wyoming, and Illinois because they

are "employee benefit plan[s]" all fail.

**Kentucky Consumer Protection Act (KCPA)**:  The Kentucky Consumer Protection Act

(KCPA), Ky. Rev. Stat. Ann. § 367.170, declares "unfair, false, misleading, or deceptive acts of

practices in the conduct of any trade or commerce are hereby declared unlawful."  The KCPA

further provides a cause of action to persons who have purchased or leased "goods or services

primarily for personal, family or household purposes."[159]  Businesses have standing under the

KCPA.[160]

**Maine Unfair Trade Practices Act (Maine UTPA)**:  The Maine UTPA, 5 Me. Rev.

Stat. § 213, provides a cause of action for "[a]ny person who purchases or leases goods …

primarily for personal, family or household purposes and thereby suffers any loss of money …."

A corporation is a "person."[161]

**Vermont Consumer Fraud Act (VCFA)**:  Under the VCFA, a "consumer" is defined as

"any person who purchases … or otherwise agrees to pay consideration for goods or services not

for resale in the ordinary course of his or her trade or business but for the use or benefit of his or

her business or in connection with the operation of his or her business."[162]  The Supreme Court

---

[159] KY. REV. STAT. ANN. § 367.220(1).

[160] *See, e.g.*, *KASP, Inc. v. Adesa Lexington, LLC*, 2006 WL 385310, at *10-11 (E.D. Ky. Feb. 17, 2006) (denying motion to dismiss state law claims under the KCPA).  In arguing against the application of the KCPA, CVS cites *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010). But in that case, there was a specific agreement to lease the disputed aircraft to another party, not plaintiff.  *Id.*

[161] *Id.* § 206.  *See, e.g.*, *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 268 (Me. 1995) (vacating summary judgment as to UTPA claims and reasoning that failing to comply with the notice requirement did not preclude a UTPA action); *In re AWP*, 252 F.R.D. at 108-09 (certifying consumer and TPP classes under UTPA).

[162] VT. STAT. ANN. TIT. 9 § 2451a(a).

- 28 -

of Vermont held "unequivocally that business entities are entitled to the same rights under the Act as other consumers."[163]

**California Legal Remedies Act (CLRA)**:  California prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ."[164]  "Person" includes a corporation.[165] The CLRA broadly applies to any transaction "intended to result or which results in the sale or lease of goods or services to any consumer…."[166]  "Consumer" is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."[167]  Plaintiffs were directly injured in purchasing CVS generic prescription drugs for its plan participants that were primarily for personal, family, or household use.[168]

**Virginia Consumer Protection Act (VCPA)**:  Plaintiffs' purchases of CVS generic prescription drugs for its plan participants do qualify as "consumer transactions" under the VCPA.  Section 59.1-200 of the VCPA provides that certain "[f]raudulent acts or practices committed by a supplier in connection with a consumer transaction" are unlawful.  The VCPA "inarguably applies to all consumer transactions involving services and/or goods which are ultimately intended for personal use," and "does not seem to limit protection only to those

---

[163] *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 965 A.2d 460, 467 (Vt. 2008).  *See also Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003) (holding the VCPA countenanced lawsuit brought by corporation and explained how Vermont law reference to "person" includes a corporation, Vt. Sta. Ann. tit. 1, § 128 (1995) ("'[p]erson' shall include any … corporation")).  *See also In re AWP*, 252 F.R.D. at 98, 109 (certifying class of Vermont TPPs).

[164] Cal. Civ. Code § 1770(a).

[165] Cal. Civ. Code § 1761(c).

[166] Cal. Civ. Code § 1770(a).

[167] Cal. Civ. Code § 1761(d).

[168] *See, e.g.*, *Center for Sci. in the Pub. Interest v. Bayer Corp.*, 2010 WL 1223232, at *3 (N.D. Cal. Mar. 25, 2010) (finding that since plaintiff was suing in a representative capacity on behalf of consumers, it lacked standing under the UCL or CLRA, but recognizing that an organization may have standing to sue based on injury to itself).

- 29 -

transactions that occur directly between a supplier and the ultimate consumer."[169]  Here, CVS

engages in a "consumer transaction" each time it sells generic prescription drugs to Plaintiffs for

use by its plan participants primarily for personal, family, or household purposes.

