# Exhibit A

1

2

3

4

5        **UNITED STATES DISTRICT COURT**

6        **NORTHERN DISTRICT OF CALIFORNIA**

7

8    **CHRISTOPHER CORCORAN, *et al.*,**          Case No.: 15-CV-3504 YGR

9            Plaintiffs,                          **ORDER ON MOTIONS TO DISMISS; MOTION
                                                  TO APPOINT INTERIM CLASS COUNSEL;**
10            vs.                                 **MOTION TO TRANSFER**

11   **CVS HEALTH CORPORATION AND CVS**
     **PHARMACY, INC.,**                          Re: Dkt. Nos. 56, 57, 58, 85, 88
12
             Defendants.
13

14          Plaintiffs Christopher Corcoran, Robert Garber, Toni Odorisio, Robert Guarnieri, Onnolee

15   Samuelson, Irma Pacheco, Michael Norkus, Vincent Gargiulo, Zulema Avis, Ken Bolin, Robert

16   Jenks, Tyler Clark, Carolyn Caine, Linda Krone, Elizabeth Gardener, Carl Washington, Zachary

17   Hagert, Debbie Barrett, Robert Podgorny, Kevin Cauley, and Walter Wulff (collectively,

18   "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against

19   defendants CVS Health Corporation ("CVS Health") and CVS Pharmacy, Inc. ("CVS Pharmacy")

20   (collectively, "Defendants" or "CVS") for allegedly overcharging them for generic prescription

21   drugs.  In their Second Amended Complaint Plaintiffs bring nineteen causes of action for: fraud,

22   constructive fraud, negligent misrepresentation, unjust enrichment, and violation of consumer

23   protection laws in twelve states and the District of Columbia.  (Dkt. No. 49, "SAC.")  Based

24   thereon, Plaintiffs seek damages, injunctive and declaratory relief, and attorney fees on behalf of a

25   national class as well as state-specific subclasses.

26          Currently pending before the Court is CVS Health's motion to dismiss for lack of personal

27   jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and CVS Pharmacy's motion to

28

*(left margin, vertical text)* United States District Court  Northern District of California

dismiss for failure to state a claim pursuant to Rule 12(b)(6) in which CVS Health joins.[1]  Also pending before the Court is Plaintiffs' motion to appoint interim class counsel pursuant to Rule 23(g), which Defendants do not substantively oppose.  (Dkt. No. 85.)  Finally, Defendants filed a motion to transfer this action to the District of Rhode Island.  (Dkt. No. 88.)

Having carefully considered the papers and evidence submitted, the pleadings in this action, and for the reasons set forth on the record at oral argument held March 8, 2016 and more fully below, the Court hereby **GRANTS** CVS Health's motion on jurisdictional grounds, **GRANTS IN PART** CVS Pharmacy's motion as described herein, **GRANTS** Plaintiffs' motion to appoint interim class counsel, and **DENIES** Defendants' motion to transfer.

## I.    BACKGROUND

CVS is a national retail pharmacy chain with over seven thousand pharmacies operating under its trade name in the United States and Puerto Rico, managing more than one billion prescriptions annually.  (SAC ¶ 39.)  In 2014, CVS earned net revenue of nearly one-hundred and forty billion dollars, approximately sixty-seven billion dollars of which is attributed to its retail pharmacy division.  (*Id*.)  CVS operates one of the largest retail pharmacy chains in the United States.  (*Id.* ¶ 4.)  Since 2008, CVS has captured more than one third of total prescription growth in the United States.  (*Id*.)

CVS pharmacies dispense prescription medications.  (*Id.* ¶ 6.)  Approximately ninety percent of Americans – including Plaintiffs – are enrolled in a private or public health care plan that shares prescription drug costs.  (*Id.* ¶ 8.)  When plan beneficiaries (insureds) fill a prescription, they pay a portion of the cost (copayment or copay) and the plan (third-party payor) pays the remainder of the cost.  (*Id.* ¶ 43.)  When an insured fills a prescription at CVS, the pharmacist generates a claim by transmitting patient, prescription, and insurance information electronically to the customer's insurer or its claims processor.  (*Id.* ¶¶ 47-48.)  The electronic CVS claims process utilizes standardized data fields developed by the National Council for Prescription Drug Programs ("NCPDP"), a standard-setting organization in the healthcare industry.  (*Id.* ¶¶ 49, 51.)  One data

---

[1] The Court resolves the two administrative motions to seal documents submitted in connection with the motions to dismiss (Dkt. Nos. 73, 76) via separate order entered this date.

field on NCPDP's standard layout is Field No. 426-DQ, the usual and customary ("U&C") price. (*Id.* ¶ 52.)  The U&C price is "generally defined as the cash price to the general public, which is the amount charged [to] cash customers for the prescription, exclusive of sales tax or other amounts claimed."  (*Id.*)  The copayment a customer must pay is calculated in part based on the U&C price CVS transmits to the insurer.  (*Id.* ¶¶ 53-54.)  A copayment must be equal to or less than the drug's U&C price.  (*Id.* ¶ 54.)

This case involves the Health Savings Pass ("HSP") program CVS introduced in 2008.  (*Id.* ¶ 59.)  The HSP program provides discounted pricing on hundreds of generic prescription medications ("HSP generics").  (*Id.* ¶ 61.)  A generic drug is a copy of a brand-named drug that has the same active ingredients as the brands they copy but are typically offered at lower prices.  (*Id.*)  The HSP generics include some of the most commonly prescribed generic drugs for cardiovascular, allergy, and diabetes conditions, among others.  (*Id.* ¶ 62.)  From November 9, 2008 through 2010, cash paying customers could join the HSP program for a $10 fee.  (*Id.* ¶ 61.)  During this time, CVS charged HSP members $9.99 for a ninety-day supply of an HSP generic.  (*Id.*)  Beginning in 2011, CVS raised the HSP enrollment fee to $15 a year and the cost of a ninety-day supply of an HSP generic rose to $11.00 for a ninety-day supply.  (*Id.*)

Plaintiffs allege that CVS created the HSP program to compete with similar discounts introduced by its competitors while continuing to receive full reimbursement from third-party payors.  (*Id.* ¶¶ 56-60.)  Specifically, following implementation of the HSP program, CVS continued to report the full retail price of all HSP generics (rather than the HSP program price) as the U&C price to third-party payors.  (*Id.* ¶ 64.)  Plaintiffs allege that these U&C prices CVS reported for HSP generics were false because they did not reflect the price paid by the biggest group of cash paying customers: HSP program members.  (*Id.* ¶¶ 77-80.)  As a result of CVS reporting artificially inflated U&C prices to third-party payors for the same HSP generics CVS offers at lower prices under the HSP program, its insured customers in some instances paid copayments that exceeded the true U&C price, *i.e.* the HSP program price.  (*Id.* ¶ 75.)  Plaintiffs allege that CVS knowingly created the HSP program to report false U&C prices with the intent to deceive both third-party payors and insured customers into paying higher prices based on inflated

U&C prices improperly higher than the HSP program prices.  (*Id.* ¶¶ 9, 13-14, 64-81.)  By contrast, four of CVS's major market competitors – Shoprite, Wal-Mart, Target, and Costco – report significantly lower U&C's to reflect the amounts charged under their respective discount programs.  (*Id.* ¶¶ 76-77.)

