IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, and INDIANA CARPENTERS WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CVS PHARMACY INC., *et al.*,<br><br>       Defendants. | Case No. 1:16-cv-00046-S |
| PLUMBERS WELFARE FUND, LOCAL 130, U.A., on behalf of itself and all others similarly,<br><br>       Plaintiffs,<br><br>v.<br><br>CVS PHARMACY INC., *et al.*,<br><br>       Defendants. | Case No. 1:16-cv-00447-S |

## JOINT STATUS REPORT

Per the Joint Proposed Case Management Order submitted by the parties on September 29, 2023, the class plaintiffs, Sheet Metal Workers Local No. 20 Welfare and Benefit Fund, Indiana Carpenters Welfare Fund, and Plumbers Welfare Fund, Local 130, U.A., and the defendants, CVS Pharmacy, Inc. ("CVS") and CaremarkPCS Health, L.L.C. ("Caremark"), submit the following Joint Status Report to update the Court on various matters in advance of the October 24, 2023 status conference.

**A. Notice**

On June 28, 2023, the class plaintiffs filed their Motion to Approve the Form and Manner

of Notice to the Class.[1] The Court granted that motion on August 8, 2023, and ordered the plaintiffs "to refile the proposed notices for its review."[2] The class plaintiffs refiled the amended proposed notices for the Court's review the following day.[3] Since submitting the amended proposed notices for the Court's review, the parties have filed—and the Court has entered—a joint stipulation to substitute CaremarkPCS Health, L.L.C. for Caremark, L.L.C. as the appropriate Caremark entity in this litigation.[4] Because the previously submitted notice forms referred to Caremark, L.L.C., who is no longer a defendant in this action following entry of the stipulation, the class plaintiffs submitted revised notice forms for the Court's review on October 17, 2023. Defendants, while preserving all of their prior objections, do not intend to oppose these revised notice forms. The class plaintiffs remain ready to issue notice immediately following final approval of the notice forms by the Court.

B.  Status of PBM Subpoenas and Motions to Compel

   1.  Caremark

*Plaintiffs' position*: Production of Caremark's client contracts in response to the subpoena is complete. Plaintiffs have received 16,333 contracts from Caremark. Of that universe, plaintiffs have reviewed approximately 14,000 and are in the process of reviewing the rest. To date, plaintiffs' review confirms that no contract excludes CVS' Health Savings Pass ("HSP") pricing from the usual and customary price ("U&C") and all contracts contain a lower-of pricing provision with U&C price as a term. Class plaintiffs reserve their right to confer with Caremark as to the

---

[1] ECF No. 194.
[2] Aug. 8, 2023 ECF Text Order.
[3] ECF No. 200.
[4] ECF No. 204; Sept. 11, 2023 Text Order.

appropriateness of certain redactions within the documents that have restrained their ability to analyze the relevant lower-of pricing and U&C provisions. It is plaintiffs' belief that this issue only affects a small number of contracts.

*Defendants' position*: Defendants first object to any challenge to the redactions on contracts. Following a meet-and-confer on January 13, 2022, plaintiffs and Caremark previously reached an agreement regarding the scope of redactions for Caremark's contract production. Caremark began rolling weekly productions of the contracts in March 2022. Plaintiffs have had over 18 months to review many of the produced documents and, to date, have not objected to redactions. Any changes to redactions at this stage would be inappropriate, untimely, and unduly burdensome, especially in light of the enormous cost to Caremark of redacting the agreed-upon contract provisions.

Defendants also dispute plaintiffs' contention that reviewing the contracts was not necessary because (1) "no contract excludes CVS' Health Savings Pass ("HSP") pricing from the usual and customary price (U&C)" and (2) "all contracts contain a lower-of pricing provision with U&C price as a term." To start, most of the contracts define the U&C price by some form of reference to the pharmacy's "cash price" or price to the "cash customer." A membership program price is not the pharmacy's "cash price," nor is a customer making a membership program purchase acting as a "cash customer," as the record testimony from fact witnesses has established. Thus, the definitions of "usual and customary" do not include CVS's HSP price (or any pharmacy's membership program price), even though the HSP program is not mentioned by name. Additionally, Caremark endeavored to produce only those contracts that contain a "lower of U&C" pricing provision (and to exclude those that do not), thus identifying those clients who

3

might be class members, which required a review of the contracts.[5]

### 2.   MedImpact

The class plaintiffs have reached an agreement with MedImpact on the parameters of a data production and the text of a declaration. The class plaintiffs and MedImpact have only to finalize the manner (data or declaration) in which MedImpact will produce certain years (pre-2014) of GER ranges.

