## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, and INDIANA CARPENTERS WELFARE FUND, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:16-cv-00046-S |
| CVS PHARMACY, INC. and CAREMARKPCS HEALTH, L.L.C., | |
| Defendants. | |
| PLUMBERS WELFARE FUND, LOCAL 130, U.A., on behalf of itself and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:16-cv-00447-S |
| CVS PHARMACY, INC. and CAREMARKPCS HEALTH, L.L.C., | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTIONS (ECF NOS. 211 & 213) TO AMEND THE CLASS DEFINITION TO EXCLUDE CERTAIN ABSENT CLASS MEMBERS OR, IN THE ALTERNATIVE, TO DISMISS THEIR CLAIMS

# **Table of Contents**

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................2

I.     Plaintiffs Concede Caremark Should Be Dismissed from the Suit Entirely.........................2

II.    The Court Should Dismiss or Exclude from the Class All Claims Against CVS by TPPs with ADR Provisions...........................................................................................2

        A.    Nearly All the TPPs Clearly and Unmistakably Delegated Questions of Arbitrability to the Arbitrator......................................................................3

        B.    For the 62 TPPs Without Delegation Clauses, the Court Should Hold Their Claims Against CVS Are Arbitrable................................................7

               1.    Plaintiffs' claims against CVS rely on the Caremark contracts containing arbitration provisions and allege interdependent and concerted conduct between CVS and Caremark...........................................8

               2.    Class members cannot avoid equitable estoppel based on an irrelevant "third-party beneficiary" clause.................................................12

               3.    Class members cannot avoid equitable estoppel based on "between the parties" language in one of the relevant arbitration clauses.................15

        C.    The Court Also Should Dismiss or Exclude All Claims Against CVS by TPPs with Mediation Clauses. ..............................................................17

CONCLUSION...............................................................................................................18

# Table of Authorities

*Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989)..........................................4

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019)...........................7

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ..................................................8

*Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7 (1st Cir. 2009)......................................4, 9

*Barbosa v. Midland Credit Management., Inc*, 981 F.3d 82 (1st Cir. 2020).........................5, 6, 8

*Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502 (1st Cir. 2020) ..........................6

*Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20 (1st Cir. 2021) ...................................4, 5, 6, 7

*Burton's Pharmacy, Inc. v. CVS Caremark Corp.*, 2015 WL 5430354 (M.D.N.C. Sept. 15, 2015) ..............................................................................17

*CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 1115153 (D. Mass. Mar. 24, 2017).....................10

*Cartagena Enters., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013) ...............................................................................16

*Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005) .....................................4

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014) .............5, 9, 17

*CVS Pharmacy, Inc. v. Gable Family Pharmacy*, 2012 U.S. Dist. LEXIS 191047 (D. Ariz. Oct. 19, 2012) .......................................................................17

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)..................................2, 6, 10

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502 (Tex. 2015) ..........................10

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1 (1st Cir. 2014) ...................................8

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) ....................................9

*Harries v. Stark*, 2015 WL 4545071 (N.D. Tex. July 28, 2015) ....................................14

*Hautz Constr., LLC v. H & M Dep't Store*, 2012 WL 5880370 (D.N.J. Nov. 20, 2012) ..............14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ..........................3, 4, 5, 6

*Hogan v. SPAR Grp., Inc.*, 914 F.3d 34 (1st Cir. 2019) ..........................................8, 16

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277 (S.D.N.Y. 2015)...................5

*Luke v. Gentry Realty, Ltd.*, 96 P.3d 261 (Haw. 2004) ................................................................10

*McWane, Inc. v. Lanier*, 2015 WL 399582 (Del. Ch. Jan. 30, 2015) ............................................14

*Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006)...................................................10, 13, 15

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999).......................................15, 16

*Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837 (5th Cir. 2015).....................................17

*Ouadani v. TF Final Mile LLC*, 876 F.3d 31 (1st Cir. 2017) ................................................. passim

*Petersen v. EMC Telecom Corp.*, 2010 WL 2490002 (D. Ariz. June 16, 2010) ..........................16

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240 (11th Cir. 2011) .......................................................................................................................................12

*Sabine Syngas, Ltd. v. Port of Port Arthur Nav. Dist. of Jefferson Cnty.*, 2011 WL 192756 (Tex. App. Jan. 13, 2011) .......................................................................................................14

*Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38 (1st Cir. 2008)..............................8, 12

*Storm Water Sols., LLC v. Live Oak Rail Partners, LLC*, 2019 WL 613300 (Tex. App. Feb. 14, 2019) .........................................................................................................................14

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal. 2013)...........17

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ..........11

## INTRODUCTION

Plaintiffs attack Caremark's and CVS's arbitration motions as "nothing more than a belated attempt to challenge . . . class certification," Pls.' Consolidated Opp'n to Defs.' Mot. to Amend Class Definition at 1 ("Opp'n"), ECF No. 217, but they then concede that Caremark's motion is meritorious, and propose that the Court should "dismiss Caremark as a defendant entirely," *id*. The parties are in full agreement with that outcome as to Caremark.