**Wyoming Consumer Protection Act (WCPA)**:  The WCPA, Wyo. Stat. Ann. § 40-12-

101, *et seq*., defines "consumer transactions" as "the advertising, offering for sale, sale or

distribution of any merchandise to an individual for purposes that are primarily personal, family

or household."[170]  Plaintiffs' purchases of CVS generic prescription drugs for its plan

participants were primarily for personal, family, or household use.  Notably, a claim under the

WCPA, on behalf of end-payer pharmaceutical purchasers was certified in *In re AWP*, 252

F.R.D. at 97, 108.

**Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)**:  "Any person

who suffers actual damage as a result of" an unfair or deceptive act may recover actual and

punitive damages.[171]  The term "person" includes corporations.[172]  A claim under the ICFA, 815

ILCS § 505/1, *et seq*., on behalf of end-payer pharmaceutical purchasers was certified in *In re

AWP*.[173]

> **b.     Louisiana, South Carolina, Virginia, and Michigan permit class
> actions.**

Next, CVS claims dismissal is warranted under the consumer protection statutes of the

following six states because they purportedly prohibit class actions:  Louisiana (Compl.,

¶ 62(o)), South Carolina (Compl., ¶ 62(dd)), Virginia (Compl., ¶ 62(hh)), Kansas (Compl.,

---

[169] *See also Virginia Beach Rehab. Specialists, Inc. v. Augustine Med., Inc.*, 58 Va. Cir. 379, 386 (Va. Cir. Ct. 2002) (holding that the VCPA "inarguably applies to those consumer transactions involving services and/or goods which are ultimately intended for personal use," and that its language "does not seem to limit protection only to those transactions that occur directly between a supplier and the ultimate consumer").

[170] WYO. STAT. § 40-12-102(a)(ii).

[171] 815 ILCS 505/10a(a).

[172] 815 ILCS 505/1(c).

[173] *In re AWP*, 252 F.R.D. at 98, 108-09.

¶ 62(m)), Michigan (Compl., ¶ 62(r)), and Ohio (Compl., ¶ 62(bb)).[174]  With the exception of

Kansas and Ohio, CVS is wrong.[175]

**South Carolina Unfair Trade Practices Act (SCUTPA)**:  While SCUTPA's § 39-5-

140(a) does not permit suits in a representative capacity,[176] "South Carolina courts do not

interpret this provision as prohibiting class actions under the SCUTPA where the class members

have suffered actual damages themselves."[177]  In *Shady Grove Orthopedic Assocs., P.A. v.*

*Allstate Ins., Co.*, 559 U.S. 393, 401 (2010), the Supreme Court held that "Rule 23 permits all

class actions that meet its requirements, and a State cannot limit that permission by structuring

one part of its statute to track Rule 23 and enacting another part that imposes additional

requirements."  Accordingly, courts have interpreted *Shady Grove* to mean "that these state

prohibitions do not affect the substantive rights of individuals because 'a rule barring class

actions does not prevent individuals who would otherwise be members of the class from bringing

their own separate suits or joining in a preexisting lawsuit.'"[178]  Since the class action provision

in SCUTPA is procedural in nature, Rule 23 will govern Plaintiffs' claims and CVS's motion to

dismiss on this basis should be denied.[179]

---

[174] Def. Mem. at 23-24.

[175] Plaintiffs withdraw their consumer protection claims under the Kan. Stat. Ann. § 50-623, *et seq*. (Compl., ¶ 62(m)) and Ohio Rev. Code Ann. § 1345.01, *et seq*. (Compl., ¶ 62(bb)).

[176] S.C. CODE ANN. § 39-5-140.

[177] *Waters v. Advent Prod. Dev.*, 2008 U.S. Dist. LEXIS 50686, at *24-25 (S.D. Cal. June 26, 2008) (citing *Faircloth v. Jackie Fine Arts, Inc*., 682 F. Supp. 837, 845 (D.S.C. 1988) (explaining the clause pertains to representatives of estates and not class action plaintiffs), *aff'd in part and rev'd in part on other grounds*, 938 F.2d 513 (4th Cir. 1991); *see also Gentry v. Yonce*, 337 S.C. 1, 522 S.E.2d 137 (1999) (reversing ruling that SCUTPA cause of action was not sufficiently pled in case brought as class action)).