Plaintiffs and class members are individuals who participate in third-party health care plans and purchased HSP generics from CVS retail pharmacies between 2008 and the filing of the SAC.  (*Id.* ¶¶ 10, 16-36.)  CVS charged Plaintiffs for copayments on the HSP generics in excess of the amount HSP program member price for the same drug.  (*Id.* ¶¶ 16-36.)  For these sales, Plaintiffs allege that CVS knowingly submitted to Plaintiffs' third-party payors a U&C price fraudulently inflated above CVS's true U&C price – the price CVS offered to HSP members.  (*Id.*)  Based thereon, Plaintiffs allege they were all overcharged by varying amounts in inflated copayments.  (*Id.*)  For example, with respect to Plaintiff Corcoran, the SAC alleges:

> Plaintiff Christopher Corcoran is domiciled in the State of California. Mr. Corcoran has purchased generic versions of four monthly maintenance medications from CVS in California between February 2009 and the present.  Mr. Corcoran carries private health insurance and carried private health insurance during the time that he purchased generic medications from CVS.  All four medications prescribed to Mr. Corcoran are on the CVS HSP generic medication list (attached hereto as Exhibit A).  CVS charged its cash-paying customers a usual and customary price of $3.33 for a 30-day supply of the same prescription that Mr. Corcoran purchased from 2008 to 2010, and $3.99 from 2011 to the present.  CVS is required to charge Mr. Corcoran a copay that does not exceed the usual and customary price CVS charges for the prescription drug.  For these sales, CVS knowingly submitted to Mr. Corcoran's third-party payor a purported usual and customary price fraudulently inflated above CVS's true usual and customary price – the price CVS offers under its HSP program. As a result of CVS's fraudulent scheme, Mr. Corcoran has paid copays substantially higher than $3.33 from 2008 to 2010 and $3.99 from 2011 to the present per 30-day supply when he purchased his generic prescriptions from CVS and has, thereby, been injured. CVS has overcharged Mr. Corcoran at least $284.79 in inflated copays. Mr. Corcoran anticipates filling future prescriptions for these generic drugs at a CVS pharmacy, and thus faces the prospect of paying additional inflated copays in the future if CVS continues its wrongful conduct.

1     (*Id.* ¶ 16.)  Similar allegations are made as to all named Plaintiffs.  (*Id.* ¶¶ 17-36.)

2        Plaintiffs assert nineteen claims sounding in fraud based on the allegations in the SAC.

3   Defendants move to dismiss all claims for lack of personal jurisdiction over CVS Health under

4   Rule 12(b)(2), and for failure to state a claim against both CVS Health and CVS Pharmacy under

5   Rule 12(b)(6).  The Court addresses these arguments in turn.

6             **II.     CVS HEALTH'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**

7        CVS Health seeks dismissal with prejudice on grounds that the Court does not have

8   personal jurisdiction over it as to Plaintiffs' claims.  CVS Health contends that it has no meaningful

9   connection to California such that the Court cannot exercise jurisdiction over it.

10           **A. Legal Standard**

11        A motion under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of

12   personal jurisdiction over a defendant.  Fed. R. Civ. P. 12(b)(2).  Where no federal statute governs

13   personal jurisdiction, the Court applies the law of the state in which it sits; here, California law

14   applies.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  California

15   law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of

16   [California] or of the United States."  Cal. Civ. Proc. Code § 410.10.  Due process requires that the

17   non-resident defendant have "minimum contacts with [the forum state] such that the maintenance

18   of the suit does not offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v.*

19   *Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  "In judging minimum

20   contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the

21   litigation.'"  *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186,

22   204 (1977)).  Personal jurisdiction may be either general or specific.  *Bancroft & Masters, Inc. v.*

23   *Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

24        General jurisdiction allows a court to assert jurisdiction over out of state corporations "to

25   hear any and all claims against them" and attaches to a defendant only if its "affiliations with the

26   State are so continuous and systemic as to render it essentially at home in the forum State."

27   *Daimler AG v. Bauman*, -- U.S. --, 134 S.Ct. 746, 749 (2014) (internal quotations and alterations

28   omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, -- U.S. --, 131 S.Ct. 2846, 2851

United States District Court
Northern District of California

5

(2011). It would be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761, n.19.

By contrast, specific jurisdiction "depends on an affiliation[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851 (internal quotations omitted). Said otherwise, personal jurisdiction requires the Court evaluate whether the specific activity giving rise to the plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of demonstrating the first two prongs. *Id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). If the plaintiff fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1555 (9th Cir. 2006). If the plaintiff carries this burden, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016. (citing *Schwarzenegger*, 374 F.3d at 802).

Where, as here, the motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction.

Schwarzenneger, 374 F.3d at 800. A plaintiff makes a "*prima facie*" showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### B. Analysis

The only jurisdictional allegations in the SAC group CVS Health together with CVS Pharmacy, referring to Defendants collectively as "CVS," and stating:

> This Court has jurisdiction over CVS because CVS intentionally avails itself of the California consumer market through the promotion, sale, marketing, and distribution of their products to California residents. As a result, jurisdiction in this Court is proper and necessary. Moreover, CVS's wrongful conduct, as described herein, foreseeably affects consumers in California and nationwide.

(SAC ¶ 41.) Plaintiffs further allege that CVS Pharmacy "may be deemed the agent of" CVS Health. (*Id.* ¶ 38.) The SAC is otherwise devoid of allegations tending to show personal jurisdiction over Defendants in California.[2]

In support of its motion to dismiss, CVS Health submitted declarations of Thomas S. Moffatt, the vice president, corporate secretary and assistant general counsel-corporate services for CVS Pharmacy. (Dkt. No. 57-1, "Moffatt Decl." ¶ 2; Dkt. No. 77-1, "2d Moffat Decl." ¶ 2.) Moffatt states that he is familiar with the corporate structure of CVS Health "and its wholly-owned subsidiary," CVS Pharmacy. (Moffatt Decl. ¶ 3.) Moffatt further asserts that CVS Health: is nothing more than a holding company whose primary functions are to issue stock and file reports with the Securities and Exchange Commission; is not authorized to transact business in nor does it have a registered agent in California; and has no direct involvement in directing, managing, or supervising the operations or the employees of CVS Pharmacy. (*Id.* ¶¶ 4-6.)

In opposition, Plaintiffs submitted an attorney declaration attaching exhibits tending to show CVS Health's presence in California, as well as the relationship between CVS Health and

---

[2] CVS Pharmacy does not contest personal jurisdiction for purposes of this case only.

United States District Court
Northern District of California

CVS Pharmacy. (Dkt. No. 72-1, "Levine Decl.") Plaintiffs argue their submissions make a p*rima facie* showing that CVS Health is itself subject to the jurisdiction of this Court, both general and specific. Plaintiffs alternatively contend this Court has jurisdiction over CVS Health as the principal and alter-ego of CVS Pharmacy. CVS Health disagrees, arguing Plaintiffs have not met their *prima facie* burden to show personal jurisdiction in this Court on any grounds. The Court addresses the parties' arguments in turn below.

### 1. CVS Health's Contacts with California

Turning first to general jurisdiction based on CVS Health's contacts with California, Plaintiffs must make a *prima facie* showing that CVS Health is "essentially at home" in this forum. *Daimler*, 134 S.Ct. at 749. In *Daimler*, the Supreme Court affirmed that a corporation's place of incorporation and its principal place of business are "paradigm all-purpose forums," but did not "foreclose the possibility that in an exceptional case" a foreign corporation may be at home in a different state. *Id.* at 760-61, n. 19 (citing *Goodyear*, 131 S.Ct. at 2853-54; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 413 (1952)). The paradigmatic bases for general jurisdiction do not apply here, as Plaintiffs correctly allege that CVS Health is a Delaware corporation and is headquartered in Rhode Island. (SAC ¶ 37; *see also* Moffatt Decl. ¶ 5.) Nor do Plaintiffs explicitly contend the exceptional case standard applies.[3]

Plaintiffs instead rely on pre-*Daimler* cases applying the less stringent "substantial, continuous, and systematic course of business" standard, which the *Daimler* court held was "unacceptably grasping." *Daimler*, 134 S.Ct. at 761. In that regard, Plaintiffs' contention that CVS Health has a substantial number of pharmacies, maintains two distribution centers, and solicits

---

[3] Any such argument would necessarily fail. The *Daimler* court pointed to *Perkins, supra*, a case involving wartime temporary relocation of defendant's headquarters as an exemplar of an exceptional case. An exception similar to the one granted in *Perkins* plainly does not apply here. *See Amiri v. DynCorp Int'l, Inc.*, 2015 WL 166910, at *3 (N.D.Cal. Jan. 13, 2015) (noting that "in the overwhelming majority of cases there will be no occasion to explore whether a *Perkins*-type exception might apply"). Plaintiffs allege no facts that would allow the Court to find that California is CVS Health's surrogate home state as in *Perkins*.