CVS does not currently believe a motion to compel MedImpact will be necessary. CVS is awaiting final confirmation from MedImpact that the parties have reached agreement regarding the parameters of MedImpact's production of claims data, GER reconciliation data, commercial contracts, and communications with commercial health plans during the class period. CVS and MedImpact need only to finalize the scope of certain productions pertaining to claims data and commercial contracts.

### 3.   Express Scripts, Inc. / Medco

The plaintiffs reached agreement with ESI regarding a data production but have reached an impasse regarding the production of the contracts and GER ranges. The plaintiffs filed a motion to compel the contracts and GER information responsive to the ESI subpoena on September 22, 2023 in the Eastern District of Missouri.

CVS and ESI have reached an impasse regarding the production of ESI's commercial contracts, client communications, and GER reconciliation data. On October 2, 2023, CVS filed its own motion to compel in the Eastern District of Missouri seeking to compel production of

---

[5] Caremark, however, also produced some contracts when it was ambiguous or arguable as to whether it included lower-of pricing logic. Therefore, when it produced the contracts, Caremark explicitly stated that the production of a client's contract was not a concession that the contract did, in fact, satisfy the class definition (even if many do).

4

these three categories of documents and data.

On October 12, 2023, the district court in the Eastern District of Missouri consolidated the two motions. Under the briefing schedule agreed to by the parties, both motions will be fully briefed on November 3, 2023.

    4.    **OptumRx**

The plaintiffs have moved to compel the contracts and GER information responsive to the OptumRx subpoena on August 25, 2023 in the Central District of California. The motion was fully briefed on September 12, 2023. The district court in the Central District of California heard argument on October 17, 2023 by videoconference. The district court directed the parties to continue to meet and confer and to submit a status report by October 24, 2023. The district court also scheduled a follow-up hearing on October 30, 2023.

On October 13, 2023, CVS moved in the Central District of California to compel the production of OptumRx's GER reconciliation data, commercial contracts, and client communications. That same day, CVS and OptumRx filed a joint notice of related case, which notified the Court that both the plaintiffs' and CVS's motions to compel involve substantially related issues and similar questions of law and fact. On October 18, a judge was assigned to CVS's motion (currently a different district judge and magistrate judge than are overseeing the plaintiffs' motion as to OptumRx), and a hearing on CVS's notice of related proceedings was set for hearing on November 2, 2023. It is currently unclear whether, at the November 2 hearing, the merits of CVS's motion to compel OptumRx to produce documents will also be heard or only the request that plaintiffs' proceeding and CVS's proceeding be consolidated before the same judge.

**C.**    **Motion for Leave to Conduct Absent Class Discovery**

Per the Joint Proposed Case Management Order submitted by the parties on September

5

29, 2023, the class plaintiffs served an interrogatory on the defendants requesting them to "Identify all Documents in support of your contention that any class member had knowledge that HSP prices were not included in the definition of U&C." The defendants responded to that interrogatory on October 18, 2023. That same day, Caremark also made an initial production of documents from Caremark's account managers that defendants contend will support their motion to seek absent class discovery, citing many of those document sin response to the aforementioned interrogatory answer. Caremark anticipates making a few additional productions of such documents as part of a rolling production that will be completed in December 2023.

*Defendants' position*: With respect to defendants' forthcoming motion for leave to conduct absent class discovery of *Caremark* clients, the defendants propose filing their opening brief on December 15, 2023; plaintiffs file their responsive brief on January 15, 2024, and defendants file their reply on January 29, 2024. The defendants will propose a briefing schedule for defendants' forthcoming motions pertaining to discovery from other PBM clients at a later date, following the resolution of the pending motions to compel as to those PBMs. What plaintiffs call a "series" of motions contemplated by defendants is misleading; it really is just one motion in December relating to Caremark clients, and another motion at a later date relating to the other PBMs; these are not multiple "bites at the same apple," as they are different fruits.

Contrary to plaintiffs' position below, Caremark's production of documents regarding the knowledge of its clients is consistent with the Court's class certification order. First, this Court in its class certification ruling endorsed a contract-by-contract review to identify which TPPs are entitled to "lower of U&C pricing" such that they are in the class. This review was not, as plaintiffs suggest, a waste of time. In addition to weeding-out clients that were *not* entitled to

6

"lower of U&C pricing," this review was also necessary to enforce the various exclusions embedded in the class definition (e.g., government payor, no PBM affiliation, etc.) and to evaluate other provisions relevant to the merits of this case (e.g., choice of law provisions, GER provisions, the presence of alternative dispute resolution clauses, etc.). Prior to the Court certifying a class and Caremark undertaking its contract review to identify which of its clients might be in that class, Caremark could not have searched for relevant communications with that subset of clients. The current targeted email review follows promptly from the identification of potential class members during the contract review.