Only CVS's motion is in dispute, and the only dispute is whether CVS can invoke the alternative dispute resolution ("ADR") agreements in class members' contracts with Caremark. Plaintiffs do not disagree that their claims are within the scope of the ADR provisions if CVS can invoke them. *See id.* at 2 (conceding this as to Caremark). Plaintiffs' argument that the ADR provisions do not apply to CVS ignores that virtually all of them have delegation clauses that refer this question to the arbitrator. The Court should dismiss or exclude all absent class members whose ADR agreements require delegation because only an arbitrator—not a court—can decide the issue of arbitrability.

As to the 62 absent class members whose arbitration clauses do not require delegation, the Court should dismiss or exclude their claims because principles of equitable estoppel allow CVS— even as a non-signatory to the agreements—to invoke them. (The same is true for those class members whose clauses do require delegation, as CVS will argue to the arbitrators.) Plaintiffs' contrary arguments misconstrue the contract language and the applicable law of equitable estoppel.[1]

---

[1] For convenience, Defendants refer to the third-party payors ("TPPs") identified in Defendants' Appendices A and B as absent "class members." Defendants reiterate that they do not concede that these particular clients are in fact class members. *See* ECF No. 211-1 at 1 n.2; ECF No. 213-1 at 1 n.2. Defendants further reserve their rights to move to dismiss or exclude additional class members on the basis of arbitration agreements later.

## ARGUMENT

### I.    Plaintiffs Concede Caremark Should Be Dismissed from the Suit Entirely.

Plaintiffs agree that the Court should "dismiss Caremark as a defendant entirely." Opp'n at 1. Plaintiffs reason that this is the "simplest solution," *id.* at 3, given that "Plaintiffs do not dispute arbitrability as to Caremark," *id.* at 4; "Plaintiffs recognize that [nearly 2,600] absent class members['] claims should be dismissed as to Caremark," *id.* at 3; and dismissing these claims creates the vexing "issue of how to move this case forward with half the class pursuing claims against CVS and Caremark and the other half pursuing claims against CVS alone," *id.*

Defendants agree with Plaintiffs that dismissing Caremark entirely is the appropriate outcome. *See* CVS Mem. Supp. of Mot. to Amend Class Definition at 2 ("CVS Mem."), ECF No. 213-1. The Court should thus accept Plaintiffs' proposed resolution and dismiss Caremark as a defendant from this suit entirely.

### II.    The Court Should Dismiss or Exclude from the Class All Claims Against CVS by TPPs with ADR Provisions.

As with Caremark, the Court should dismiss all claims against CVS by the roughly 2,600 absent class members with ADR provisions, or redefine the class to exclude these class members, because these TPPs must arbitrate or mediate their claims should they wish to pursue them. *First*, in nearly every case, the TPPs have clearly and unmistakably delegated questions of arbitrability to the arbitrator. Thus, the arbitrator and not the Court must decide whether these TPPs can litigate against CVS. *Second*, for the 62 remaining TPPs that did not delegate questions of arbitrability to the arbitrator, the Court should find that equitable estoppel applies, making arbitration the appropriate forum for their claims. And *finally*, the Court should apply these same analyses to the TPPs with mediation clauses.

A.    **Nearly All the TPPs Clearly and Unmistakably Delegated Questions of Arbitrability to the Arbitrator.**

Plaintiffs give short shrift to the issue of delegation, perhaps recognizing it is fatal to their position.  *See* Opp'n at 4–7.  Of the 2,374 absent class members with contracts containing arbitration provisions, 2,312 (more than 97%) delegate the issue of arbitrability to an arbitrator. *See* ECF No. 214-2, Defs.' App. A, col. E.[2]  The Supreme Court has held that courts "must respect" that delegation.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

Where they mention delegation at all, Plaintiffs conflate (1) the question of whether Caremark and the TPPs, as signatories, have clearly and unmistakably delegated the question of arbitrability to the arbitrator (a question for the Court) with (2) the separate question of whether CVS, as a non-signatory, can require the TPPs to arbitrate the merits of their dispute (a question of arbitrability for the arbitrator).  *See, e.g.*, Opp'n at 2 ("The Court can decide [the issue of arbitrability] because there is no 'clear and unmistakable' evidence that Caremark and the TPPs sought to include CVS as a party to the alternative dispute provisions with the 2,600 absent Class Members."); *id.* at 4–5 ("CVS did not sign and was not a party to" the PBM contracts, and "[t]hus . . . this Court can determine whether CVS can invoke the arbitration provisions.").