[178] *In re Cast Iron Soil Pipe & Fittings Antitrust Litig*., 2015 U.S. Dist. LEXIS 121620, at *91 (E.D. Tenn. June 24, 2015) (denying defendants' motion to dismiss under the SCUTPA and Montana's Consumer Protection Act). *See also In re Hydroxycut Mktg. & Sales Practices Litig*., 299 F.R.D. 648, 654 (S.D. Cal. 2014) (finding claims under the consumer protection statutes of Georgia, Louisiana, and South Carolina could be pursued as a class action); *In re Auto. Parts Antitrust Litig*., 50 F. Supp. 3d 836, 861 (E.D. Mich. 2014) ("Rule 23 applies in federal court unless it 'abridge[s] … § 2072(b)'").  The cases CVS cites are pre-*Shady Grove* and are not persuasive.  *See, e.g.*, *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115 (2009); *Morris v. Sears, Roebuck & Co.*, 765 So.2d 419, 421 (La. Ct. App. 2000).

[179] *See, e.g.*, *In re Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *91.

**Louisiana Unfair Trade Practices and Consumer Protection Law**:  Similar to South Carolina, while the text of Louisiana's statute indicates that actions may not be brought in a "representative capacity," it may not preclude class actions.[180]  Since the class action provision in Louisiana's statute is procedural in nature, Rule 23 will govern Plaintiffs' claims and CVS's motion to dismiss on this basis should be denied.[181]

**Michigan Consumer Protection Act**:  Michigan expressly permits class actions under Mich. Comp. Laws Ann. § 445.911(3).  CVS misconstrues Mich. Comp. Laws Ann. § 445.911(3) in arguing the statute "authorize[s] class actions only if certain authorities have placed the defendant on notice that its conduct is unfair or deceptive practice under state law."[182]  CVS focuses on one option, § 445.911(3)(c), and ignores the rest of the statute that permits class actions arising from "[a] method, act or practice in trade or commerce defined as unlawful under section 3."[183]  "Trade or commerce" means "the conduct of a business providing goods . . . primarily for personal, family, or household purposes and includes the advertising . . . offering for sale . . . sale . . . or distribution of [an article.]"[184]  "Person" includes corporations.[185]  A person pursuing a class action can recover the "actual damages caused by" the unlawful act.[186]  No pre-suit notice is required.[187]

---

[180] LA. REV. STAT. ANN. § 51:1409.

[181] *See supra* at 31 (discussing *Shady Grove*).  *See*, *e.g.*, *In re Hydroxycut*, 299 F.R.D. at 654 (finding claims under the consumer protection statutes of Georgia, Louisiana, and South Carolina could be pursued as a class action).  CVS cites *Morris*, 765 So.2d at 421, but that case is pre-*Shady Grove* and not persuasive.

[182] Def. Mem. at 24.

[183] MICH. COMP. LAWS ANN. § 445.911(3) (referring to MICH. COMP. LAWS § 445.903(1)).

[184] MICH. COMP. LAWS § 445.902(1)(g).

[185] MICH. COMP. LAWS § 445.902(1)(d).

[186] MICH. COMP. LAWS § 445.911(3).

[187] *See*, *e.g.*, MICH. COMP. LAWS § 445.912(1).

- 32 -

**Virginia Consumer Protection Act (VCPA)**:  Although the Virginia statute does not expressly authorize class actions,[188] class actions in federal court are not precluded under Federal Rule 23.[189]

**D.     The Complaint Properly Asserts Viable Common Law Claims**

    **1.     Plaintiffs' common law claims properly sound in tort, not contract law.**

CVS argues that Plaintiffs' common law tort claims are nothing more than "disguised contract claims" for which only the law of contract provides a remedy.[190]  In support of this proposition, CVS asserts that only "a contract provides the Plaintiffs' basis for claiming CVS 'overcharged' them. . . ."[191]  This argument was soundly rejected in *Corcoran*, where the Court explained:

> The gravamen of Plaintiffs' allegations is that CVS created the
> HSP program to report misleading U&C prices in a manner that
> contravened industry standards with the intent to deceive Plaintiffs
> and class members. Plaintiffs additionally allege that CVS
> misrepresented the availability of the HSP program and their
> ability to participate therein.  *These allegations undoubtedly fall
> outside of CVS's contractual obligations to third party payors.*[192]

Just as in *Corcoran*, Plaintiffs allege:

---

[188] *See W.S. Carnes, Inc. v. Board of Supervisors*, 478 S.E.2d 295, 300 (Va. 1996) (finding no class actions allowed unless authorized by statute).