1    employees in California is not persuasive.[4]   *Cahen v. Toyota Motor Corp*., 2015 WL 7566806, at

2    \*6-7 (N.D.Cal. Nov. 25, 2015) (plaintiffs' comparable analysis was "undercut by *Daimler*").  In

3    *Daimler*, the Supreme Court rejected plaintiffs' arguments that a foreign manufacturer was at home

4    in California due to its "multiple offices, continuous operations, and billions of dollars' worth of

5    sales" in the forum.  *Daimler*, 134 S.Ct. at 772 (Sotomayor, J., concurring).  Other post-*Daimler*

6    plaintiffs have attempted similarly ill-fated arguments for general jurisdiction based on the old

7    standard.  *See, e.g.*, *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) *cert. denied*,

8    -- U.S. --, 135 S.Ct. 2310 (2015) (affirming district court finding of no general jurisdiction over

9    defendant who had contracts with California companies worth between $225 and $450 million, sent

10   employees to California, and advertised in trade publications with distribution in California);

11   *Cahen*, 2015 WL 7566806, at \*6-7 (same, with respect to defendant car manufacturer who had 302

12   employees in California and over one hundred thousand cars registered in California in the past

13   year).  Even taking all of Plaintiffs' jurisdictional allegations as true, CVS Health's contacts do not

14   rise to the level that it is "essentially at home in the forum State."  *Daimler,* 134 S.Ct. at 761.[5]

15           As for specific personal jurisdiction, Plaintiffs utterly fail to address the Ninth Circuit's

16   three-prong analysis.  Plaintiffs' conclusory statement that CVS Health "itself…purposefully

17   directs its business activities, including the pricing and sale of generic prescription drugs, to

18   customers in California," (Dkt. No. 72 at 11:4-6) alone cannot suffice.  Plaintiffs provide no

19   allegations or evidence to support an assertion that CVS Health had any "direct involvement in the

20   scheme alleged in the [SAC]" (*id*. at 4:22-24) as would be required for a finding that CVS Health is

21   subject to the specific jurisdiction of this Court.  *See Callum v. CVS Health Corp.*, -- F.Supp.3d --,

22   2015 WL 5782077 (D.S.C. Sept. 29, 2015) (finding that CVS Health was not subject to specific

23   _____

24           [4] Defendants present evidence in reply showing that Plaintiffs' allegations with regard to
     CVS Health's presence in California are false, and that all of these contacts with California are

25   attributable to CVS Health's subsidiaries, including CVS Pharmacy.  (*See, e.g.*, 2d Moffatt Decl. ¶
     10.)  Regardless, the Court accepts Plaintiffs' allegations as true as it must, but ultimately finds they

26   are legally insufficient to establish that CVS Health is "essentially at home" in California.  *Daimler*,
     134 S.Ct. at 749.

27

28           [5] Indeed, at oral argument, Plaintiffs' Counsel essentially conceded they could not establish
     a *prima facie* showing of general jurisdiction post-*Daimler*.

jurisdiction in South Carolina given the plaintiff's failure to show CVS Health's contact with the state was related to the causes of action in that case). To the extent Plaintiffs attempt to conflate this argument with its agency and/or alter ego arguments by alleging CVS Pharmacy officers and employees involved in the implementation of the HSP program are also employees of CVS Health (*see id.* at 4-6), the Court addresses those arguments below. *See* Section II.B.2, *infra*. CVS Health is ostensibly a separate entity from CVS Pharmacy and Plaintiffs' attempts to show otherwise are properly addressed on theories of agency and alter ego.

Accordingly, Plaintiffs have not met their burden to make a *prima facie* case of general or specific jurisdiction over CVS Health based on its contacts alone.

### 2. Imputing CVS Pharmacy's Contacts with California

Having failed to show that CVS Health – without regard to CVS Pharmacy – is subject to the jurisdiction of this Court, Plaintiffs endeavor to show CVS Pharmacy's conduct may be imputed to CVS Health through the agency or alter ego theories.[6] Before *Daimler*, the Ninth Circuit "permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the 'agency' test and the 'alter ego' test." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). The *Daimler* decision invalidated the Ninth Circuit's agency test for purposes of general jurisdiction, holding it "stacks the deck, for it will always yield a pro-jurisdiction answer." *Id.* (quoting *Daimler*, 134 S.Ct. at 759). Thus, a foreign parent corporation cannot be subject to general jurisdiction based solely on an agency relationship through its subsidiary's contacts with the forum. *Id.*

The *Daimler* court left open the possibility that an agency analysis may be relevant in the specific jurisdiction context. *Daimler*, 134 S.Ct. at 759 n.13 ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction") (emphasis in original). At least one court in this District has opined that *Daimler's* disapproval of the Ninth Circuit's agency test likely applies in the context of specific jurisdiction as well. *See Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, 2015 WL 4755335, at *5 (N.D.Cal. Aug. 11, 2015) ("the

---

[6] For purposes of this analysis, the court assumes that Plaintiffs established personal jurisdiction over CVS Pharmacy such that the agency and alter ego analyses are applicable.

1  rationale set forth in *Daimler*—that the Ninth Circuit's agency test inappropriately 'stacks the

2  deck'—would seem to undermine application of the [Ninth Circuit's agency test] even in specific

3  jurisdiction cases"). The Court agrees, but in the face of post-*Daimler* uncertainty, nevertheless

4  engages in the analysis.

5  Assuming the Ninth Circuit's agency test remains viable as to specific personal jurisdiction,

6  the relevant question for the agency inquiry is "whether, in the truest sense, the subsidiar[y's]

7  presence substitutes for the presence of the parent." *Doe v. Unocal Corp.*, 248 F.3d 915, 928-29

8  (9th Cir. 2000). To establish jurisdiction over CVS Health on an agency theory, Plaintiffs must

9  establish that CVS Pharmacy is CVS Health's agent by showing: (1) CVS Pharmacy "functions as

10  [CVS Health's] representative in that it performs services that are sufficiently important to the

11  foreign corporation that if it did not have a representative to perform them, [CVS Health's] own

12  officials would undertake to perform substantially similar services," and (2) CVS Health "exercises

13  a measure of control over" CVS Pharmacy's activities. *United States v. Pangang Group Co., Ltd.*,

14  879 F.Supp.2d 1052, 1058 (N.D.Cal. 2012) (internal citations omitted); *Stewart v. Screen Gems-*

15  *EMI Music, Inc.*, 81 F.Supp.3d 938, 957 (N.D.Cal. 2015). Plaintiffs do not plead any facts going to

16  the first requirement, or that CVS Health would undertake to perform the functions of CVS in

17  California absent having the subsidiary. This alone warrants a finding of no agency relationship.

18  Plaintiffs next support their personal jurisdiction claim by arguing that CVS Health is the

19  alter ego of CVS Pharmacy. Plaintiffs point to the following evidence to support their argument

20  that the Court should disregard corporate formalities and impute CVS Pharmacy's contacts to its

21  parent CVS Health: (i) members of CVS Pharmacy's senior management team all also hold titles

22  and senior positions with CVS Health; (ii) CVS Health and CVS Pharmacy "share" certain