Caremark's recent and upcoming productions of documents regarding the knowledge of its clients is also consistent with the Court's requirement that Caremark make an evidentiary showing for each potential class member from whom Caremark would like to seek discovery. Caremark, moreover, has not "already lost" on the issue of knowledge; the Court examined the issue only with respect to the named-plaintiffs and a handful of other representative clients, and did so in the context of finding that evidence did not foreclose class certification. The Court did not hold that evidence of knowledge is irrelevant to the merits the parties' claims and defenses.

Finally, to the extent plaintiffs are concerned about having sufficient time to review the documents that Caremark is now in the process of producing relating to the knowledge of its clients, the solution is to set a schedule that gives plaintiffs sufficient time for that review, not to deny defendants their due process right under *In re Asocol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018), to present their defense regarding knowledge.

*Plaintiffs' position*: The class plaintiffs object to the defendants' proposal for several reasons. First, to the extent the defendants rely on unproduced documents within their own files, they had

7

an obligation to produce this discovery years ago; they did not. And to the extent the defendants rely on documents already produced, the Court has rejected the defendants' contention that these documents show TPP-knowledge of the misconduct. It is bad enough that this blatant attempt at the proverbial second bite violates discovery obligations, procedural norms, and equitable principles enshrined in the federal rules and common law. But the defendants *also* seek a third bite (a motion to seek absent class discovery from MedImpact clients). And a fourth bite (a motion regarding OptumRx clients). And a fifth bite (a motion regarding Express Scripts/Medco clients).

The defendants have already wasted thousands of hours of attorney time and imposed enormous costs to parties and nonparties by insisting on a contract-by-contract review on the U&C issue in lieu of a declaration, despite the fact that all of the PBMs work with form contracts and do not exclude HSP from the definition of U&C—something plaintiffs' review of Caremark's files confirm. Now they seek to waste more time and resources relitigating an issue for which they've already sought discovery and on which they've already lost. The plaintiffs simply cannot agree to any proposal that contemplates a series of motions.

Further, the defendants propose making "rolling productions" of new documents (that presumably they already have identified and intend to rely on) into December, giving plaintiffs practically no time to review those documents prior to briefing. If defendants propose a briefing schedule for a *single* motion that allows plaintiffs adequate time to review the relevant documents, they will consider it. But the current proposal is unworkable.

**D.      Motion to Dismiss the Claims of Certain Absent Class Members for Failure to Arbitrate**

*Defendants' position*: Now that Caremark's production of client contracts is complete and both parties have had an opportunity to review those contracts, defendants intend to simultaneously file two motions—one on behalf of Caremark and the second on behalf of CVS—to dismiss the claims of certain absent class members whose contracts with Caremark contain alternative dispute resolution provisions. Defendants anticipate filing their opening briefs on this issue by November 3, 2023. The timing and substance of these motions is appropriate because this Court expressly contemplated future motions practice on the issue of whether CVS can compel arbitration in its class certification order.[6] Further, any such motion could not have been filed and ruled upon prior to Caremark's production of the contracts containing the operative alternative dispute resolution agreements, which, at least for Caremark, has recently been completed. Now that Caremark has produced its contracts, these arbitration motions will be properly before the Court.

*Plaintiffs' position*: To the extent CVS seeks to enforce an arbitration clause to which it was not a party, again, the defendants seek to relitigate an issue they lost. The Court ruled at class certification that under First Circuit precedent and examining the relevant provisions in the sample contracts, CVS could not compel arbitration as a non-signatory to the contract.[7] The class plaintiffs intend to oppose these motions once filed.

---

[6] ECF No. 175, at 58–59 ("Defendants may pursue those rights under motions to compel arbitration and/or dismiss following class certification, and the Court will employ the procedural tools at its disposable to exclude those TPPs from the class or place them in a subclass.").

[7] ECF No. 179, at 58.

Dated: October 20, 2023.

Respectfully submitted,

For Plaintiffs:

/s/ Daniel J. Kurowski

Steve W. Berman (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

Daniel J. Kurowski (pro hac vice)
Mark T. Vazquez (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: dank@hbsslaw.com
Email: markv@hbsslaw.com

Christopher R. Pitoun (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: christopherp@hbsslaw.com

*Class Counsel*

Elizabeth A. Fegan (pro hac vice)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Email: beth@feganscott.com

For Defendants:

/s/ Grant A. Geyerman

Robert C. Corrente (RI Bar No. 2632)
WHELAN, CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
rcorrente@whelancorrente.com

Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
William T. Burke (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Kathryn E. Hoover (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
wburke@wc.com
ggeyerman@wc.com
khoover@wc.com

*Attorneys for CVS Pharmacy, Inc. and CaremarkPCS Health, L.L.C.*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the attorneys of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.