Plaintiffs thus misunderstand the delegation inquiry, which requires answering only two questions:  (1) Is the question at issue an "arbitrability question[]?"  *Henry Schein*, 139 S. Ct. at 530, and (2) Is there "'clear and unmistakable' evidence" that the signatories to the contract delegated questions of arbitrability to the arbitrator?  *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  If the answer to both questions is "yes," "a court possesses no power to decide the arbitrability issue."  *Id.* at 529.  Here, the answer to both questions is "yes," meaning *the arbitrator* must decide whether CVS can invoke the arbitration agreements.

---

[2] The Opposition does not dispute this count of the contracts.

As to the first question, the First Circuit has held—and Plaintiffs concede—that whether CVS, as a non-signatory, can invoke these arbitration agreements is an arbitrability question. *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); Opp'n at 4 ("[W]hether the parties are bound by a given arbitration clause raises a 'question of arbitrability.'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002))); *see also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) ("explicitly adopt[ing]" the First Circuit's "reasoning [in] *Apollo*" to conclude that "a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration").[3]

As to the second question, the arbitration clauses contain "'clear and unmistakable' evidence" of delegation, *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options*, 514 U.S. at 944), because they incorporate the American Arbitration Association ("AAA") rules.[4]  The law in this Circuit is unequivocal:  "This Court is clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator."  *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021) (citing *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11–12 (1st Cir. 2009)); *see also Awuah*, 554 F.3d 7 at 11 (holding the AAA's delegation rule "is about as 'clear and unmistakable' as language can get").

Plaintiffs suggest the question is not whether there is clear and unmistakable evidence *of delegation*, but rather whether there is "'clear and unmistakable' evidence that Caremark and the TPPs sought to include CVS as a party to the alternative dispute provisions."  Opp'n at 2.  In

---

[3] Plaintiffs say that, because the question of whether a non-signatory can invoke an arbitration agreement is an "arbitrability question," it also is a question "this Court can determine."  Opp'n at 4.  That is flatly wrong because of the delegation clause.  To conclude otherwise would contravene clearly established Supreme Court precedent.  *See Henry Schein*, 139 S. Ct. at 530.

[4] A few incorporate the rules of other arbitral associations, but those rules have materially similar delegation provisions.  *See* CVS Mem. at 6 n.6.  Plaintiffs do not contend that the delegation analysis would differ under these other sets of rules.

attempting to answer *that* (wrong) question, Plaintiffs contend that some of the agreements with delegation clauses contain language that "explicitly limits the arbitration provisions to *Caremark* and its clients." *See* Opp'n at 5–6. Again, this is not a delegation issue; it is a question of arbitrability for the arbitrator to decide.

The First Circuit has rejected exactly this type of "circular" reasoning because "it requires the court to consider for itself whether a particular claim falls within the scope of the arbitration agreement and delegation clause in order to determine whether the dispute should be submitted to the arbitrator to determine its arbitrability," at which point "the arbitrability question has already been answered by the court, and the delegation clause . . . rendered meaningless." *Bossé*, 992 F.3d at 30. "This is precisely the type of 'short-circuit[ing] [of] the process' which concerned the Supreme Court in *Henry Schein*." *Id.* at 30–31 (alterations in original) (quoting *Henry Schein*, 139 S. Ct at 527); *see also Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 281 (S.D.N.Y. 2015) ("[W]here a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator." (citing *Contec*, 398 F.3d at 209)).

The cases Plaintiffs cite do not support their position that delegation turns on whether the parties clearly intended CVS to be covered by the arbitration provisions. In *Barbosa v. Midland Credit Management., Inc*, 981 F.3d 82 (1st Cir. 2020), the court addressed a gateway question of arbitrability because the language of the delegation clause "d[id] not provide the 'clear and unmistakable evidence'" required for delegation. *Id.* at 93 n.13. In contrast, here, the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator by incorporating AAA rules. *See, e.g.*, *Bossé*, 992 F.3d at 29. Plaintiffs cite a footnote in *Barbosa* to suggest that

courts should apply a presumption against delegation, but after *Barbosa*, the First Circuit in *Bossé* applied the very *opposite* presumption: "Even if there were some ambiguity, under *First Options* we apply the presumption in favor of arbitrability in determining the scope of the delegation clause." *Id.* at 31.

Plaintiffs' citation to *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502 (1st Cir. 2020), is misleading. Plaintiffs' alterations to the quoted language suggest the *Biller* court was considering a contract involving Caremark, TPPs, and CVS, *see* Opp'n at 6—it was not. Rather, that case dealt with an arbitration clause between an assisted living facility and one of its residents. *See Biller*, 961 F.3d at 505, 509. Further, that arbitration clause did not incorporate the AAA rules. *See id.* at 506. If anything, *Biller supports* CVS's position because it explicitly acknowledges the rule in this Circuit that if "the parties agreed to have an arbitrator interpret the arbitration clause itself and (therefore) to decide all disputes about arbitrability . . . , then the arbitrator must resolve even the gateway question of who (a court or the arbitrator) should decide the parties' core disputes." *Id.* at 509. Here, unlike in *Biller*, the parties clearly agreed to have an arbitrator decide disputes about arbitrability by incorporating the AAA rules.