[189] *See supra* at 31 (discussing *Shady Grove*).  The cases CVS cites are pre-*Shady Grove* and are not persuasive. *See, e.g., Miller v. National Wildlife Fed'n*, 1987 WL 488717, at *1 (Va. Cir. Ct. 1987); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 294 (D.N.J. 2009) (finding a conflict of laws between Virginia and New Jersey because VCPA does not permit class action claims).  The court in *Miller* did recognize that although "[c]lass actions were not generally recognized at common law, but the Courts of Equity have long recognized the right of one or a few to sue for themselves and others similarly situated." 1987 WL 488717, at *1.  And the court in *Miller*, did not foreclose class actions, it simply found plaintiff did not meet the requirements in an equity suit to bring a representative action. *Id.* at *1-2.

[190] Def. Mem. at 24.

[191] *Id*. at 27.

[192] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 19 (emphasis added).

- "CVS is required to state accurately its usual and customary price for every dispensing event, *in accordance with the National Council for Prescription Drug Program ("NCPDP") requirements*."[193]

- "CVS used the industry standard NCPDP reporting for the electronic transmission *and adjudication* of its pharmacy claims."[194]

- "*Pursuant to the NCPDP reporting standard, pharmacies are required to report the amount of its U&C price* for each prescription transaction using NCPDP's mandatory pricing segment code 426-DQ."[195]

Plaintiffs also provide several independent bases on which CVS is placed on notice that "[w]here the U&C is less than the negotiated price, CVS may not charge a drug price greater than the U&C."[196]   CVS's challenge that Plaintiffs fail to cite "any other basis, save a private contract, that could restrict CVS's reimbursement from the Plaintiffs to the U&C price," therefore, rings hollow.[197]

CVS's conduct in deliberately falsifying its reported U&C prices to TPPs, intending thereby to induce ill-gotten gains, illustrates the classic tort of fraud.[198]   Such conduct is actionable regardless of any contract between the parties, as it is independently at odds with industry NCPDP reporting requirements, at the very least.   For example, in *America's Directories Incorporated, Inc. v. Stellhorn One Hour Photo, Inc.*, the Indiana court found that a fraud claim is not merely a repackaged version of a breach of contract claim where it establishes tort of fraud independent of a breach of contract.[199]   Accordingly, Plaintiffs have properly asserted independent tort-based claims.

---

[193] ¶ 3 (emphasis added).

[194] ¶ 15 (emphasis added).

[195] ¶ 16 (emphasis added).

[196] ¶ 27.

[197] Def. Mem. at 27.

[198] *See*, *e.g.*, *Wright v. Pennamped*, 657 N.E.2d 1223 (Ind. Ct. App. 1995) (elements of actual fraud in Indiana).

[199] 833 N.E.2d 1059, 1067-68 (Ind. Ct. App. 2005).

- 34 -

## 2.      The economic loss rule does not bar Plaintiffs' common law claims.

CVS claims that the economic loss rule bars any tort claim arising from the conduct alleged in the Complaint.[200]  First, as found by the court in *Corcoran* above, "the very premise" of CVS's argument is false – Plaintiffs assert independent tort claims, not "disguised breach of contract claims."[201]  Second, "[t]his is not a case seeking recovery for losses caused to the product by the product.[202]  In Indiana, as elsewhere, the economic loss rule only bars recovery "where a negligence claim is based upon the failure of a product to perform as expected and the plaintiff suffers only economic damages."[203]  The economic loss rule does not bar recovery for "losses due to the alleged misrepresentations or omissions by [defendant]." [204]

Here, Plaintiffs make no claim that any drugs for which TPPs provided reimbursement "failed to perform as expected," or that any damage was caused to the drugs by any defect in the drugs themselves.  Rather, Plaintiffs claim that they were defrauded when CVS misrepresented the price reported pursuant to industry standards as CVS's "usual and customary" price, thereby causing TPPs to suffer significant damages as a result of the fraud.[205]  Thus, the claim here is for "recovery of [plaintiffs'] losses due to the alleged misrepresentations or omissions by [defendant]," and not for damage to any product.[206]

Third, a majority of jurisdictions hold that "intentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof

---

[200] Def. Mem. at 26.

[201] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 19.  *Supra* at 33-34.