23  executives, including the head of human resources and chief legal officer; (iii) the lone two

24  members of CVS Pharmacy's board are also senior executives for CVS Health; (iv) CVS Health's

25  public filings show that CVS Health provides management and administrative services to support

26  the overall operations of all segments of CVS Health; (v) CVS Health's website presents itself as

27  one integrated company, including its pharmacy division; (vi) CVS Health selected CVS

28  Pharmacy's new president in 2013; (vii) CVS Pharmacy identified persons associated with CVS

Health as having discoverable information in its Rule 26 initial disclosures; and (viii) persons who allegedly identify themselves as "employees" of CVS Health exchanged emails about the HSP program at issue in the litigation. (Levine Decl. ¶¶ 6-7, 14, 16, 23-25, and associated exhibits).[7]

In narrow circumstances federal courts will find that a corporation is the alter ego of another by "'pierc[ing] the corporate veil' and attribut[ing] a subsidiary's [contacts with] the forum state to its parent company for jurisdictional purposes." *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D.Cal. 1995). To survive a Rule 12(b)(2) motion on an alter ego theory a plaintiff must make a *prima facie* showing that both: (1) there is a unity of interest and ownership between the corporations such that their separate personalities do not actually exist, and (2) treating the corporations as separate entities would result in injustice. *Ranza*, 793 F.3d at 1073 (quoting *Unocal*, 248 F.3d at 926). The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (quoting *AT&T Co.*, 94 F.3d at 591). It requires such "pervasive control" that it can only be met where a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* Importantly, the Ninth Circuit has emphasized that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)). Nor can the first prong be met by only showing "an active parent corporation involved directly in decision-making about its subsidiaries' holdings" where the corporations "observe all of the corporate formalities necessary to maintain corporate separateness." *Unocal*, 248 F.3d at 928. Courts consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for

---

[7] Additionally, at oral argument, Plaintiffs pointed to CVS Health's February 10, 2015 Form 10-K filing (Dkt. No. 72-10), in which CVS Health does not represent itself as a "holding company," as Mr. Moffat attests. While this indicates a factual dispute, Plaintiffs have not shown that CVS Health's status as a "holding company" could be dispositive of the alter ego analysis.

the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Stewart*, 81 F.Supp.3d at 954 (quoting *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1040 (N.D.Cal. 2014)).

Here, Plaintiffs' evidence goes only to the third, fourth, and ninth factors.[8] Accepted as true, and taken it in a light most favorable to Plaintiffs, the evidence shows only that CVS Health wholly owns CVS Pharmacy, the two entities have overlapping officers and directors, CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes, and CVS Health has been involved in discrete business decisions of CVS Pharmacy. However, "it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Gerritsen v. Warner Bros. Ent., Inc.*, 116 F.Supp.3d 1104, 1138-39 (C.D.Cal. 2015) (alteration omitted) (quoting *Sonora Diamond Corp.*, 83 Cal.App.4th 523, 548-49 (2000)). And courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos. *See Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *3 (N.D.Cal. May 20, 2008) ("[g]eneric language on [company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *3 (N.D.Cal. July 30, 2015) (website "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"). Thus, the Court concludes that this evidence is legally insufficient to satisfy the unity of interest prong of the alter ego test. *Rutsky*, 328 F.3d at 1135 (facts showing that parent wholly owned subsidiary, parent and subsidiary shared the same officers and directors, co-employed staff, and shared physical office space did not satisfy first prong of alter ego test); *Stewart*, 81 F.Supp.3d at 956 (finding that a showing of the third, fourth, and ninth factors "even when considered together, are not sufficient to support a finding of unity of interest among" the corporate entities). Moreover, Plaintiffs' failure to address the other six factors strongly weighs

---

[8] At oral argument, Plaintiffs' counsel represented that CVS Health's Form 10-K (Dkt. No. 72-10) reveals that CVS Health acted as the guarantor on long-term leases for CVS Pharmacy, going to the second factor. Review of the Form 10-K Plaintiffs submitted shows otherwise. (*Id*. at 23.)

against a finding that CVS Pharmacy's contacts should be imputed to CVS Health.  *See, e.g.,*

*Stewart*, 81 F.Supp.3d at 955 (unaddressed factors weigh against finding of alter ego status).

Having found that Plaintiffs failed to establish the first prong, the Court need not address the second prong of the alter ego test.[9]  Plaintiffs have not made a *prima facie* showing that the Court can impute CVS Pharmacy's contacts with California to CVS Health.

***

Based upon the foregoing, the Court finds Plaintiffs have failed to make a *prima facie* showing of personal jurisdiction over CVS Health.  The claims against CVS Health are **DISMISSED** on this basis.

### III.    CVS PHARMACY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

CVS moves to dismiss the SAC's nineteen causes of action, arguing Plaintiffs fail to plead any plausible claims for relief properly.[10]  Plaintiffs oppose.

#### A.  Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).  The Court will not assume facts not alleged, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[9] Plaintiffs conceded at oral argument they are without evidence going to the second prong, or injustice that would result from the Court's decision to respect the corporate form here.

[10] CVS Health joins in CVS Pharmacy's motion, and moves on the additional grounds that the SAC does not allege facts as to CVS Health in particular.

United States District Court
Northern District of California

1    sense").

2          Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

3    which relief may be granted.  Dismissal for failure to state a claim under Federal Rule of Civil

4    Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d

6    1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

7    1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its

8    face."  *Twombly*, 550 U.S. at 570.  A claim is plausible on its face "when the plaintiff pleads factual

9    content that allows the court to draw the reasonable inference that the defendant is liable for the

10   misconduct alleged."  *Iqbal*, 556 U.S. at 678.  If the facts alleged do not support a reasonable

11   inference of liability, stronger than a mere possibility, the claim must be dismissed.  *Id.* at 678-79;

12   *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not required

13   to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

14   unreasonable inferences").

15          Additionally, Rule 9 establishes a heightened pleading standard for allegations of fraud.

16   Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

17   circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

18   person's mind may be alleged generally"); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to

19   be alleged with particularity under Rule 9(b), a plaintiff must allege "the 'who, what, when, where,

20   and how'" of the alleged fraudulent conduct); *see also Tatung Co. v. Shu Tze Hsu*, 43 F.Supp.3d

21   1036, 1060 (C.D. Cal. 2014) (applying Rule 9(b)'s heightened pleading standard to state law claims

22   brought in federal court).  Moreover, where a plaintiff alleges "a unified course of fraudulent

23   conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said

24   to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must

25   satisfy the particularity requirement of Rule 9(b)."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097,

26   1103-04, 1106 (9th Cir. 2003) (holding "the circumstances constituting the alleged fraud [must] be

27   specific enough to give defendants notice of the particular misconduct [alleged] so that they can

28   defend against the charge and not just deny that they have done anything wrong") (internal

quotations and citations omitted).

**B. Analysis**

Defendants move to dismiss the SAC on myriad grounds, namely that it does not: (1) plead all causes of action with the requisite particularity required under Rule 9(b); (2) properly allege intent to defraud; (3) plausibly allege deceptive practices; (4) plausibly allege any material misrepresentations; (5) state claims that do not sound in contract, running afoul of the economic loss doctrine; (6) allege that any misrepresentations were communicated to Plaintiffs; (7) state a claim for constructive fraud; (8) state a cognizable claim for unjust enrichment; (9) plead that any of the Plaintiffs has standing to bring a claim under the Rhode Island Deceptive Trade Practices Act; (10) state a cognizable claim under the California Legal Remedies Act; (11) state a cognizable claim under the Ohio Consumer Sales Practices Act; (12) state a cognizable claim under the Texas Deceptive Trade Practices Act; (13) state a cognizable claim under the Georgia Fair Businesses Practices Act; or (14) allege deceptive and unfair conduct to allow any of the remaining statutory claims to survive. The Court addresses Defendants' arguments in turn.