Finally, Plaintiffs cite *Henry Schein* on remand from the Supreme Court to the Fifth Circuit to argue that "incorporation of AAA rules does not provide [an] absolute shield" against a court deciding arbitrability issues. *See* Opp'n at 6–7 (citing *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281–82 (5th Cir. 2019)). But there, as Plaintiffs acknowledge, the contract included an express "carve-out in the arbitration clause for actions seeking injunctive relief" from the requirement to arbitrate in accordance with the AAA rules. *Id.* (quoting *In re Intuniv Antitrust Litig.*, 2021 WL 517386, at *4 n.3 (D. Mass. Feb. 11, 2021)). Specifically, the arbitration clause said: "Any dispute arising under or related to this Agreement *(except for actions seeking injunctive*

*relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane)*, shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)]." *Archer & White Sales*, 935 F.3d at 277 (emphasis added) (alteration in original). The court concluded that the "plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out." *Id.* at 281. But no such "carve-out" applies to the arbitration provisions' incorporation of AAA rules here: Plaintiffs point to no such "except for" language in any of the 2,312 arbitration clauses. And there is no reason to think the First Circuit would endorse the Fifth Circuit's reasoning, given the Supreme Court's and the First Circuit's admonition to resolve doubts in favor of arbitration. *E.g.*, *Bossé*, 992 F.3d at 31.

*     *     *

In sum, for the 2,312 absent class members whose contracts with Caremark contain arbitration provisions with delegation clauses, the question of whether CVS can invoke these agreements is an issue for an arbitrator—not for this Court—to decide.

**B.    For the 62 TPPs Without Delegation Clauses, the Court Should Hold Their Claims Against CVS Are Arbitrable.**

The arbitration agreements for 62 TPPs do not have delegation language. For this group, the Court must resolve whether CVS can invoke the arbitration clauses. That is the only dispute before the Court, as Plaintiffs do not argue that the claims in this case would fall within the scope of the arbitration clauses if CVS could invoke them. Opp'n at 2. The Court should conclude that CVS can invoke the arbitration clauses based on equitable estoppel because Plaintiffs' claims against CVS are "intertwined" with their agreements with Caremark, as their claims both "rely on" the agreements and allege "interdependent and concerted misconduct" between CVS and Caremark. The existence of a "third-party beneficiary" clause is irrelevant to this equitable

estoppel analysis, and "between the parties" language in the arbitration clauses does not defeat equitable estoppel.

      1.      **Plaintiffs' claims against CVS rely on the Caremark contracts containing arbitration provisions and allege interdependent and concerted conduct between CVS and Caremark.**

The principles of equitable estoppel permit CVS, a non-signatory, to hold the absent class members to the arbitration provisions in their agreements with Caremark. As an initial matter, this analysis requires looking to the state law chosen in each agreement, and not to federal common law as Plaintiffs argue. Plaintiffs cite *Ouadani v. TF Final Mile LLC*, 876 F.3d 31 (1st Cir. 2017), to support their view that federal common law applies. *See* Opp'n at 10. But there, neither party argued state law governed, and the court relied on an opinion from before *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), in applying federal common law. *See Ouadani*, 876 F.3d at 34, 36–37 (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)). Similarly, when the First Circuit has applied federal common law, it has done so "in the absence of any contention from the parties to the contrary." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 46 (1st Cir. 2008) (citing *InterGen*, 344 F.3d at 143); *see also Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 29 n.5 (1st Cir. 2019) (same).

Elsewhere, however, the First Circuit has "interpret[ed] [*Arthur Andersen*] as ***requiring reference*** to the provisions of the applicable state law" when "determining the amenability of a non-signatory party to an arbitration clause." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 12 n.26 (1st Cir. 2014) (emphasis added) (citing *Awuah*, 703 F.3d at 42–43 (applying state law)); *see also* CVS Memo at 7–8, 8 n.7, 15–16; *cf. Barbosa*, 981 F.3d at 87 & n.7 (in determining the "narrow[]" issue of whether non-signatories can enforce an arbitration agreement, "look[ing]

to Delaware state law").[5]  Plaintiffs argue that CVS's interpretation of these cases is "illogical," Opp'n at 9, but they offer no alternative explanation for these several cases and caveats.