[202] *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 705 (Ind. Ct. App. 2004) (finding it is not a "'failure to perform' case").

[203] *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1089 (Ind. 1993).

[204] *Kapoor v. Dybwad*, 2015 WL 8914652, at *23 (Ind. Ct. App. Dec. 15, 2015).

[205] *See, e.g.*, ¶¶ 40, 41.

[206] *Kapoor*, 2015 WL 8914652, at *23.

- 35 -

of intent generally remain viable despite the economic loss doctrine."[207]  The simple reason for

this exception is that "the allocation of risk for fraud cannot be fairly negotiated and bargained

for where one party knows of the fraud and the other party does not."[208]  Here, Plaintiffs'

allegations of intentional fraud fall squarely within this exception.[209]

Courts have also recognized exceptions for purely economic losses in cases involving

negligent misstatements.  In *Indianapolis – Marion Cty. Pub. Library v. Charlier Clark & Linard*

*P.C.*, the Indiana Supreme Court held, "[i]ndeed we have mentioned possible exceptions (for

purposes of illustration only) – lawyer malpractice, . . . and negligent misstatement."[210]  Here,

---

[207] *Giles v. GMAC*, 494 F.3d 865, 875 (9th Cir. 2007) (internal citations omitted). *See also* Arizona:  *KD & KD Enters., LLC v. Touch Automation, LLC*, 2006 WL 3808257, at *3 (D. Ariz. Dec. 27, 2006); California: *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 276 (Cal. 2004); Florida:  *Tiara Condo. Ass 'n, Inc. v. Marsh & McLennan Co.'s, Inc.*, 110 So. 3d 399, 407 (Fla. 2013); Georgia: *Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*, 57 F. Supp. 3d 1389, 1397-98 (N.D. Ga. 2014); Illinois: *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997); Indiana: *Tecnomatic, S.p.A. v. Remy, Inc.*, 2012 WL 2376066, at *8 (S.D. Ind. June 22, 2012); Maryland: *UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 194 (2014), *aff'd*, 115 A.3d 125 (Md. 2015); Massachusetts: *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 163 (D. Mass. 2010); New Jersey: *Alloway v. General Marine Indus., L.P.*, 695 A.2d 264, 274 (N.J. 1997); New York: *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297-98 (S.D.N.Y. 2015); Ohio: *Eysoldt v. ProScan Imaging*, 957 N.E.2d 780 (Ohio Ct. App. 2011); Pennsylvania: *Air Prods. & Chems., Inc. v. Eaton Metal Prods., Co.*, 256 F. Supp. 2d 329, 335-36 (E.D. Pa. 2003); Texas: *Barcenas v. Federal Home Loan Mortg. Corp.*, 2013 WL 286250, at *4 (S.D. Tex. Jan. 24, 2013).

[208] *See* Steven C. Tourek, Thomas H. Boyd, & Charles J. Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine and Common Law Causes of Action for Fraud and Misrepresentation*, 84 IOWA L. REV. 875, 939 (1999); Anthony Niblett, Richard A. Posner, & Andrei Shleifer, *The Evolution of a Legal Rule*, 39 J. LEGAL STUD. 325, 333-34 (2010) ("Intentional wrongdoing is a generally recognized exception" to the economic loss doctrine in "the vast majority of jurisdictions.").

[209] CVS cites inapposite case law where the fraud exception to the economic loss rule was simply not at issue. *See, e.g., Indianapolis – Marion Cty. Pub. Library v. Charlier Clark & Linard P.C.*, 929 N.E.2d 722, 726 (Ind. 2010) (claiming negligent failure to perform against general contracts, not fraud); *Tecnomatic, S.P.A. v. Remy, Inc*., 2012 WL 2376066 (S.D. Ind. 2012) (fraud claim was not addressed under economic loss rule); *Boston Inv. Prop. No. 1 State v. E.W. Burman, Inc*., 658 A.2d 515 (R.I. 1995) (concerning negligence of the general contractor, not fraud); *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1274 (R.I. 2007) (concerning professional negligence, not fraud, against land surveyor); *Western Reserve Life Assur. Co v. Conreal, LLC*, 715 F. Supp. 2d at 282-70, 289-90 (concerning negligence claims against brokers and agents and allowing fraud claims); *Rollander Enters., Inc. v. H.C. Nutting Co.*, 2011 WL 2671929, at *9 (Ind. Ct. App. July 8, 2011) (unpublished opinion) (applying economic loss rule to the unique context of negligent construction claims); *Englebrecht v. Property Developers, Inc*., 296 N.E.2d 798, 801 (Ind. Ct. App. 1973) (fraud claim was not addressed under economic loss rule); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 881 P.2d 986, 829-30 (Wash. 1994) (concerning negligent construction, not fraud); *Horizon Props., LLC v. Indian Corner Homes, LLC*, 2004 WL 254582, at *4 (R.I. Super. Ct. Jan. 27, 2004) (dismissing unjust enrichment claim did not address economic loss rule); *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc*., 835 N.E.2d 701, 705 (Ohio 2005) (concerning negligent construction, not fraud).