*1. Rule 9(b) Particularity (All Counts)*

Defendants move to dismiss on the grounds that the SAC fails to meet the heightened pleading standard of Rule 9(b). In particular, they argue the SAC is deficient because it does not allege (i) the names of the drugs Plaintiffs purchased, (ii) on what dates such drugs were purchased, (iii) the specific pharmacy location, (iv) the specific copayment amount per purchase, or (v) the specific U&C that CVS reported to (vi) the particular insurers. Given the amount of detail alleged by Plaintiffs in the SAC regarding the "who, what, when, where, and how" of the alleged fraud, the Court finds Defendants' argument unpersuasive. *Cooper*, 137 F.3d at 627. Simply put, the SAC meets the Rule 9(b) particularity standard by alleging detailed information regarding Plaintiffs' claims, including for each of them: the number of generic drugs purchased, a time frame in which such purchases were made, the state in which the purchases were made, and the total inflated amount they were charged as a result of inflated U&C prices. (SAC ¶¶ 16-36.) Plaintiffs need not allege more. *Id.* ("[w]e decline to require that a compliant must allege specific [transactions] to specific customers at specific times with a specific dollar amount of improperly recognized

United States District Court
Northern District of California

1    revenue"). The SAC additionally includes, with particularity, the manner in which CVS allegedly

2    perpetrated the fraud. (*See*, *e.g.*, SAC ¶¶ 64-81.) This level of specificity enables Defendants to

3    "prepare an adequate answer from the allegations." *Schreiber Distributing Co. v. Serv-Well*

4    *Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986); *see Fecht v. Price Co.*, 70 F.3d 1078,

5    1083 (9th Cir. 1995) ("a complaint alleging that the plaintiff bought a house from the defendant,

6    that the defendant assured the plaintiff that the house was in perfect shape, and that the house was

7    in fact built on landfill, would satisfy rule 9(b)"). Moreover, all of the missing details are likely in

8    the possession of CVS. Defendants' motion on Rule 9(b) grounds is **DENIED**.

9                    *2.  Intent (Counts 1, 14, and 15)*

10          Defendants move to dismiss on grounds that the SAC does not sufficiently allege their

11   "intent to deceive" CVS customers. Intent is an element of Plaintiffs' common law fraud claim

12   (Count 1) as well as the statutory claims under the laws of Illinois (Count 14) and New Jersey

13   (Count 15). Rule 9(b) does not subject intent to the particularity standard, but rather intent need

14   only "be averred generally." Fed.R.Civ.P. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54

15   (9th Cir. 2007) ("the state of mind—or scienter—of the defendants may be alleged generally"). In

16   opposition, Plaintiffs argue that three key circumstances plausibly suggest intent here, namely: (i)

17   Defendants' practice not to report the HSP price as the U&C price contravened the industry

18   standard (SAC ¶ 69); (ii) other major industry players reported their discount program prices as

19   their U&C prices (*id.* ¶¶ 76-77); and (iii) CVS created the HSP program to stay competitive in the

20   market's new discounted pricing norm while fraudulently charging third-party payors and their

21   members a higher price (*id.* ¶¶ 14, 71). The Court agrees. Defendants' argument that intent is not

22   plausibly alleged because the SAC "names no CVS employees, no internal conversations, no

23   meetings, etc., supporting an inference that CVS designed HSP" (Dkt. No. 56 at 12:7-10) to

24   deceive Plaintiffs intentionally does not persuade. Such specificity is not required for intent. *See*

25   Fed.R.Civ.P. 9(b). The Court further rejects Defendants' argument that the Department of Health

26   and Human Services' 2009 report alters the analysis. (Dkt. No. 58, Exh. 2, "DHS Report.")[11] At

27   _____

28          [11] Defendants request the Court take judicial notice of two documents: (1) CVS's 2014
     annual report, as referenced in the SAC; and (2) the DHS Report. (Dkt. No. 58, "RJN.") Plaintiffs
     do not oppose. Defendants' RJN is **GRANTED** as to both documents. *See Lee v. City of Los*

1    most, the DHS Report shows the agency was unwilling to take a position on the issue – not that it

2    endorsed Defendants' view.  (*Id.*)  Accordingly, Defendants' motion to dismiss for lack of intent

3    allegations is **DENIED**.

### 3.  Deceptive Practices (All Counts)

5    CVS argues that the SAC contains no plausible allegation that its practices are deceptive

6    because the HSP program is public knowledge and has been publicized in-store and on its website.

7    This argument ignores Plaintiffs' theory.  The gravamen of the SAC is not that CVS concealed the

8    existence of the of the HSP program.[12]  Rather, it is that CVS deceived Plaintiffs by reporting U&C

9    prices significantly above the prices available to members of the HSP program, and then charged

10   Plaintiffs inflated copays of a result of their deceitful practice.  In that regard, the SAC states a

11   plausible claim that CVS engaged in deceptive practices.  The motion on this basis is **DENIED**.

### 4.  Material Misrepresentations (All Counts)

13   CVS contends that Plaintiffs' theory is implausible because each of them "anticipates filling

14   future prescriptions for those generic drugs at a CVS pharmacy, and thus faces the prospect of

15   paying additional inflated copays."  (SAC ¶¶ 16-36.)  Thus, CVS contends, Plaintiffs' willingness

16   to return removes any likelihood that the alleged misrepresentations were material to their earlier

17   purchases.  Plaintiffs oppose, stating that modest considerations such as access and continuity of

18   care explain their continued patronage of CVS.  The Court agrees.  While Plaintiffs' continued

19   patronage may later be evidence relevant to materiality, it does not render Plaintiffs' claims

20   implausible at this juncture.  *See Red v. Kraft Foods, Inc.*, 2011 WL 4599833, at *12 (C.D.Cal.

21   Sept. 29, 2011) (noting that named plaintiffs' continued purchase of the product at issue would

22   have "almost certainly destroyed the ability of the class to ever establish reliance and/or materiality

23   of the alleged misrepresentations").  The motion to dismiss on these grounds is **DENIED**.

24   *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may take judicial notice of 'matters of public

25   record'").

26   [12] Regardless, the SAC alleges CVS deceived them in this respect as well: "CVS either

27   wrongly conceals or omits such information by failing to tell insured customers about the HSP
     program, or by misrepresenting to insured customers that the HSP program would not apply to their

28   purchases."  (SAC ¶ 80.)

United States District Court
Northern District of California

### 5.   Economic Loss Doctrine (Counts 1 and 3)[13]

The economic loss doctrine operates to prohibit contract claims from being disguised as tort claims.  "Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort."  *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  In that regard, CVS argues that Plaintiffs' fraud and negligent misrepresentation claims are nothing more than disguised breach of contract claims, which should be dismissed under the economic loss doctrine.  The Court rejects the very premise of Defendants' argument.  To support dismissal, Defendants contend the SAC does not allege any wrongdoing independent of its contractual obligation to report an accurate U&C price to third-party payors.  Not so.  The gravamen of Plaintiffs' allegations is that CVS created the HSP program to report misleading U&C prices in a manner that contravened industry standards with the intent to deceive Plaintiffs and class members.  Plaintiffs additionally allege that CVS misrepresented the availability of the HSP program and their ability to participate therein.  These allegations undoubtedly fall outside of CVS's contractual obligations to third party payors.  Defendants' motion on this ground is **DENIED**.