In any event, whether the Court looks to state or federal law makes no practical difference for the 62 TPPs without delegation clauses, because these TPPs' contracts are governed by four states' laws, which mirror federal law.[6]  Federal courts generally apply equitable estoppel when the issues presented are "intertwined with the agreement that the estopped party has signed." *Ouadani*, 876 F.3d at 38.  That may be the case when (1) the claims "rely on the terms of the written agreement" containing the arbitration provision (the "rely on" test), or (2) the claims "raise[] allegations of substantially interdependent and concerted misconduct" by the non-signatory and a signatory (the "concerted misconduct" test).  *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Delaware law applies to 51 of the 62 TPPs' agreements, and Delaware law adopts federal law principles of equitable estoppel.  *See* CVS Memo at 9 (citing *Ishimaru v. Fung*, 2005 WL

---

[5] *See also Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261–62 (5th Cir. 2014) ("*Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia*, equitable estoppel if the relevant state contract law so permits.  Consequently, prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law . . . have been modified to conform with *Arthur Andersen*."); *id.* at 262 n.9 (collecting cases across federal circuits, including the First Circuit's decision in *Awuah*, 703 F.3d at 41–42).

[6] By contrast, were the Court to reach the question of arbitrability under the 2,312 agreements containing delegation clauses (which it should not), at least 34 states' laws would be at issue.  *See* Defs.' App. A, col. I.  As Plaintiffs concede, these laws materially differ.  *See* Opp'n at 12–13. Thus, conducting the equitable estoppel analysis for *all* agreements, regardless of whether there is a delegation clause, would cause individual issues to predominate.  Plaintiffs' proposal of creating multiple new subclasses based on the elements of states' equitable estoppel analyses, within a new arbitration subclass, across (1) each of the already existing four certified classes as well as (2) any other subclasses the Court may view as appropriate (e.g., different categories of U&C definitions), *see* Opp'n at 11; Mem. & Order at 39 n.15, 44, ECF No. 180, would be unmanageable.  *See* CVS Memo at 2–4.

2899680, at *1 (Del. Ch. Oct. 26, 2005); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *4–5 (Del. Ch. Aug. 22, 2006)).  Hawaii law (which governs one agreement) is the same as Delaware.  *See Luke v. Gentry Realty, Ltd.*, 96 P.3d 261, 268 (Haw. 2004).  Plaintiffs interpret Illinois law (which governs one agreement) as "follow[ing] the 'rely on' test only," and not the "concerted misconduct" theory.  *See* Opp'n at 12–13 (citing *Ervin v. Nokia, Inc.*, 812 N.E. 2d 534 (Ill. App. Ct. 2004)).  Texas law (which governs the final nine agreements) also mirrors federal law, *see Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006), but it does not "adopt[] the 'concerted misconduct' theory of equitable estoppel," *see G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 529 n.23 (Tex. 2015).  The result is the same under all four states' laws because class members' claims against CVS are arbitrable under both the "rely on" and the "concerted misconduct" tests.

*First*, Plaintiffs' position that their claims do not "rely on" their PBM contracts because Plaintiffs "do not bring breach of contract claims," Opp'n at 15, does not hold water.  As CVS explained fully in its opening brief, *see* CVS Mem. at 13–14, Plaintiffs' claims against CVS derive exclusively from the pricing provision in their PBM contract with Caremark to pay no more than CVS's U&C price.  Plaintiffs thus have no claims without their agreements with Caremark. Indeed, this Court previously has said that "contract review" in this case "appears inescapable," recognizing how fundamental the PBM agreements are to Plaintiffs' claims.  *See* Mem. & Order at 46, ECF No. 180.  And in any event, "[t]he doctrine of equitable estoppel is not limited to contractual claims but also encompasses claims in tort." *CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 1115153, at *2 (D. Mass. Mar. 24, 2017).

It makes no difference, as Plaintiffs suggest, that for some absent class members the arbitration agreements "are contained within master agreements between Caremark and a third-

party administrator." Opp'n at 15. In claiming that "Plaintiffs do not depend on these master agreements to support their claims," *id*., Plaintiffs seem to misunderstand the nature of these agreements. Third-party administrators ("TPAs") enter master agreements with Caremark that individual class members then incorporate by reference in their own "participating group" agreements with Caremark. *See, e.g.*, CMKPCS_0136925. Thus, the master agreements are part and parcel of the class members' agreements with Caremark.[7] Importantly, the "master agreements" Plaintiffs' discount are often the source of the "lower of U&C" pricing provisions on which Plaintiffs' claims depend. *See, e.g.*, CMKPCS_0129526 at 28 (CMKPCS_0129553). Because each class member necessarily "must rely on the terms of the written agreement in asserting [their] claims" against CVS, equitable estoppel applies. *See Wilcox & Fetzer*, 2006 WL 2473665, at *5 (quoting *Grigson*, 210 F.3d at 527).