[210] 929 N.E.2d 722 (Ind. 2010).  *See also U.S. Bank v. Integrity Land Title Corp.*, 929 N.E.2d 742, 749 (Ind. 2010) (quoting RESTATEMENT (THIRD) OF ECONOMIC TORTS AND RELATED WRONGS, § 9, Cmt. f ("[a]n actor may undertake a duty when it supplies specific information in response to a specific request that makes it clear the

- 36 -

CVS's duty to supply accurate information regarding its U&C prices is also traced to sources outside of any contract between the parties, such as the NCPDP reporting standard.[211]  "Where there exists a duty of care independent of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus falls outside the scope of the economic loss rule."[212]  Since Plaintiffs have alleged a duty on the part of CVS to accurately report its U&C price that is separate from any contractual obligation, Plaintiffs therefore may properly assert tort claims for breach of that duty.

### 3.     Plaintiffs adequately plead negligent misrepresentation claims.

CVS claims Plaintiffs' negligent misrepresentation claims must be dismissed because Plaintiffs fail to allege that they received "a misrepresentation made by the defendant," or that they justifiably relied upon that misrepresentation.[213]  In support, CVS simply rehashes its misguided Rule 9(b) arguments, which Plaintiffs demonstrate has been satisfied above.[214]

Moreover, courts have recognized a claim for negligent misrepresentation where it satisfies RESTATEMENT (SECOND) OF TORTS, § 552.  Liability is imposed under § 552 where "(1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings."[215]  CVS

---

recipient intends to attach significant importance to the information in making a decision that exposes the recipient to a risk of loss if the information is inaccurate.")).

[211] ¶¶ 3, 15, 16.

[212] *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 866 (Colo. 2005).  *See, e.g., Rogers v. Wright*, 366 P.3d 1264, 1275-76 (Wyo. 2016) ("Tort liability may still be premised on a duty independent of contractual duties.").

[213]  Def. Mem. at 28.

[214] *Supra* at 7-13.

[215] *Tolan & Son v. KLLM Architects*, 719 N.E.2d 288, 296 (Ill. Ct. App. 1999); *Haimberg v. R&M Aviation, Inc.*, 5 F. App'x 543 (7th Cir. 2001); *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401 (Mass. Ct. App.

satisfies § 552.  As a national pharmacy chain reporting prescription drug information, including

drug prices, to TPPs, CVS is "in the business of supplying information for the guidance of

others."[216]  CVS provided information that constitutes a misrepresentation by falsely supplying

grossly inflated U&C prices for its prescription drugs.[217]  Finally, CVS supplied this information

to Plaintiffs for guidance in business dealings, including claims adjudication by TPPs in

determining eligibility and reimbursement amounts.[218]  These facts are more than sufficient to

satisfy the requirements of the Restatement.

 CVS likewise misconstrues the Complaint in claiming Plaintiffs "have not plausibly pled

that they justifiably relied on an 'erroneous' reported price."[219]  The linchpin of CVS's argument

is that since the HSP price was well publicized, Plaintiffs could simply compare the reported

price with the HSP price to determine the prices were different.[220]  The *Corcoran* court explicitly

rejected this argument.[221]  Like *Corcoran*, Plaintiffs here do not allege that CVS committed fraud

by concealing its HSP prices or its retail prices from Plaintiffs.  Instead, Plaintiffs allege that they

were not privy to, among other things, "what percentage of CVS's cash customers pay each

price."[222]  Further, "Third-Party Payors have no way of determining on their own whether the

price CVS submits as its U&C is, in fact, the most common price offered to cash paying

members of the general public."[223]  Consequently, no matter how well CVS advertised or

---

1998); *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005); RESTATEMENT (SECOND) OF TORTS, § 552.