### 6.   Reliance (Counts 1 and 3)

Defendants argue that Plaintiffs' fraud (Count 1) and negligent misrepresentation (Count 3) claims fail because the SAC does not adequately plead reliance.  The parties agree that both claims require, *inter alia*, a defendant's misrepresentation of a material fact and a plaintiff's reliance thereon.   Defendants argue the SAC does not plead reliance insofar as it is missing an allegation that the misrepresentation – the inflated U&C price – was communicated to Plaintiffs, and thus reliance is necessarily lacking.  In opposition, Plaintiffs contend that not only was the false U&C price directly communicated to them every time they paid inflated copayments, but it was also indirectly communicated to them through their insurers (third-party payors) every time their claims were adjudicated and copayments were calculated.

---

[13] CVS argues the economic loss doctrine also bars Plaintiffs' constructive fraud claim (Count 2).  For the reasons discussed in Section III.B.7, *infra*, the Court otherwise dismisses the constructive fraud claim.  Therefore, the Court need not address it here.

Plaintiffs' fraud and negligent misrepresentation claims are actionable under both direct and indirect theories of communication and reliance. First, the Court agrees with Plaintiffs that the SAC alleges CVS made a false representation every time it charged Plaintiffs for copays that were calculated based on inflated U&C prices. (SAC ¶ 75.) Second, a theory premised on misrepresentations made to Plaintiffs through a third party (here, the insurer) is recognized in the common law. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008) ("the common law has long recognized that plaintiffs can recover in a variety of circumstances where, as here, their injuries result directly from the defendant's fraudulent misrepresentations to a third party"). The Court finds plausible Plaintiffs' theory that CVS reported fraudulent U&C prices to third-party payors, who in turn used that price to calculate inflated copays for Plaintiffs to pay CVS.[14] The motion is **DENIED** with respect to allegations of reliance.

### 7. *Duty to Disclose (Count 2)*

In contrast to a claim for actual fraud, a claim for constructive fraud exists where persons in a fiduciary, special, or confidential relationship violate their duty to disclose, even in the absence of intent to deceive. *See, e.g., Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex.App. 2004) (applying Texas common law). CVS and Plaintiffs agree a constructive fraud claim requires a fiduciary, special, or confidential relationship between the parties that imposes a duty to disclose on the defendant. Plaintiffs contend they have adequately pled a duty on the part of CVS to disclose information relevant to drug pricing. Defendants do not argue that the SAC fails to plead a duty sufficiently. Rather, they claim that no such duty exists as a matter of law. *See, e.g., Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993) (the existence of a duty is a question of law). The Court agrees.

Plaintiffs summarily contend that, for purposes of a constructive fraud claim, a duty may be established through a defendant's superior or specialized knowledge. This may be so, but Plaintiffs

---

[14] The Court rejects Defendants' argument that the terms or substance of the fraudulent misrepresentations were not conveyed to Plaintiffs. By way of simple math, the full U&C price is communicated to an insured responsible for 10% of the retail price of a generic drug every time their co-insurance obligation is calculated. Similarly, every time an insured pays a flat-rate copay, they implicitly are told that CVS reported a U&C above their copay to the third party payor.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    cite no authority for the proposition that pharmacists have superior or specialized knowledge of the

2    nature of *drug pricing* such that a duty arose in this case.  Pharmacists have a duty of care to

3    *accurately fill* a prescription.  *See, e.g., Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 461

4    (Tex.App. 2000); *Huggins*, 6 Cal.4th at 132; *Frye v. Medicare-Glaser Corp.*, 153 Ill.2d 26, 31

5    (1992).  A pharmacist's duty arises out of her status as a health care provider.  This duty has been

6    construed narrowly, and absent special circumstances, courts refuse to extend it to encompass a

7    duty to warn or an affirmative duty to counsel customers on the side effects of prescription drugs.

8    *See, e.g., Morgan*, 30 S.W.3d at 467; *Frye*, 153 Ill.2d at 31; *Pysz v. Henry's Drug Store*, 457 So.2d

9    561 (Fla.Dist.Ct.App. 1984).  As such, the Court declines Plaintiffs' invitation to impose a duty on

10   pharmacists as a matter of law which encompasses matters of drug pricing.  The Court similarly

11   declines Plaintiffs' invitation to impose a special, confidential, or fiduciary duty on institutions in

12   all commercial transactions, where they will necessarily be in a position of greater knowledge

13   regarding pricing.  Defendants' motion to dismiss the constructive fraud claim is **GRANTED**.

14                    *8.  Unjust Enrichment (Count 4)*

15          CVS contends that Plaintiffs' claim for unjust enrichment should be dismissed as

16   duplicative.  More particularly, CVS contends that a remedy of restitution is duplicative of both the

17   compensatory damages Plaintiffs seek under their common law claims and the restitution

18   recoverable under their statutory claims.  Defendants' argument is no longer viable at the motion to

19   dismiss stage in this Circuit.  In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir.

20   2015), the Ninth Circuit reversed a district court's dismissal of an unjust enrichment as "duplicative

21   of or superfluous to" the other claims in the complaint.  *Id.*  Such an argument "is not grounds for

22   dismissal."  *Id.*  Rule 8 plainly entitles Plaintiffs to plead a claim in the alternative.  Fed. R. Civ. P.

23   8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or

24   hypothetically, either in a single count or defense or in separate ones").  Defendants' motion to

25   dismiss the unjust enrichment claim is **DENIED**.

26   ///

27   ///

28   ///

21

*9. Rhode Island Deceptive Trade Practices Act (Count 5)*

Defendants move to dismiss the Rhode Island Deceptive Trade Practices Act ("RIDTPA") claim on grounds that no named plaintiff has Article III standing to assert such a claim.[15]  A named plaintiff who seeks to represent a class "must allege and show that they" have Article III standing to bring suit.  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Where "the source of the plaintiff's claim to relief" is a statute, "the standing question … is whether the … statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  "In cases involving statutory rights, the particular statute and the rights it conveys guide the standing determination. "  *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1114 (9th Cir. 2014) (internal quotations and alterations omitted).  This means that, at a minimum, a "plaintiff must be among the injured, in the sense that she alleges the defendants violated *her* statutory rights."  *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) (emphasis in original) (internal quotations omitted).

Here, Plaintiffs do not reside in Rhode Island nor do they allege that any of the relevant transactions occurred in Rhode Island.  The critical inquiry, therefore, is whether nonresidents are entitled to bring claims against a Rhode Island corporation under RIDTPA.  "Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."  *In re Aftermarket Auto. Lighting Products Antitrust Litig.*, 2009 WL 9502003, at *6 (C.D.Cal. July 6, 2009); *accord In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1075 (N.D.Cal. 2015) (finding that "named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device"); *Fenerjian v. Nongshim Co., Ltd.*, 72 F.Supp.3d 1058, 1082-83 (N.D.Cal. 2014) (finding that named plaintiffs "lack standing to assert claims based on" states' laws where they neither resided nor suffered an injury); *Pardini v. Unilever United*

---

[15] Defendants improperly bring this attack under Rule 12(b)(6).  Standing is a jurisdictional question and this issue is therefore properly addressed under Rule 12(b)(1).  *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) ("Standing is a jurisdictional element that must be satisfied prior to class certification").  Where, as here, the challenge is to the SAC on its face, the Court's inquiry is substantially similar as under Rule 12(b)(6): the Court looks only to allegations in the complaint and assumes the allegations in the complaint are true.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

United States District Court
Northern District of California

*States, Inc.*, 961 F.Supp.2d 1048, 1061 (N.D.Cal. 2013) (finding plaintiff did "not have standing to assert a claim under the consumer protection laws of the other states named in [her] Complaint").