*Second*, Plaintiffs do not even engage with CVS's argument that their claims against CVS are equitably estopped because they allege "interdependent and concerted misconduct" between CVS (a non-signatory) and Caremark (a signatory). *See* CVS Memo at 14–15. Perhaps this is because the point is irrefutable. Plaintiffs' reassert that CVS and Caremark are "co-conspirators" to be held "jointly and severally liable" under RICO, *see* Opp'n at 3, which only highlights the interdependence of their claims. Indeed, Plaintiffs themselves argue that "[t]o prevail at trial, Plaintiffs must present *common evidence establishing a conspiracy* between CVS and the PBMs (including Caremark)." Opp'n at 3–4 (emphasis added).

---

[7] Indeed, Plaintiffs appear to acknowledge as much, because in the same breath as claiming that they "do not depend on these master agreements," they assert that "[t]he vast majority of these master agreements contain Third-Party Beneficiary clauses," which they (incorrectly) claim defeat equitable estoppel. *See* Opp'n at 15.

### 2. Class members cannot avoid equitable estoppel based on an irrelevant "third-party beneficiary" clause.

Plaintiffs argue that equitable estoppel cannot apply when a contract contains a "third-party beneficiary" clause—that is, a clause stating that the contract is not intended to create rights for third parties. *See* Opp'n at 7–9.[8] Plaintiffs do not cite a single case that stands for this legal proposition. Rather, a mountain of case law makes clear that third-party beneficiary clauses have *no bearing* on the equitable estoppel analysis.

The First Circuit has held that "[t]he third-party beneficiary doctrine, while similar in some ways to estoppel, is a distinct ground for compelling a nonsignatory to arbitrate." *Ouadani*, 876 F.3d at 39. CVS is not asserting that distinct ground: it does not argue that it is a third-party beneficiary with "specific legal rights" in the PBM contracts. *See id.* (emphasis omitted) (quoting *InterGen*, 344 F.3d at 147). Rather, CVS argues for arbitration based on equitable estoppel. "Equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.'" *Sourcing Unlimited, Inc.*, 526 F.3d at 47 (quoting *InterGen*, 344 F.3d at 145). Plaintiffs are attempting to enjoy the alleged rights under their contracts with Caremark—by contending that their contract terms allow them to benefit from CVS's Health Savings Pass prices—while at the same time "attempting an 'end run' to avoid their agreement to arbitrate." *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 243 (11th Cir. 2011).

---

[8] Plaintiffs' spreadsheets identifying "third-party beneficiary" language are riddled with hundreds of transcription errors. For instance, Plaintiffs frequently deleted "CVS" from the phrase "CVS/caremark" in the text of the "third-party beneficiary" clauses presented in their Appendix 1. *Compare, e.g.*, Pls.' App. 1, row 464, *with* CMKPCS_0035136 at 22 (CMKPCS_0035157). And, some of Plaintiffs' entries are incomprehensible. *See, e.g.*, Pls.' App. 1, row 2089 ("any interest as to enforcement or __nuuu...performance").

Whether CVS is or is not a third-party beneficiary is irrelevant because a third-party beneficiary claim requires a completely different analysis from equitable estoppel. "While a court considering the application of equitable estoppel includes a focus on the parties' conduct after the execution of the contract, a court analyzing whether the third-party beneficiary doctrine applies looks to the parties' intentions at the time the contract was executed." *Ouadani*, 876 F.3d at 39. Plaintiffs' core argument—that "the Third-Party Beneficiary provisions . . . illuminate[] how the alternative dispute provisions in Caremark's contracts were never intended to be relied on by a third-party like CVS," Opp'n at 7–8—thus focuses entirely on the wrong question. The equitable estoppel analysis looks not "to the parties' intentions at the time the contract was executed"—that is, when they were creating their third-party beneficiary clauses—but rather to "the parties' conduct after the execution of the contract." *Ouadani*, 876 F.3d at 39.[9]

Plaintiffs neglect to address the law CVS presented for this same proposition in its opening brief. *See* CVS Memo at 12 n.8. For example, the Texas Court of Appeals has said:

> We also find [the signatory's] argument that compelling arbitration would run contrary to the parties' intention to be unpersuasive. It is true that the agreement clearly contains a "No Third Party Beneficiary" clause. However, we disagree with [the signatory's] contention that this clause prevents [the non-signatory] from compelling arbitration based on equitable estoppel. As noted previously, third-party beneficiary theories and equitable estoppel theories, although similar, are distinct and independent grounds which may bind a non-signatory to an arbitration agreement.

---

[9] Plaintiffs cite *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006), for the proposition "'that an arbitration provision may limit the application of equitable estoppel' thereby recognizing that the analysis begins with the language of the contract." Opp'n at 14 (quoting *Meyer*, 211 S.W.3d at 306). *Meyer* says in full: "We agree that an arbitration provision may limit the application of equitable estoppel. . . . Equitable estoppel cannot give non-parties a greater right to arbitration than the parties themselves have." 211 S.W.3d at 306. Given that "Plaintiffs do not dispute arbitrability as to Caremark," Opp'n at 4, allowing CVS to invoke the arbitration clause under the principles of equitable estoppel would not give CVS, a non-signatory, a greater right to arbitrate than Caremark, a signatory, itself has.