[216] ¶¶ 9, 12-17.

[217] ¶¶ 33, 34, 36.

[218] ¶¶ 12-17.

[219] Def. Mem. at 29.

[220] Def. Mem. at 29-30.

[221] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 18.

[222] ¶ 31.

[223] *Id.*

promoted its HSP program, TPPs would not have known whether the prices CVS received for

drugs covered by that program were the more common prices, and therefore the true U&C

prices, received by CVS for all sales of those drugs.[224]   Accordingly, Plaintiffs have plausibly

pled justifiable reliance.

### 4.    Plaintiffs adequately plead unjust enrichment claims.

Plaintiffs' unjust enrichment claims are viable.  "To state a cause of action based on a

theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a

benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the

fundamental principles of justice, equity, and good conscience."[225]   State law claims of unjust

enrichment are "universally recognized causes of action that are materially the same throughout

the United States."[226]   "At the core of each state's law are two fundamental elements – the

defendant received a benefit from the plaintiff and it would be inequitable for the defendant to

---

[224] *See, e.g.*, ¶ 31.  CVS argues that because Plaintiffs allege that the HSP price was the most common price charged by CVS, Plaintiffs somehow fail to plausibly plead justifiable reliance.  Def. Mem. at 29-30.  This is a non-sequitur.  Because Plaintiffs make this allegation at the time of the Complaint does not mean that Plaintiffs were aware, or could have been aware, of this fact at the time of CVS's misrepresentations.  In fact, the Complaint affirmatively alleges to the contrary – Plaintiffs were not aware, and could not have been aware, of what percentages of CVS's cash customers paid the HSP price when CVS submitted its claims for payment.  ¶¶ 31, 52-59.  *See also Grissom v. Moran*, 290 N.E.2d 119, 124 (Ind. Ct. App. 1972) (plaintiffs may rely on statements made by the defendant that are not obviously false, as "where the facts are peculiarly within the knowledge of the [defendant]").

[225] *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 679 (Ill. Ct. App. 1989).

[226] *Singer v. AT&T Corp*., 185 F.R.D. 681, 692 (S.D. Fla. 1998); *See, e.g, Overka*, 265 F.R.D. at 19 ("Courts have noted that unjust enrichment claims in different states are substantially similar. … In the present case, having analyzed the laws of the thirty-four jurisdictions, the Court rules that they are substantially common and the differences between them are manageable."); *Keilholtz v. Lennox Hearth Prods*., 268 F.R.D. 330, 341 (N.D. Cal. 2010) (concluding common questions of law predominated unjust enrichment claims and noting that while "[l]aws concerning unjust enrichment do vary from state to state," "the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case. Common to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces."); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *10 (N.D. Cal. June 11, 2007) (finding unjust enrichment claims predominated and explaining that the "failure to certify the unjust enrichment claims could result in class members having to file thousands of individual suits in which the discovery and factual issues would be nearly identical," and adding that "sub-classes can be identified to group residents of various States with identical common law requirements [such that these] problems are manageable and, therefore, a class action is the superior method of resolving the unjust enrichment claims").

retain that benefit without compensating the plaintiff."[227]  Plaintiffs satisfy these elements.  They

allege CVS has retained a benefit – reimbursements based on grossly inflated prices for

prescription drugs.[228]  Next, they allege that CVS retained this benefit unjustly.[229]  CVS was

required to report its U&C prices to TPPs as a result of, among other things, reporting standards

established by the NCPDP for the electronic reporting of claims.[230]  CVS violated these

standards by reporting grossly inflated prices as its U&C price, whereas it should have reported

for reimbursement the much lower HSP price.[231]  CVS was aware of and appreciated the benefits

it obtained inequitably that came from Plaintiffs.[232]  Based on these allegations, CVS's retention

of these benefits would violate "fundamental principles of justice, equity, and good

conscience."[233]

     Finally, Rule 8 of the Federal Rules of Civil Procedure allows for pleading in the

alternative.  Plaintiffs' unjust enrichment claims therefore do not depend on the success of their

---

[227] *In re Mercedes-Benz Tele Aid Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict.").  *See also Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007), *vacated on other grounds*, 328 F. App'x 121 (3d Cir. 2009) ("The focus of the [unjust enrichment] inquiry is the same in each state.  Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests.").