The parties present two unpublished district court cases in support of their arguments – each of which come to opposite conclusions. First, Defendants rely on *Harris v. CVS Pharmacy, Inc.*, for the proposition that a non-Rhode Island plaintiff does not have standing to bring a claim under RIDTPA. 2015 WL 4694047, at *5 (C.D.Cal. Aug. 6, 2015). In *Harris*, a resident of California brought a claim under the RIDTPA against CVS Pharmacy for a CVS-branded product purchased in California. Based thereon, the district court found that the plaintiff "failed to establish any basis for applying Rhode Island law to him," and therefore lacked standing to bring a claim under its laws. *Id*. In particular, the district court found that the plaintiff did not show any plausible basis for invoking the foreign law of Rhode Island for two reasons. First, the court looked to the law of the highest court in the State, which unequivocally holds: "Rhode Island law is clear that, absent some indication to the contrary 'extraterritorial force cannot be given to a [Rhode Island] statute." *Id*. (alteration in original) (quoting *Farrell v. Employers' Liab. Assur. Corp.*, 54 R.I. 18 (1993)); *accord Grinnell v. Wilkinson*, 39 R.I. 447 (1916) (absent contrary intent, "the presumption is that the statute is intended to have no extraterritorial effect"). Second, the district court found the *Harris* plaintiff did not establish that the law of Rhode Island should apply to him under choice-of-law principles. *Id.* at 5. Applying California choice-of-law principles, as this Court must in the instant diversity action, the district court found CVS Pharmacy's status as Rhode Island corporation did not outweigh the plaintiff's home state's interest in applying its own consumer protection laws. *Id*. (citing *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012)). "Absent any standing to invoke Rhode Island law," the *Harris* court found it was without jurisdiction to entertain the California resident's claims under the RIDTPA. *Id*.

Plaintiffs, by contrast, rely on *Faherty v. CVS Pharmacy, Inc.*, for the contrary proposition. 2010 WL 1930573 (D.Mass. May 12, 2010). In *Faherty*, residents of Massachusetts brought RIDTPA claims against CVS Pharmacy for allegedly fraudulent misrepresentations made in connection with purchases in Massachusetts. CVS Pharmacy moved to dismiss the claims, arguing RIDPTA cannot apply to non-residents' claims arising out of purchases made at stores outside of

Rhode Island.  The district court found that the complaint alleged CVS Pharmacy was headquartered in Rhode Island, and, citing *Park v. Motor Co.*, 844 A.2d 687, 690 (R.I. 2004), found that the "Rhode Island Supreme Court has allowed a putative nationwide class to maintain claims under [the RIDPTA] … regardless of where a customer resided or suffered injury…"  *Id.* at *1.

*Park* is readily distinguishable for reasons not recognized in *Faherty*.  As Defendants argue, the Rhode Island Supreme Court in *Park* did not even address the issue of standing.  And, on remand, the trial court in *Park* addressed the choice-of-law issue, holding that "contracts executed outside of Rhode Island would not be governed by [RIDPTA]."  *Park v. Ford Motor Co.*, 2004 WL 2821312, at *5 (R.I. Super. Ct. Oct. 7, 2004).  Because the claim of the named plaintiff was not governed by Rhode Island law, the Rhode Island trial court on remand found there was no class representative for the RIDPTA claim, and certification was denied.  *Id*.  On the other hand, the Court finds the district court's reasoning in *Harris* persuasive.  There, the district court engaged in an exhaustive analysis of standing and the impact of California choice-of-law jurisprudence thereon, rejected the notion that Rhode Island case law would support the extraterritorial application of RIDPTA, and dismissed the non-Rhode Island plaintiff's RIDPTA claim for lack of standing.  The same result is appropriate here.  Plaintiffs have "failed to establish any basis for applying Rhode Island law to [them]."  *Harris*, 2015 WL 4694047, at *5.  Defendants' motion to dismiss the RIDPTA claim for lack of standing is **GRANTED**.

### 10. California Consumer Legal Remedies Act (Count 7)

To state a claim under the California Consumer Legal Remedies Act ("CLRA") a plaintiff must allege, *inter alia*, that a defendant engaged in "unfair or deceptive acts or practices … intended to result or which results in the sale or lease of goods or services" which the statute defines as unlawful.  Cal. Civ. Code § 1770(a).  The CLRA prohibits twenty-six delineated categories of behavior.  *See id.*  CVS moves to dismiss, complaining that the SAC does not specify which of the twenty-six categories under which Plaintiffs make their claim.  CVS does not provide any authority requiring Plaintiffs to do so.  Indeed, the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such

24

protection." *Id.* § 1760. Plaintiffs' detailed allegations include that CVS violated the CLRA by: (a) "reporting … fraudulent U&C prices," (b) "misrepresenting to [Plaintiffs] that the U&C price was greater than their copayments," (c) "concealing from [Plaintiffs] the true U&C prices," and (d) "wrongfully obtaining money from [Plaintiffs] as a result of its deception." (SAC ¶ 158.) The Court finds these allegations sufficiently detailed to render their claim plausible under CLRA §§ 1770(a)(13) and (a)(16). The motion to dismiss the CLRA claim is **DENIED**.

*11. Ohio Consumer Sales Practices Act (Count 11)*

Count 11 proceeds under the Ohio Consumer Sales Protection Act ("OCSPA"). The OCSPA is more restrictive than other consumer protection laws, and only allows class claims to proceed where "the defendant was sufficiently on notice that its conduct was deceptive or unconscionable." *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F.Supp.2d 801, 868 (S.D.Ohio 2012). A defendant is "sufficiently on notice" where either: "(1) a specific rule or regulation has been promulgated [by the Ohio Attorney General] that specifically characterizes the challenged practice as unfair or deceptive, or (2) an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection." *Volbers-Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 441 (Ohio 2010). Plaintiffs argue Defendants were on notice by virtue of the Ohio Revenue Code, which prohibits an "unconscionable act or practice in connection with a consumer transaction," defined as occurring when "the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers." Ohio Rev. Code §§ 1345.03(A), 1345.03(B)(2).

The Ohio Supreme Court has consistently affirmed its disapproval of Plaintiffs' argument. "A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice. To permit a generic rule to constitute prior notice for purposes of R.C. 1345.09(B) would allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice." *Volbers-Klarich*, 929 N.E.2d at 441 (emphasis in original) (quoting *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 36 (Ohio 2006)). So too here. Plaintiffs have not pointed to any rule or case that prohibits the *specific*

25

United States District Court
Northern District of California

1    practices of CVS alleged to be unconscionable in the SAC.  Defendants' motion to dismiss the class

2    OCSPA claims in Count 11 is **GRANTED**.

3                    *12. Texas Deceptive Trade Practices Act (Count 12)*

4            Defendants move to dismiss Plaintiffs' claim under the Texas Deceptive Trade Practices

5    Act ("TDTPA"), arguing Plaintiffs do not allege unlawful conduct under that act properly.  The

6    TDTPA provides a cause of action to a consumer based on either (1) unlawful practices specifically

7    enumerated in the TDTPA, or (2) any "[u]nconsionable action or course of action by any person,"

8    Tex. Bus. & Com. Code § 1750(a), defined as "an act or practice which, to a consumer's detriment,

9    takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer *to a*

10   *grossly unfair degree*," *id*. § 17.45(5) (emphasis supplied).  The Texas Supreme Court has

11   interpreted the term "grossly unfair" to mean "glaringly noticeable, flagrant, complete and

12   unmitigated," a standard that cannot be met with allegations that a defendant's conduct was

13   "unfair."  *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985).