*Storm Water Sols., LLC v. Live Oak Rail Partners, LLC*, 2019 WL 613300, at *4 (Tex. App. Feb. 14, 2019) (citing *Arthur Andersen*, 556 U.S. at 630); *see also e.g.*, *Sabine Syngas, Ltd. v. Port of Port Arthur Nav. Dist. of Jefferson Cnty.*, 2011 WL 192756, at *4 (Tex. App. Jan. 13, 2011) ("We conclude this third party beneficiary disclaimer does not negate appellees['] right to compel arbitration based on equitable estoppel.").

Further, the Delaware Court of Chancery (recall that Delaware law covers 51 of the 62 TPP contracts at issue—over 80%) has found in the directly analogous context of forum selection clauses that non-signatories were "equitably estopped from challenging" application of the clause, even though the agreement "includ[ed] a clause disclaiming third-party beneficiaries."  *See McWane, Inc. v. Lanier*, 2015 WL 399582, at *9 (Del. Ch. Jan. 30, 2015).  Federal courts, which Delaware courts look to when deciding how to apply equitable estoppel in the context of arbitration, *see supra* Section II.B.1, reach the same conclusion.  *See, e.g.*, *Harries v. Stark*, 2015 WL 4545071, at *11 (N.D. Tex. July 28, 2015) (rejecting plaintiff's argument that a "no third-party beneficiary" clause prevents the application of equitable estoppel, because "[e]quitable estoppel is a theory by which *nonsignatories*"—not third-party beneficiaries—"bind signatories to a contract pursuant to the arbitration clause" and because "Plaintiff's interpretation of the Agreement's 'no third-party beneficiary' clause . . . would vitiate the doctrine of equitable estoppel and the principles of fairness it seeks to protect"); *cf. Hautz Constr., LLC v. H & M Dep't Store*, 2012 WL 5880370, at *14 (D.N.J. Nov. 20, 2012) ("Even if [a non-signatory] were not a third-party beneficiary of the subcontracts, [the non-signatory] would be entitled to enforce the arbitration provision against [the signatory] under the doctrine of equitable estoppel. . . . . [A] plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the nonsignatory.").

In short, the existence of a "third-party beneficiary" clause does not defeat CVS's argument premised on equitable estoppel. Plaintiffs have not cited a single contrary case.

### 3. Class members cannot avoid equitable estoppel based on "between the parties" language in one of the relevant arbitration clauses.

Plaintiffs similarly err when they seize on language in the arbitration agreements that disputes "between the parties" are arbitrable. As an initial matter, this argument is inconsequential because *only one* of the 62 arbitration clauses without a delegation clause contains "between the parties" language. *See* Defs.' App. A, col. F.

Even as to that one agreement, Plaintiffs' argument is misguided. Similar to Plaintiffs' third-party beneficiary argument, as discussed above, their "between the parties" argument is beside the point because it concerns "the parties' intentions at the time the contract was executed," but equitable estoppel "focus[es] on the parties' conduct *after* the execution of the contract." *Ouadani*, 876 F.3d at 39 (emphasis added).

Even assuming it had any potential relevance, the "between the parties" language does not mean what Plaintiffs argue. *See* CVS Memo at 18 & n.10. Courts have held that "[t]he phrase 'between the parties,' without more, suggests only that [the signatories] meant to ensure that the agreement applied to disputes between them, *not that they intended to preclude the application of equitable estoppel*." *Meyer*, 211 S.W.3d at 306–07 (emphasis added).

Plaintiffs argue that *Meyer*, a Texas case, "has no impact on the federal common law analysis of equitable estoppel." Opp'n at 11 n.4. As already explained, *see* Section II.B.1, state law governs, but federal law principles do not support Plaintiffs' position either. As CVS previously noted, *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)—a leading case establishing federal law on arbitral equitable estoppel—allowed a non-signatory to invoke an arbitration clause even where the arbitration clause had "between the parties" language. *See id.* at

944, 948; CVS Memo at 18. Plaintiffs rejoin that *MS Dealer* involved "a broad arbitration provision which specifically included [fraud claims]" and "the plaintiff's fraud claims against the signatory and non-signatory were based on the same facts and were inherently inseparable." Opp'n at 11 n.4. Plaintiffs do not explain why specifying a particular type of claim would defeat the impact they believe "between the parties" language has on equitable estoppel. Further, while it is true that the arbitration provisions at issue here do not specifically call out fraud claims, they are broad enough to reach such claims. *See* Caremark Mem. Supp. of Mot. to Amend Class Definition at 9–10, ECF No. 211-1; Opp'n at 2 (conceding that the claims asserted come within the arbitration clauses' scope). And like in *MS Dealer*, Plaintiffs' claims "against the signatory [Caremark] and non-signatory [CVS]" are "based on the same facts" and "inherently inseparable." That overlap is the very basis for Defendants' equitable estoppel arguments. *See* Section II.B.1.