[228] *See, e.g.*, ¶¶ 36, 39.

[229] *See, e.g.*, ¶¶ 1, 3-5, 36, 39, 76-81.

[230] *See, e.g.*, ¶¶ 15-16, 33-38.

[231] *See, e.g.*, ¶¶ 31-38.

[232] *See, e.g.*, ¶¶ 71, 76-81.

[233] *HPI Health Care Servs.*, 545 N.E.2d at 679.

- 40 -

other claims.[234]  And courts have held that dismissing an equitable count at the pleading stage is

not appropriate,[235] including in *Corcoran*.[236]  CVS's motion should therefore be denied.

### E.     Plaintiffs Could Plead Additional Details in Support of Their State-Law Claims Should the Court Require

Under Rule 15(a), leave to amend "shall be freely granted when justice so requires."

Motions for leave to amend should be denied only for reasons such as undue delay, bad faith,

and futility of the amendment or prejudice to the other party.[237]  Here, amendment would not be

futile.  Accordingly, in the event that this Court is inclined to dismiss all or a part of Plaintiffs'

claims, they respectfully request leave to file an amended complaint.

### IV.     CONCLUSION

Plaintiffs' respectfully request that the Court deny Defendant's motion to dismiss in its

entirety.  Alternatively, Plaintiffs respectfully request leave to amend the Complaint.

---

[234] *See, e.g.*, *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006) (unjust enrichment claims "[d]o not hinge upon the success of the state statutory antitrust claims"); *In re Cardizem Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) ("courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon … other state law violations prove unsuccessful"); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 539-40 (E.D. Pa. 2010) ("[I]t has long been recognized that plaintiffs are allowed to plead alternative causes of action and unjust enrichment is commonly recognized as one (1) of those permissible alternative causes of action.").

[235] *See, e.g.*, *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs … are clearly permitted to plead alternative theories of recovery.  Consequently, it would be premature at this stage of the proceedings to dismiss the … unjust enrichment claims…"); *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 624 (N.D. Ill. 2008) ("[I]f this Court determines in subsequent proceedings that an enforceable contract exists between the parties, then Prudential's unjust enrichment claim cannot stand. At this stage, however, Prudential has properly alleged the unjust enrichment claim as an alternative to its breach of contract claim.").

[236] *Corcoran v. CVS Health Corp. & CVS Pharmacy Inc.*, No. 15-cv-3504 (N.D. Cal.), Dkt. No. 96 (Mar. 14, 2016), at 21.

[237] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111 (1st Cir. 2014).  Even CVS cites case law favoring amendment.  *See, e.g.*, *Pardini*, 961 F. Supp. 2d at 1061 (dismissing but granting leave to amend to assert, among other things, violations of states' consumer protection statutes).

Dated:  May 13, 2016

Respectfully submitted,

SHEET METAL WORKERS LOCAL NO.
20 WELFARE AND BENEFIT FUND, and
INDIANA CARPENTERS WELFARE
FUND, on behalf of themselves and all
others similarly situated,

By their Attorneys,


/s/ Stephen M. Prignano
Stephen M. Prignano (3649)
McIntyre Tate LLP
321 South Main Street, Suite 400
Providence, Rhode Island 02903
Tel: (401) 351-7700 Ext. 227
Fax: (401) 331-6095
Email: smp@mtlesq.com

Steve W. Berman *(Pro Hac Vice)*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
Email:  steve@hbsslaw.com

Elizabeth A. Fegan *(Pro Hac Vice)*
Hagens Berman Sobol Shapiro LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
Email:  beth@hbsslaw.com

William Riley *(Pro Hac Vice)*
Riley Williams & Piatt, LLC
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, Indiana  46204
Tel: (317) 633-5270
Fax: (317) 426-3348

010582-11  867429 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of May, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties noted below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filling as indicated on the Notice of Electronic Filing.  Parties may access this filing for viewing and/or downloading through the Court's CM/EDF System.

Robert C. Corrente
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street; Suite 710
Providence, RI 02903

Enu Mainigi *(Pro Hac Vice)*
Luba Shur *(Pro Hac Vice)*
Grant A. Geyerman *(Pro Hac Vice)*
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, D.C. 20005

/s/ Stephen M. Prignano

010582-11  867429 V1