14           Plaintiffs argue in opposition that they have alleged both a specifically enumerated unlawful

15   practice under the TDTPA as well as unconscionable, grossly unfair action by Defendants.  With

16   respect to the first, Plaintiffs contend their allegations fall within the TDTPA's prohibition on

17   actions "failing to disclose information concerning information [that] was intended to induce the

18   consumer into a transaction into which the consumer would not have entered had the information

19   been disclosed."  Tex. Bus. & Com. Code § 17.46(b)(24).  The SAC, however, fails to allege that

20   Plaintiff Pacheco (the only Texas plaintiff) would not have entered into the transactions absent the

21   failure to disclose.  In fact to the contrary, Pacheco alleges she plans to purchase generic drugs from

22   CVS in the future.  (SAC ¶ 25.)  Second, with respect to unconscionability, the SAC similarly fails

23   to allege actions that amount to practices that took advantage of Pacheco and similarly situated

24   class members "to a grossly unfair degree."  *Id*. § 1745(5).  Although the SAC alleges knowledge

25   and intent (*see* SAC ¶ 199), "[k]nowledge or intent alone cannot…be the distinguishing factor of

26   unconsionability" under the TDCPA.  *Chastain*, 700 S.W.2d at 582.  Consequently, Defendants'

27   motion to dismiss the TDTPA claim is **GRANTED**.

28   ///

                                                   26

*13. Georgia Fair Business Practices Act (Count 19)*

CVS raises several deficiencies with respect to Plaintiffs' claim under the Georgia Fair Business Practices Act ("GFBPA"). Principally, CVS argues the GFBPA explicitly bars class actions. The Court agrees. The GFBPA indisputably forecloses claims brought "in a representative capacity." Ga. Code. Ann. § 10-1-399(a). Plaintiffs submit no argument in opposition as to the class claim. CVS's motion to dismiss Plaintiffs' class claim under the GFBPA is **GRANTED**.

CVS also seeks dismissal of Plaintiff Caine's individual GFBPA claim. To state a claim under the GFBPA, a claimant must allege she provided pre-suit notice to the defendant pursuant to GFBPA's *ante litem* requirement. Ga. Code. Ann. § 10-1-399(b); *Alvear v. Sandy Springs Toyota, Inc.*, 332 Ga.App. 798, 803-04 (2015) (in addition to the three elements of a GFBPA claim, a plaintiff must also satisfy the *ante litem* requirement). Plaintiff admits she did not serve CVS with the requisite notice "prior to…filing" her GFBPA claim. *Id.* § 10-1-399(b). Nor does Plaintiff Caine provide any authority for the Court to excuse the pre-suit notice. Plaintiff's only argument is that CVS had notice of her claims by virtue of earlier versions of the complaint that did not include the GFBPA claim. The Georgia Court of Appeals disavowed this so-called constructive notice argument, warning that it would render the *anti-litem* requirement "meaningless" were it accepted. *Alvear*, 332 Ga.App. at 803. On those grounds, CVS's motion to dismiss the individual GFBPA claim is likewise **GRANTED**.

Plaintiff Cain next argues that she sent the requisite notice in connection with her opposition to the instant motion, and that the Court should now grant her leave to so allege. The question thus becomes whether Plaintiff Cain's failure to provide pre-suit notice is curable by amendment. That is, can her individual GFBPA claim be saved by provision of notice after the SAC was filed? It cannot. Courts to address this issue agree that, once a plaintiff asserts a GFBPA claim in a complaint, the *anti litem* (meaning, "before litigation") requirement cannot be cured by amendment. *Bowers v. Branch Banking and Trust Co.*, 2015 WL 4131915, at * 9 (M.D.Ga. July 8, 2015) (citing *Gibbs v. Abbot Labs, Inc.*, 2001 WL 1558279, at *3-4 (N.D.Ill. Dec. 5, 2001)).

Consequently, the Court finds it appropriate to dismiss the GFBPA claims **WITHOUT LEAVE TO AMEND**.

United States District Court
Northern District of California

*14. Remaining Statutory Claims (Counts 5, 6, 8-11, 13-18)*

Finally, Defendants argue that the remaining statutory claims should be dismissed because Plaintiffs do not allege facts showing their practices were "deceptive" or "unfair," as is required under the respective states' acts. A cursory reading of the SAC shows otherwise. For the reasons discussed in Section III.B.3, *supra*, the Court finds that Plaintiffs sufficiently allege deceptive practices. The Court also finds sufficient allegations of a practice plausibly construed as unfair, *i.e.* a practice that offends public policy. *See, e.g., Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (discussing the meaning of "unfair" under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.). The motion to dismiss on these grounds is **DENIED**.

## IV.  LEAVE TO AMEND DISMISSED CLAIMS

Leave to amend is liberally granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). One exception to this general rule of permissiveness is where amendment would be futile. *Foman*, 371 U.S. at 182; *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004). As such, the Court gave Plaintiffs an opportunity to argue the existence of additional facts such that amendment of the claims dismissed would not be futile. Plaintiffs were only able to do so with respect to Count 12.

Accordingly, the Court grants Plaintiffs Leave to amend Count 12 only. Plaintiffs shall file a Third Amended Complaint by no later than twenty (20) days from the date of this Order. The Third Amended Complaint must comport with the guidelines set forth in this Order. Counsel is reminded of their Rule 11 obligations in making any such amendments.

## V.  PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS COUNSEL PURSUANT TO RULE 23(g)

Plaintiffs move the Court to appoint the law firms representing Plaintiffs as interim class counsel pursuant to Rule 23(g). Namely, Plaintiffs request appointment of the following firms: Hausfeld, LLP; Pritzker Levine LLP; and Stein, Mitchell, Muse, Cipollone, Beato LLP (collectively, the "Firms"). Defendants opposed only to the extent they contend the Court should first resolve their motion to transfer. (Dkt. No. 90.) The Court having denied the motion to transfer, Defendants conceded at oral argument they have no substantive opposition to Plaintiffs'

United States District Court
Northern District of California

motion to appoint the Firms as interim class counsel.  Accordingly, and good cause shown pursuant to Rule 23(g), Plaintiffs' motion is **GRANTED**. The Firms shall be responsible for the overall prosecution of the litigation on behalf of Plaintiffs and the putative class.

## VI. DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

Nearly five months following the commencement of litigation, Defendants filed a motion to transfer this action to the District of Rhode Island.  Transfer under 28 U.S.C. section 1404(a) to a venue where the case could have been brought is up to the discretion of the Court after an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Ninth Circuit has recognized at least eight factors a district court may consider in its analysis under Section 1404(a). *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  The Court has carefully reviewed Defendants' motion and considered the issues of convenience and fairness, and for the reasons set forth on the record on March 8, 2016, finds that transfer to the District of Rhode Island is not appropriate.  Assuming without deciding that the case could have been brought in the District of Rhode Island, Defendants failed to show that transfer would serve the interests of justice.  Consequently, Defendants' motion to transfer is **DENIED** and the hearing scheduled for April 5, 2016, is hereby **VACATED**.

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** CVS Health's Rule 12(b)(2) motion for lack of personal jurisdiction, and **GRANTS IN PART** Defendants' Rule 12(b)(6) motion as follows:

1. The motion to dismiss the claim for constructive fraud (Count 2) is **GRANTED** and such claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

2. The motion to dismiss the claim for violation of the Rhode Island Deceptive Trade Practices Act (Count 5) is **GRANTED** and such claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

3. The motion to dismiss the class claim for violation of the Ohio Consumer Sales Practices Act (Count 11) is **GRANTED** and such claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

4. The motion to dismiss the claim for violation of the Texas Deceptive Trade Practices Act (Count 12) is **GRANTED** and such claim is **DISMISSED WITH LEAVE TO AMEND**.

5. The motion to dismiss the individual and class claims for violation of the Georgia Fair Business Practices Act is **GRANTED** and such claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

Except as otherwise noted, the Rule 12(b)(6) motion is **DENIED**.

Plaintiffs' motion to appoint the Firms as interim class counsel is **GRANTED**.

Defendants' motion to transfer to the District of Rhode Island is **DENIED**. The April 5, 2016 hearing on the motion to transfer is **VACATED**.

This Order terminates Docket Numbers 56, 57, 58, 85 and 88.

**IT IS SO ORDERED**.

Date: March 14, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**