   In any event, *MS Dealer* is not the only case that stands for this proposition. Other courts have found that "even where an arbitration clause is limited to disputes 'between the parties,' a non-signatory may be able to compel arbitration of arbitrability issues." *Cartagena Enters., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *4 (S.D.N.Y. Oct. 16, 2013) (citing *Contec*, 398 F.3d at 210); *see also Petersen v. EMC Telecom Corp.*, 2010 WL 2490002, at *3 (D. Ariz. June 16, 2010) (collecting cases for the proposition that "courts have . . . b[ound] a non-signatory to arbitration even when the arbitration agreement explicitly limited the duty to arbitrate to the parties of the agreement," as such language "does not apply where traditional contract and agency principles (i.e. . . . estoppel) place the [non-signatory] in [the signatory's] shoes").[10]

---

[10] Plaintiffs suggest that *Hogan* stands for the proposition that "the 'between the parties [language] . . . is clear that it does not confer arbitration rights on [CVS] or any third party.'" Opp'n at 11 (alterations in Plaintiffs' brief) (citing *Hogan*, 914 F.3d at 40). It does not. *Hogan*'s dicta concerns a non-signatory's argument "that it is a third-party beneficiary." *Hogan*, 914 F.3d

Indeed, *as to Caremark and CVS specifically*, many courts have determined that principles of equitable estoppel permit CVS to invoke the arbitration clauses in Caremark's contracts, despite "between the parties" language in those contracts. *See, e.g.*, *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 254–55, 256 (5th Cir. 2014); *see also Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837, 842 (5th Cir. 2015) ("Equitable estoppel . . . overrides a no non-party rights provision in the same way that it overrides an arbitration provision stating that it only applies to disputes between parties.").[11]

\*    \*    \*

In sum, for the 62 absent class members whose PBM contracts do not contain delegation clauses, the Court should find that principles of equitable estoppel allow CVS to invoke the arbitration provisions. Thus, the Court should dismiss these TPPs' claims, or redefine the class to exclude them.

## C.    The Court Also Should Dismiss or Exclude All Claims Against CVS by TPPs with Mediation Clauses.

Finally, for all the same reasons discussed above, the 286 class members with mediation clauses are equitably estopped from pursuing litigation against CVS. Plaintiffs do not suggest that the mediation analysis differs from the arbitration inquiry. *See* Opp'n at 15–16.[12]

---

at 39. But as already explained, the third-party beneficiary and equitable estoppel analyses are distinct, and CVS does not claim it is a third-party beneficiary. *See supra* Section II.B.2.

[11] *See also Burton's Pharmacy, Inc. v. CVS Caremark Corp.*, 2015 WL 5430354, at \*11 (M.D.N.C. Sept. 15, 2015), *report and recommendation adopted*, 2015 WL 5999386 (M.D.N.C. Oct. 14, 2015); *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1183–86 (N.D. Cal. 2013); *CVS Pharmacy, Inc. v. Gable Family Pharmacy*, 2012 U.S. Dist. LEXIS 191047, at \*9–32 (D. Ariz. Oct. 19, 2012).

[12] Plaintiffs identify one class member included in Defendants' motions whose mediation clause does not affect the right of the TPP to participate in a "class action suit." *See* Opp'n at 15; *see also* CMKPCS_0055613 at 13 (CMKPCS_0055625). Upon further review, Defendants agree that the mediation provision for that one TPP does not prohibit that TPP's participation in this class action,

## <u>CONCLUSION</u>

Consistent with Plaintiffs' request, with which Defendants agree, the Court should dismiss Caremark from the suit entirely.  CVS further requests that the Court redefine the class to exclude the absent class members whose PBM agreements contain alternative dispute resolution provisions or, in the alternative, dismiss their claims against CVS.

---

because a "class action" is expressly exempted from the mediation provision, and therefore withdraw their motions as to that TPP alone.

Dated: January 10, 2024

Respectfully submitted,

By: /s/ *Grant A. Geyerman*

Robert C. Corrente
Whelan Corrente & Flanders LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Telephone:  (401) 270-4500
Facsimile:  (401) 270-3760
rcorrente@whelancorrente.com

Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
William T. Burke (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Kathryn E. Hoover *(Pro Hac Vice)*
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
emainigi@wc.com
csinger@wc.com
wburke@wc.com
ggeyerman@wc.com
khoover@wc.com

*Attorneys for Defendants CVS Pharmacy, Inc. and CaremarkPCS Health, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2024 the foregoing document was filed via the ECF system, which will provide notice to all counsel of record.

DATED: January 10, 2024                    By: <u>/s/ *Grant A. Geyerman*</u>