# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND; and INDIANA CARPENTERS WELFARE FUND, *on behalf of themselves and all others similarly situated*,<br>　　　Plaintiffs,<br><br>　　v.<br><br>CVS PHARMACY, INC.,<br>　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 16-cv-046-JJM-PAS |
| PLUMBERS WELFARE FUND, LOCAL 130, *on behalf of itself and all others similarly situated*,<br>　　　Plaintiff,<br><br>　　v.<br><br>CVS PHARMACY, INC.,<br>　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 16-cv-447-JJM-PAS |

## MEMORANDUM AND ORDER

**JOHN J. MCCONNELL, JR., Chief Judge, United States District Court**

Plaintiffs are members of a class action lawsuit brought against CVS Pharmacy, Inc. ("CVS"). Plaintiffs have filed a motion, *see* ECF No. 273,[1] requesting that this Court reconsider its prior Arbitration Orders, which had the effect of placing

---

[1] All ECF Nos. in this order correspond with the lead case number, No. 16-cv-046-JJM-PAS.

some of the class members into subclasses and staying their claims. *See* ECF No. 238; Text Order (Feb. 14, 2025).

For the reasons that follow, the Court GRANTS Plaintiffs' Motion. Upon reconsideration, the Court finds that the law of the First Circuit—specifically, the law governing nonsignatory enforcement of arbitration agreements—has changed such that the Court must lift its stay, eliminate the previously created subclasses, and allow some of the class members' claims to proceed while dismissing the claims of other class members.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a class action consisting of two consolidated cases. Plaintiffs are third-party payors ("TPPs") or health plans[2] that offer their members prescription drug insurance at subsidized or reduced costs. ECF No. 171 at 10. CVS is one of the defendants in this lawsuit. There are also various pharmacy benefit managers ("PBMs") that have been involved in this case in various capacities, including Caremark,[3] OptumRx,[4] Express Scripts,[5] Medco,[6] and MedImpact. *Id.* at 11. The

---

[2] "Health plans" refer to insurance companies, governmental programs (like Medicare or Medicaid), and insurance plans sponsored by employers, pension plans, or union-affiliated trust funds. ECF No. 171 at 10-11; ECF No. 276-1 at 5.

[3] As of May 23, 2024, Defendant Caremark has been dismissed from this lawsuit. ECF No. 238 at 4-5.

[4] As of December 11, 2025, the parties have jointly stipulated to amend the class definition to exclude claims against Defendant OptumRx. *See* ECF No. 285. The Court entered that stipulation a day later. *See* Text Order (Dec. 12, 2025). Accordingly, CVS's prior Motion to Exclude Certain OptumRx-Related Absent Class Members, or in the alternative, to Dismiss Their Claims (ECF No. 269) is now moot.

[5] There is a pending motion by CVS to amend the class definition to exclude class members related to Express Scripts. *See* ECF No. 276. The Court leaves resolution of this motion for another day.

[6] As of 2012, Express Scripts acquired Medco. ECF No. 273 at 5 n.17.

PBMs act as middleperson between the TPPs and CVS by, among other things, negotiating drug prices on behalf of the TPPs.  ECF No. 171 at 11.

Plaintiffs first brought claims against CVS nearly a decade ago,[7] alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and state consumer protection acts, as well as claims for negligent misrepresentation, fraud, and unjust enrichment.  *Id.* at 5.  In essence, Plaintiffs assert that CVS conspired with certain PBMs to defraud and overcharge Plaintiffs for prescription drugs.  ECF No. 171 at 3-4.

On May 11, 2021, Judge William E. Smith[8] certified a "Nationwide Class."[9] *See* ECF No. 179.  This class is composed of over 5,000 TPPs who contracted with the PBMs (i.e., "the TPP-PBM contracts").  ECF No. 174 at 1.  Crucially, CVS is not a party to any of these TPP-PBM contracts.  *Id.*; *see also* ECF No. 279 at 1.

---

[7] Plaintiffs' first complaint was filed on February 1, 2016.  *See* ECF No. 1.  That complaint has since been amended by Plaintiffs.  *See* ECF No. 171.

[8] Judge Smith retired from judicial service on January 21, 2026, and this case was randomly assigned to the current presiding judge.  *See* Text Order (Aug. 27, 2025).

[9] The "Nationwide Class" is as follows:

> All health plans that, at any time between November 2008 and February 1, 2016, (1) had Caremark, L.L.C., Express Scripts, Medco, OptumRx, or MedImpact (or any of their predecessors) as their pharmacy benefit managers, (2) paid for generic prescription drugs purchased from CVS that were included in CVS's Health Savings Pass program, and (3) paid for those drugs based on a formula containing Usual and Customary price.

ECF No. 179 at 21, 77.  Judge Smith also certified three other classes in this case: (1) an Unjust Enrichment Class; (2) an Unfair and Deceptive Conduct Consumer Protection Class; and (3) an Omission Consumer Protection Class.  *Id.* at 21-22, 77.

In its certification order, the Court acknowledged that, because some class members may be subject to mandatory arbitration, "Defendants may pursue … motions to compel arbitration and/or dismiss following class certification, and the Court will employ the procedural tools at its disposable to exclude those TPPs from the class or place them in a subclass." ECF No. 179 at 58-59.

As part of the discovery process, the PBMs began to produce their contracts with the TPPs. Several of these contracts contain alternative dispute resolution ("ADR") provisions, which require the parties to submit to either arbitration or mediation. Accordingly, in 2023, PBM Caremark and CVS filed separate motions to compel Plaintiffs to submit to the ADR provisions or, in the alternative, to dismiss from the class any absent class member TPP with an ADR provision in its contract with Caremark. *See* ECF Nos. 211, 213. This classification applied to approximately 2,374 TPPs that had contracts with Caremark. ECF No. 273 at 5.

On May 30, 2024, Judge Smith issued an order that made several key holdings. *See* ECF No. 238. First, the Court dismissed Caremark from this lawsuit entirely. *Id.* at 4-5. Second, the Court put certain absent class members into a "subclass" (i.e., "the Caremark Subclass") and temporarily stayed those subclass members' claims. *Id.* at 8. The Caremark Subclass is specifically composed of 2,312 TPPs whose contracts with Caremark have arbitration agreements that contain "delegation clauses," which delegate "questions of arbitrability" to an arbitrator. *Id.* at 6-8. Third, of the approximately 348 TPPs whose contracts with Caremark have

ADR provisions that do *not* contain delegation clauses,[10] the Court analyzed whether CVS—as a nonsignatory to those contracts—could require Plaintiffs to submit to the contracts' ADR processes under state law principles of equitable estoppel. *Id.* at 8-10. The Court sent to arbitration and dismissed the claims of those TPPs with non-delegated ADR agreements governed by California, Delaware, Florida, Georgia, Hawaii, Iowa, Massachusetts, New York, Ohio, Tennessee, Texas, and Virginia law.[11] *Id.* at 24. By contrast, the Court allowed to proceed the claims of those TPPs with non-delegated ADR agreements governed by Alabama, Colorado, Idaho, Illinois, Indiana, and New Jersey law.[12] *Id.*

A few months later, CVS filed another motion—this time to dismiss from the class any absent class member TPP with an arbitration provision in its contract with PBM MedImpact. *See* ECF No. 253 at 1. Relying on the reasoning from his previous order, Judge Smith created another subclass for absent class members whose contracts with MedImpact contain arbitration provisions with delegation clauses (i.e.,

---

[10] Approximately 62 of these "non-delegated" contracts contain arbitration agreements and 286 contain mediation clauses. *See* ECF No. 238 at 8.

[11] These states employ some combination of the "rely on" test, the "concerted misconduct" test, or both for equitable estoppel. ECF No. 238 at 19-20, 22-23. Applying these tests, Judge Smith concluded that these TPPs were equitably estopped, or precluded, from avoiding arbitration of their claims against CVS. *Id.* at 11, 19-20.

[12] These states either: (1) employ the "detrimental reliance" test for equitable estoppel; or (2) do not permit nonsignatories to compel mediation absent language in the contract that contemplates nonsignatory enforcement. ECF No. 238 at 14, 22-23. Applying these principles, Judge Smith found that equitable estoppel did not apply to these TPP claims and concluded that these TPPs were not required to submit to their contracts' ADR processes and their claims could proceed in federal court. *Id.* at 14, 20, 23.

"the MedImpact Subclass"), and the claims of the MedImpact Subclass were also temporarily stayed.  *See* Text Order (Feb. 14, 2025).  The orders concerning the Caremark and MedImpact Subclasses are referred to hereafter as the "Arbitration Orders."

 Since then, the parties have filed various motions, including the present motion from Plaintiffs in which they request that the Court "vacate its Arbitration Orders, eliminate the Caremark and MedImpact Subclasses, and decide the issue of arbitrability itself."  ECF No. 273 at 17.  Plaintiffs assert that this outcome is necessary because, since issuing the Arbitration Orders, "the law has changed in the First Circuit."  *Id.*  CVS objects to this motion.  *See* ECF No. 279.

## I.    DISCUSSION

### A.    Legal Standard

Although styled as a "Motion to Vacate," the Court will instead treat Plaintiffs' motion as a "Motion for Reconsideration."  There is no dispute between the parties that the Court's earlier Arbitration Orders were interlocutory in nature rather than final judgments.  ECF No. 273 at 9; ECF No. 279 at 8; *see also Braintree Lab'ys, Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 43 (1st Cir. 2010).  Plaintiffs also invoke Federal Rule of Civil Procedure 54(b), which authorizes courts to "reconsider" interlocutory orders "within [their] sound discretion."  *Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc.*, 789 F. Supp. 2d 242, 243 (D. Mass. 2011) (quoting *Campos v. P.R. Sun Oil Co., Inc.*, 536 F.2d 970, 972 n.6 (1st Cir. 1976)).  Rule 54(b) does not, however, provide courts with the authority to "vacate" interlocutory

orders. *See United States v. Toth*, No. 15-cv-13367-ADB, 2019 WL 7039627, at \*2 (D. Mass. Dec. 20, 2019), *aff'd*, 33 F.4th 1 (1st Cir. 2022).

Accordingly, because the Arbitration Orders were interlocutory in nature, they "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Pérez-Ruiz v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders ... remain open to trial court reconsideration, and do not constitute the law of the case."). It is important to note, however, that granting a motion for reconsideration is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

A court may grant such a motion only in one of three limited circumstances: (1) "if the moving party presents newly discovered evidence," (2) "if there has been an intervening change in the law," or (3) "if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *De Giovanni v. Jani-King Int'l, Inc.*, 968 F. Supp. 2d 447, 450 (D. Mass. 2013) (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)). Ultimately, whether a movant satisfies this stringent standard so as to justify reconsideration of the prior order is a decision that rests "within the sound discretion of the Court." *Toth*, 2019 WL 7039627, at \*2 (quoting *Homeowner Options for Mass.*, 789 F. Supp. 2d at 243 (internal quotations and citations omitted)).

B.    **Analysis**

Underlying Plaintiffs' Motion for Reconsideration is the following question: Must the Plaintiff TPPs, whose contracts with the PBMs contain arbitration agreements[13] that delegate "questions of arbitrability" to an arbitrator, be required to submit to CVS's arbitration demands, even though CVS is a nonsignatory to the TPP-PBM contracts?

In its prior Arbitration Orders, the Court held that it was without authority to answer this question and that this was an issue delegated to an arbitrator to decide. ECF No. 238 at 8; *see also* Text Order (Feb. 14, 2025).

Plaintiffs now assert that, since the Court issued its Arbitration Orders, there has been an "intervening change in the law" of the First Circuit, which is one of the circumstances that permit the Court to grant a motion for reconsideration. ECF No. 273 at 2; *see De Giovanni*, 968 F. Supp. 2d at 450. Last year, the First Circuit issued its decision in *Morales-Posada v. Cultural Care, Inc.*, which marked a shift in how nonsignatories to arbitration agreements can compel signatories to those agreements to submit to arbitration. *See* 141 F.4th 301 (1st Cir. 2025).

As will be explained in more detail below, the Court agrees with Plaintiffs that reconsideration of the Arbitration Orders is appropriate here. The analysis will

---

[13] Though there are both arbitration and mediation agreements implicated in this case, for the purposes of this motion, the Court focuses its attention on the arbitration agreements. This is so because only the arbitration agreements, and not the mediation agreements, contain delegation clauses. *Contrast* ECF No. 212-2 (listing those arbitration agreements that contain delegation clauses), *with* ECF No. 212-3 (listing mediation agreements, none of which contain delegation clauses).

proceed as follows. First, the Court will briefly recount the First Circuit's holding in *Morales-Posada*. Next, the Court will discuss that decision's applicability to this case. Finally, the Court will conclude by reconsidering its earlier Arbitration Orders, which had the effect of staying the claims of the Caremark and MedImpact Subclasses, that is, absent TPP class members whose contracts with Caremark and MedImpact contained arbitration agreements with delegation clauses. *See* ECF No. 238; Text Order (Feb. 14, 2025).

### 1. The Holding in *Morales-Posada*

The First Circuit issued its decision in *Morales-Posada* in June 2025. 141 F.4th 301. That case concerned four au pairs who brought a class action lawsuit against Cultural Care, a Massachusetts company that places au pairs with host families throughout the United States. *Id.* at 305. The plaintiffs had signed a contract with International Care Ltd. ("ICL"), a Swiss company "separate and distinct" from Cultural Care. *Id.* That contract (i.e., "the ICL contract") contained an arbitration agreement between the plaintiffs and ICL, requiring the parties to arbitrate their disputes in "the arbitrational tribunals of Switzerland." *Id.* at 306. Importantly, the arbitration agreement made no reference to Cultural Care, nor was Cultural Care a signatory to the ICL contract itself. *Id.*

When the plaintiffs subsequently brought wage-and-hour claims against Cultural Care in federal court, Cultural Care moved to compel arbitration and cited the ICL contract as a basis for doing so. *Id.* At the outset, Cultural Care sought to send the matter out of federal court and to an arbitrator, arguing that a provision of

the ICL contract delegated to arbitrators the exclusive means to decide whether Cultural Care could compel arbitration in the first place.  *Id.* at 309.

The First Circuit ruled that Cultural Care could not invoke this provision (i.e., "the delegation provision").  The court noted that, "as a general rule, contractual agreements bind only the parties to the agreement and may be enforced only by those parties."  *Id.* at 309 (citing *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994)).  As a nonsignatory to the ICL contract, Cultural Care had to first establish its right to enforce the delegation provision through one or more of the "traditional principles" of contract law that permit nonsignatory enforcement.  *Id.* at 309-10 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).  Such "traditional principles" include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  *Arthur Andersen*, 556 U.S. at 631 (quoting 21 Williston on Contracts § 57:19 (4th ed. 2001)).  The First Circuit found that Cultural Care could not show that it was entitled to nonsignatory enforcement of the delegation provision.  *Id.* at 310-11.

Cultural Care separately argued that "to the extent that the question of arbitrability *is* for the court to decide," then the company had the power to enforce the ICL contract's arbitration agreement either as a third-party beneficiary to the contract or under a theory of equitable estoppel.  *Id.* at 311.  The First Circuit rejected both arguments.  First, the court held that Cultural Care could not demonstrate with the requisite "special clarity" that the parties to the ICL contract intended to make Culture Care a third-party beneficiary with the authority to compel arbitration.  *Id.*

10

at 318 (citing *McCarthy*, 22 F.3d at 362). This was bolstered by the fact that Cultural Care was not at all referenced in the parties' arbitration agreement. *Id.* (citing *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1118 (1st Cir. 1986); *Cortés-Ramos v. Martin-Morales*, 894 F.3d 55, 60 (1st Cir. 2018)).

Second, because the plaintiffs' claims against Cultural Care were not "sufficiently intertwined" with and "exist[ed] in the absence of" the ICL contract, the court determined that there was no basis for applying equitable estoppel as to Cultural Care.[14] *Id.* at 319-20 (quoting *P.R. Fast Ferries LLC v. SeaTran Marine, LLC*, 102 F.4th 538, 550 n.10 (1st Cir. 2024)). In sum, the First Circuit concluded that Cultural Care, as a nonsignatory to the ICL contract, could not compel the plaintiffs (who *were* signatories) to resolve their claims through arbitration. *Id.* at 305.

### 2. *Morales-Posada*'s Applicability to This Case

This case shares a common issue of law with *Morales-Posada*. Here, the contracts at issue are between the Plaintiff TPPs and the PBMs. As CVS acknowledges, the company has not signed any of the TPP-PBM contracts. ECF No. 279 at 1 (acknowledging CVS's "non-signatory" status to the TPP-PBM

---

[14] The parties in *Morales-Posada* conceded that "federal common law" governed the question over whether Cultural Care could, as a nonsignatory, enforce the arbitration agreement under a theory of equitable estoppel. *Morales-Posada*, 141 F.4th at 307-08. As such, the First Circuit utilized the "intertwined" equitable estoppel test that governs under federal common law.

By contrast, in the equitable estoppel analysis that follows in this case, the Court will apply state equitable estoppel principles. This is so because the parties agree that state law controls under the circumstances of this case.

contracts).  Like Cultural Care, CVS would like to invoke the arbitration agreements contained in the TPP-PBM contracts, and the company argues that at least some of those agreements[15] contain "delegation clauses" that delegate questions of arbitrability to an arbitrator.  ECF No. 279 at 10-12.

The Supreme Court has previously held that, with a delegation clause, parties to an arbitration agreement can agree to delegate all arbitrability questions to an arbitrator.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).  Arbitrability questions include even "threshold arbitrability questions,"[16] such as: Does this dispute actually belong in arbitration, or should it proceed in federal court?  *Id.*  Where a delegation clause exists, "a court possesses no power to decide" questions of arbitrability, and it must respect the parties' decision to delegate such questions to an arbitrator.  *Id.* at 71.

So, what happens when a *nonparty* to an arbitration agreement with a delegation provision tries to compel a party to that agreement to submit to arbitration?  Does a court decide whether the nonparty can do so?  Or is that an "arbitrability question" that only an arbitrator can determine?  In its May 2024 order, the Court recognized that "whether CVS as a nonsignatory … can invoke the [TPP-

---

[15] The parties agree that there are 2,303 Caremark plans and 48 MedImpact plans that contain delegation clauses.  *See* ECF No. 279 at 12; ECF No. 283 at 3.  There are also 302 OptumRx plans with delegation clauses, but again the parties jointly stipulated to exclude the OptumRx-related claims.

[16] These types of questions have also been referred to as "'gateway' questions of 'arbitrability.'"  *Henry Schein*, 586 U.S. at 67-68 (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

PBM] contracts' arbitration provisions is an arbitrability question."  ECF No. 238
at 5-6 (cleaned up).  The Court cited to *Grabowski v. PlatePass, L.L.C.*, an out-of-
circuit decision that collected cases from other circuits that supported this
proposition.  No. 20 C 7003, 2021 WL 1962379, at *4 (N.D. Ill. May 17, 2021) (citing
*Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *Eckert/Wordell Architects, Inc.
v. FJM Props. Of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U
Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017); *Contec Corp. v.
Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005)).

In fairness, the Court relied on those decisions because, up until that point, the
First Circuit had yet to squarely address the issue.[17]  The Court therefore concluded
that, because some of the TPP-PBM arbitration agreements contained delegation
clauses, the parties to those agreements had delegated to an arbitrator the issue over
whether CVS could compel arbitration as a nonparty.  ECF No. 238 at 8.  Relying on
*Henry Schein*, the Court stated that it was obligated to "respect those delegations"
and determined that it could not decide this threshold issue itself.  *Id.* (citing *Henry
Schein*, 586 U.S. at 65).

But the legal landscape has shifted since *Morales-Posada* was decided.  The
First Circuit clarified the holding in *Henry Schein* and explained that deference to

---

[17] Since then, not only has the First Circuit determined that federal courts *can*
in fact determine whether nonsignatories can compel arbitration agreements in the
first place, *see Morales-Posada*, 141 F.4th at 309-10, but the Seventh Circuit (which
binds the U.S. District Court for the Northern District of Illinois) has also reached
the same conclusion.  *See, e.g., CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F.4th
721, 723 (7th Cir. 2022); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022).

the arbitrator is owed on questions of arbitrability only where the *parties* to the arbitration agreement are concerned. *Morales-Posada*, 141 F.4th at 309.  It held that, "as a general rule, contractual agreements bind only the parties to the agreement and may be enforced only by those parties." *Id.* (citing *McCarthy*, 22 F.3d at 362).  By definition, CVS is neither bound by nor automatically entitled to enforce an arbitration agreement to which it is not a party. *Id.*  Likewise, CVS cannot ordinarily benefit from a delegation provision to a contract it has not signed. *Id.* at 310-11.

The First Circuit made clear that nonsignatories must *first* establish their right to enforce a delegation clause through one or more of the "traditional principles" of contract law that permit nonsignatory enforcement. *Id.* at 309-10 (citing *Arthur Andersen*, 556 U.S. at 631).  In other words, CVS may invoke the delegation clauses contained in the TPP-PBM contracts *only if* it can explain how it overcomes the general rule that "contractual agreements bind only the parties to the agreement and may be enforced only by those parties." *Id.* (citing *McCarthy*, 22 F.3d at 362).  And whether a nonsignatory like CVS can make this showing is squarely an issue for this Court, rather than an arbitrator, to decide. *Id.* at 311 (affirming district court's decision to decide for itself the issue of nonsignatory enforcement of a delegation provision rather than sending the issue to an arbitrator to decide).

To sum up, the law of the circuit has changed.  Previously, the Court held that it was without authority to determine whether CVS could, as a nonsignatory, enforce the delegation provisions contained in the TPP-PBM contracts.  Now, the First Circuit has clarified that federal courts do in fact possess this authority.  This merits

reconsideration of the Court's prior Arbitration Orders. *See De Giovanni*, 968 F. Supp. 2d at 450; *Allen*, 573 F.3d at 53 (holding that reconsideration of a prior interlocutory order is appropriate where "there has been an intervening change in the law").

As such, the Court GRANTS Plaintiffs' motion. ECF No. 273. Applying the most up-to-date law of the First Circuit, the Court must now decide whether CVS may, as a nonsignatory, enforce the delegation provisions contained in the TPP-PBM contracts.

### 3.    Whether CVS Is Entitled to Nonsignatory Enforcement

### a.    CVS Cannot Apply the "Prima Facie" Standard

As a preliminary matter, CVS argues that, under *Morales-Posada*, it can establish its right to nonsignatory enforcement by merely making a "prima facie or presumptive showing" that it is entitled to invoke the at-issue delegation clauses. ECF No. 279 at 14; ECF No. 271 at 7-9. CVS submits that this showing is "'not onerous,' but rather 'modest,' 'a low standard,' and 'quite easy to meet.'" ECF No. 271 at 8 (quoting *Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 504 (1st Cir. 2022) (internal quotations and citations omitted)). The company also claims that it "easily meets this low bar." *Id.* at 9 (cleaned up).

But CVS misconstrues the holding in *Morales-Posada*. As Plaintiffs correctly point out, *see* ECF No. 273 at 15, the First Circuit never created such a "prima facie test." The court only discussed the "prima facie" standard in the context of its earlier decision in *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989). *Morales-*

*Posada*, 141 F.4th at 310. *Berg* involved defendants "who were not signatories to the contract, but who were *assigned* a signatory's contractual rights" and who could therefore "compel arbitration under the contract's delegation clause." *Id.* (emphasis added) (citing *Berg*, 886 F.2d at 473). The contract at issue in *Berg* included language that delegated arbitrability disputes to arbitrators so long as a "*prima facie* agreement to arbitrate" existed. 886 F.2d at 473 (quoting language from contract).

The First Circuit recognized in *Morales-Posada* that it only applied the "prima facie" standard in *Berg* because it was "[f]ollowing the parties' lead" and such language was specifically "incorporated into that contract." 141 F.4th at 310 (citing *Berg*, 886 F.2d at 473). There was a dispute over whether the "right [to compel arbitration] was validly *assigned* to the defendants," but the First Circuit concluded that the defendants put forth "prima facie evidence" to show that "an *assignment* had in fact occurred." *Id.* (emphasis added) (citing *Berg*, 886 F.2d at 473).

The contracts at issue in this case, however, differ from the one in *Berg* in two important respects. First, the Plaintiffs note—and CVS does not deny—that none of the TPP-PBM contracts incorporate or make reference to the "prima facie" language included in the *Berg* contract. ECF No. 273 at 15; ECF No. 283 at 5-6. Second, both parties acknowledge that, unlike the defendants in *Berg*, CVS has not been "assigned" the right to enforce the delegation clauses. ECF No. 273 at 14; ECF No. 279 at 13. So, if the First Circuit determined that the defendants in *Berg* presented "prima facie evidence" to establish that "an assignment had in fact occurred," then it makes little sense to hold CVS to the same standard when: (1) no

language in any of the TPP-PBM contracts utilizes the words "prima facie"; and (2) the principle of "assignment" is not at all implicated in this case. *Morales-Posada*, 141 F.4th at 310. Put another way, CVS's invocation of *Berg* "does not aid its cause." *Id.*

### b.    Nonsignatory Enforcement Is Not a "Low Bar"

The question then becomes: If not by meeting this self-created "prima facie" standard, then how may CVS show that it is entitled to enforce the delegation clauses contained in the TPP-PBM contracts? Well, for starters, CVS may *not* simply insist on the Court looking to the "underlying arbitration agreement[s] and the applicable arbitral rules to determine whether a non-signatory can invoke a delegation clause." ECF No. 279 at 14. Each of the arbitration agreements within the TPP-PBM contracts incorporate the rules of either: (1) the American Arbitration Association ("AAA"); (2) the Judicial Arbitration and Mediation Services ("JAMS"); or (3) the American Health Law Association ("AHLA"). *Id.* at 14-15. And under each of those rules, arbitrators have broad authority to decide questions of arbitrability.[18] *Id.* at 15.

---

[18] Rule 7(a) of the AAA Commercial Arbitration Rules & Mediation Procedures provides that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Am. Arb. Ass'n, Commercial Arbitration Rules & Mediation Procedures 14 (2022), https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf.

Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures provides that: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS,

There is no doubt that the Court must respect the decision of the parties to a contract to delegate questions of arbitrability to the arbitrator. *See, e.g.*, *Henry Schein*, 586 U.S. at 65, 71; *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021) (concerning delegation of arbitrability issues to an AAA arbitrator); *Patton v. Johnson*, 915 F.3d 827, 835-36 (1st Cir. 2019) (concerning delegation of arbitrability issues to a JAMS arbitrator).

But again, as the First Circuit has emphasized, this level of deference extends only to the *parties to the arbitration agreement*. *Morales-Posada*, 141 F.4th at 309 ("Cultural Care appears to be contending that we must enforce the claimed delegation agreement in the ICL Contract as we would enforce a delegation agreement in an ordinary case involving both of the parties to the contract containing that agreement. But the ICL Contract embodies no decision reached between the only parties to this suit -- Cultural Care and the plaintiffs. Thus, Cultural Care's request that we enforce the delegation agreement in the ICL Contract is not a request that we respect the *parties'* decision as embodied in the contract." (emphasis in original) (internal quotations and citations omitted)). As a nonsignatory to the TPP-PBM contracts, CVS must *first* establish, to the Court's satisfaction, that it has the right to

---

Comprehensive Arbitration Rules & Procedures (2021), https://www.jamsadr.com/rules-comprehensive-arbitration.

Section 4.1(a) of the AHLA Rules of Procedure for Commercial Arbitration provides that: "An arbitrator has the power to: determine his or her jurisdiction, powers, and duties under an arbitration clause." Am. Health L. Ass'n, Rules of Procedure for Commercial Arbitration (2025), https://www.americanhealthlaw.org/dispute-resolution-services/arbitration/rules-of-procedure-for-arbitration/commercial-arbitration.

nonsignatory enforcement, and it must do so *before* it can benefit from the language contained in the contracts' underlying arbitration agreements and their applicable arbitral rules. *Id.* at 309-10.

The Court also finds it unlikely that this is a "low bar" that CVS must meet, as the company suggests. ECF No. 271 at 9; *see also id.* at 8 (arguing that the requisite showing is "modest," "a low standard," and "quite easy to meet"). Quite the contrary, the First Circuit recognized that establishing nonsignatory enforcement is a "complex issue" that requires "serious effort" on the part of the nonsignatory. *Morales-Posada*, 141 F.4th at 311 (quoting *Rivera-Corraliza v. Morales*, 794 F.3d 208, 224 (1st Cir. 2015)). After all, the nonsignatory must "overcome" the "general rule that a contract does not grant enforceable rights to nonsignatories." *Id.* at 310 (quoting *McCarthy*, 22 F.3d at 362).

### c.    Application of Equitable Estoppel

So again, how might CVS demonstrate that it can enforce the delegation clauses contained in the TPP-PBM contracts? As both parties agree, equitable estoppel is one such basis that permits nonsignatory enforcement of delegation clauses. ECF No. 279 at 12-13; ECF No. 283 at 5. In fact, as *Morales-Posada* made clear, equitable estoppel is one of the "'traditional principles' of contract law permit[ting] nonsignatory enforcement in a given case." 141 F.4th at 309-10 (quoting *Arthur Andersen*, 556 U.S. at 631).

In determining whether a nonsignatory is entitled to enforce a particular arbitration agreement[19] through equitable estoppel, the Supreme Court has instructed courts to apply the equitable estoppel principles under the state law that governs the agreement. *See Arthur Andersen*, 556 U.S. at 632; *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (recognizing that a nonsignatory may rely on "state-law equitable estoppel doctrines to enforce an arbitration agreement"). Notably, because this class action encompasses thousands of contracts that implicate the law of dozens of states, the Court must conduct the equitable estoppel analysis on a state-by-state basis.

The parties disagree over how the Court should proceed. CVS claims that the state-by-state analysis will be a "complex[ ] … endeavor" that risks undermining the "predominance" requirement of the class action under Rule 23 of the Federal Rules of Civil Procedure. ECF No. 279 at 17. If the Court proceeds with the equitable estoppel analysis, CVS has requested a supplemental briefing schedule so that it can submit its positions on each state's law. *Id.* at 17 n.12. Plaintiffs counter and assert that CVS is "invent[ing] complexity where none exists," and the Court can decide the question of nonsignatory enforcement itself without further delay. ECF No. 283 at 7.

Plaintiffs have the better of the argument. Judge Smith previously contemplated issues of predominance when he first certified this class in 2021. *See* ECF No. 179 at 216, 219-20. The Court's certification order expressly noted that

---

[19] Though the Court uses the term "arbitration agreements" here, it is important to note that "[a] delegation clause is merely a specialized type of arbitration agreement." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 112 (2019).

"variations in the underlying state law claims do *not* undermine Plaintiffs'
certification efforts." *Id.* at 220 (emphasis added). The Court observed that the
present case is "not unlike numerous other nationwide class actions that courts have
certified." *Id.* (citing *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 375-
76, 406-07 (D.R.I. 2019) (certifying class action brought under numerous state laws
and analyzing viability of pharmaceutical antitrust claims under those state
statutes)). That point remains the same here. For the purposes of this order, that
the Court needs to analyze the equitable estoppel principles of various states does not
undermine Rule 23's predominance requirement.

Fortunately, the Court need not start its equitable estoppel analysis from
scratch. As Plaintiffs note, the parties have already done the heavy lifting of
identifying, in table form, the governing state law for each contract that Caremark
and MedImpact have with TPP absent class members. ECF No. 283 at 3 n.8 (citing
ECF Nos. 212-2, 254-2). The Court has reviewed those tables and can confirm that
the contracts with delegation clauses invoke the law of 33 states and the District of
Columbia.

In addition, in his previous order, Judge Smith identified the equitable
estoppel tests employed by 16 of these states.[20] *See* ECF No. 238 at 8-24. To be sure,
in that order, Judge Smith was conducting the equitable estoppel analysis for the
TPP-PBR contracts that did *not* contain delegation clauses. However, as relevant

---

[20] Judge Smith also identified the equitable estoppel tests used by Alabama
and Idaho, but those states are not at issue here because none of the TPP-PBM
contracts that invoke their state laws contain delegation clauses.

here, there are TPP-PBR contracts *with* delegation clauses that apply the law of those same 16 states.

All that is left for this Court to do is to identify the equitable estoppel law of the remaining 17 states, as well as the District of Columbia. From there, the Court will group the claims into "Category 1 Claims" and "Category 2 Claims." Category 1 Claims are those claims governed by states that apply the "rely on" test[21] and/or "concerted misconduct" test[22] for equitable estoppel. *See* ECF No. 238 at 9-11, 21-22. As will be explained in more detail below, CVS is entitled to enforce the delegation clauses associated with these claims, and these claims must therefore be dismissed from this lawsuit.

By contrast, Category 2 Claims are those claims governed by states that employ the "detrimental reliance" test,[23] or that preclude nonsignatories from enforcing arbitration agreements absent language in the agreements that expressly contemplates nonsignatory enforcement. *See* ECF No. 238 at 14, 22-23. As discussed

---

[21] Under the "rely on" test, "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

[22] Under the "concerted misconduct" test, "equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson*, 210 F.3d at 527 (quoting *MS Dealer*, 177 F.3d at 947).

[23] Under the "detrimental reliance" test, a claim of equitable estoppel exists where the nonsignatory shows that it "detrimentally relied on the statements or conduct of the party signatory to an arbitration agreement who seeks to avoid arbitration with the [nonsignatory]." *Andreoli v. Comcast Cable Commc'ns Mgmt., LLC*, No. 3:19-cv-00954 (JAM), 2020 WL 1242919, at *4 (D. Conn. Mar. 16, 2020).

below, CVS is *not* entitled to enforce the delegation clauses associated with these claims. These claims can therefore proceed in court.

### i. Category 1 Claims

As noted by Judge Smith, 12 of the states at issue in this case apply a combination of the "rely on" and/or "concerted misconduct" tests: California, Delaware, Florida, Georgia, Hawaii, Iowa, Massachusetts, New York, Ohio, Tennessee, Texas, and Virginia. *See, e.g.*, *Pac. Fertility Cases*, 301 Cal. Rptr. 3d 611, 616, 619-21 (Cal. Ct. App. 2022) (applying both tests); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. Civ.A.2037-N, 2006 WL 2473665, at *5-6 (Del. Ch. Aug. 22, 2006) (applying "concerted misconduct" test); *Greene v. Johnson*, 276 So. 3d 527, 530-31 (Fla. Dist. Ct. App. 2019) (applying "concerted misconduct" test); *Ord. Homes, LLC v. Iverson*, 685 S.E.2d 304, 310 (Ga. 2009) (applying both tests); *Luke v. Gentry Realty, Ltd.*, 96 P.3d 261, 268 (Haw. 2004) (applying both tests); *Wells Enters., Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 746, 748-50 (N.D. Iowa 2012) (applying "rely on" test); *Machado v. System4 LLC*, 28 N.E.3d 401, 409-13 (Mass. 2015) (applying both tests); *Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S.2d 410, 415 (N.Y. Sup. Ct. 2005) (applying both tests); *Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp. 3d 506, 512-13 (S.D. Ohio 2021) (recognizing both but applying "rely on" test); *Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M201602382COAR3CV, 2017 WL 5665410, at *10, *14-15 n.12 (Tenn. Ct. App. Nov. 27, 2017) (recognizing both but applying "rely on" test); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527-28 (Tex. 2015) (applying "rely on" test); *Decisive Analytics Corp. v. Chikar*,

No. CL 2008-6171, 2008 WL 6759965, at *5-8 (Va. Cir. July 15, 2008) (recognizing both but applying "rely on" test).

This Court has confirmed that an additional 15 states, as well as the District of Columbia, employ a combination of the "rely on" and/or "concerted misconduct" tests: Arizona, the District of Columbia, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, Nevada, North Carolina, Pennsylvania, Rhode Island, South Dakota, Utah, Washington, and West Virginia.[24] *See, e.g.*, *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125, 134-35 (Ariz. Ct. App. 2012) (applying "rely on" test); *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 98-99 (D.D.C. 2014) (applying "rely on" test); *Orvil Nelson & Co., Inc. v. All Am. Homes of Tenn.*, No. 5:07-cv-239, 2008 WL 11347938, at *6 (E.D. Ky. April 3, 2008) (recognizing both but applying "concerted misconduct" test); *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 82 So. 3d 473, 478 (La. Ct. App. 2011) (applying "rely on" test); *Case Handyman and Remodeling Servs., LLC v. Schuele*, 959 A.2d 833, 844 (Md. App. Ct. 2008), *vacated sub nom. on other grounds*, *Schuele v. Case Handyman & Remodeling Servs., LLC*, 989 A.2d 210 (Md. 2010) (applying "rely on" test); *Vascular Mgmt. Servs. of Novi, LLC v. EMG Partners, LLC*, No. 360368, 2023

---

[24] Regarding the "rely on" test, some states do not expressly refer to their tests by that name. Washington State, for example, refers to its test as "intertwined claims estoppel." *David Terry Invs.*, 463 P.3d at 124. Ohio calls its test "alternate estoppel theory." *I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 8 (Ohio Ct. App. 2004). Pennsylvania's equitable estoppel rule uses "inextricably entwined" language. *White v. Sunoco, Inc.*, 870 F.3d 257, 263 n.5 (3d Cir. 2017) (applying Pennsylvania law). However, a close review of each of these tests shows that they command the same result as the "rely on" test.

WL 2436801, at *9 (Mich. Ct. App. Mar. 9, 2023) (applying "rely on" test); *Litke v. Home Heritage Holdings, LLC*, No. 49-CV-24-120, 2025 WL 1554181, at *4, *7 (Minn. Ct. App. 2025) (applying both tests); *Pruteanu v. Team Select Home Care of Mo., Inc.*, No. 4:18-CV-01640-AGF, 2019 WL 7195086, at *5 n.3, *6 (E.D. Mo. Dec. 26, 2019) (applying "rely on" test); *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428, 435 (Nev. 2023) (applying both tests); *Smith Jamison Constr. v. APAC-Atl., Inc.*, 811 S.E.2d 635, 638 (N.C. Ct. App. 2018) (applying "rely on" test); *Elwyn v. DeLuca*, 48 A.3d 457, 463 (Pa. Super. Ct. 2012) (applying "rely on" test); *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 746-47 (3d Cir. 2019) (applying Pennsylvania law and, though noting that its test differs from other states, concluding that it would "produce the same result" as the "rely on" or "concerted misconduct" tests); *Defontes v. Dell Computs. Corp.*, No. C.A. PC 03-2636, 2004 WL 253560, at *9 (R.I. Super. Ct. Jan. 29, 2004), *aff'd sub nom.*, *DeFontes v. Dell, Inc.*, 984 A.2d 1061 (R.I. 2009) (applying "concerted misconduct" test); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) (applying "concerted misconduct" test); *CollegeAmerica Servs., Inc. v. W. Benefit Sols., LLC*, No. 2:11CV01208 DS, 2012 WL 1559745, at *3-4 (D. Utah May 2, 2012) (applying both tests); *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*, 463 P.3d 117, 124 (Wash. Ct. App. 2020) (applying "rely on" test); *Bluestem Brands, Inc. v. Shade*, 805 S.E.2d 805, 814 (W. Va. 2017) (applying "rely on" test).

These Category 1 Claims, which make up a portion of the Caremark and MedImpact Subclasses that Judge Smith previously ordered stayed, *see* ECF No. 238

at 8, must now be dismissed from this lawsuit. As Judge Smith previously held, the application of equitable estoppel under the "rely on" and "concerted misconduct" tests preclude litigation of those claims. *Id.* at 15-20, 22-23 ("[T]he Court finds that the TPPs … governed by [rely on/concerted misconduct] law are equitably estopped from avoiding arbitration of their claims against CVS, and those claims are DISMISSED."). These tests permit CVS to invoke equitable estoppel and enforce the delegation clauses contained in their respective TPP-PBR contracts.

Plaintiffs appear to concede that claims categorized as "Category 1 Claims" should receive the same treatment as the claims that Judge Smith previously placed into this category. *See* ECF No. 283 at 3 n.8 (stating that "the analysis turns on which state law governs the contract, and which equitable estoppel doctrine is applied by that state," and that states can be grouped into a category that uses "the 'rely on' and/or concerted misconduct' tests"); *see also* ECF No. 273 at 17.

Accordingly, the Court will lift the stay and remove from the Caremark and MedImpact Subclasses the claims of absent TPP class members with delegated arbitration agreements governed by the law of the following 28 jurisdictions: Arizona, California, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia. These claims are DISMISSED.

ii.    Category 2 Claims

Turning now to the Category 2 Claims, Judge Smith previously observed that 4 states apply the "detrimental reliance" test for equitable estoppel: Colorado, Illinois,[25] Indiana, and New Jersey.  *See, e.g.*, *Santich v. VCG Holding Corp.*, 443 P.3d 62, 63-65 (Colo. 2019); *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 541 (Ill. App. Ct. 2004); *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 525 (Ind. 2021); *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 858 (N.J. 2013).

The Court has confirmed that one additional state at issue in this case, Wisconsin, employs the "detrimental reliance" test for equitable estoppel.  *See Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 934 (E.D. Wis. 2014); *see also*

---

[25] The parties devote a sizable portion of their briefs to debating which test is applied by Illinois in particular.  *See* ECF No. 269-1 at 10-11, 16; ECF No. 274 at 13-15; ECF No. 283 at 7-8.  This is not surprising given that more than 1,700 of the contracts at issue in this case are governed by Illinois law.

CVS argues that the "detrimental reliance" test does not apply under Illinois law because the Illinois Supreme Court has not definitively held that that is the test to be used for nonsignatory enforcement of an arbitration agreement under a theory of equitable estoppel.  ECF No. 269-1 at 10-11.  While it is true that the Illinois Supreme Court has not made such a determination, the First Circuit has endorsed the following of "the decisions of state intermediate appellate courts in the absence of convincing evidence that the state's highest court would decide otherwise."  *Torres-Ronda v. Nationwide Mut. Ins. Co.*, 18 F.4th 80, 84 (1st Cir. 2021) (citing *Candelario Del Moral v. UBS Fin. Servs. Inc. of P.R.*, 699 F.3d 93, 103 n.7 (1st Cir. 2012)).

In this case, the Appellate Court of Illinois has held that the "detrimental reliance" test applies under Illinois law.  *See Ervin*, 812 N.E.2d at 541.  Not only that, the Seventh Circuit, in interpreting Illinois law, has stated that "the Illinois Supreme Court has reaffirmed its longstanding detrimental reliance standard in equitable estoppel claims…. We hardly need to predict where it stands."  *Sosa v. Onfido, Inc.*, 8 F.4th 631, 641 (7th Cir. 2021) (citing *In re Scarlett Z.-D.*, 28 N.E.3d 776, 785 (Ill. 2015)).  Accordingly, the Court is satisfied with its determination that the "detrimental reliance" test applies under Illinois law.

*Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017) (applying Wisconsin law).

The Court has also concluded that the state of Oregon applies a different approach that requires placing the language of the arbitration agreement at the "center of the inquiry." *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796, 805 (Or. Ct. App. 2010). Oregon permits nonsignatories to invoke arbitration only where the language of the arbitration agreement is "broad enough to encompass claims against nonsignatories and to support the interpretation that the parties intended that [nonsignatories] could avail themselves of its terms."[26] *Id.*; *see also Berger v. DIRECTV, Inc.*, No. 3:14-cv-01661-PK, 2015 WL 5686894, at *4 (D. Or. Sept. 22, 2015).

These Category 2 Claims make up the other portion of the Caremark and MedImpact Subclasses that Judge Smith previously ordered stayed. *See* ECF No. 238 at 8. However, unlike the Category 1 Claims, Judge Smith concluded that these claims could proceed in federal court because CVS had not shown detrimental reliance and because the contracts at issue did not contemplate nonsignatory enforcement of the contracts' ADR provisions. *Id.* at 14, 23. As such, CVS could not

---

[26] This test closely resembles the one used by Alabama, which Judge Smith noted applied a different approach from the other equitable estoppel tests. *See* ECF No. 238 at 22 (citing *Smith v. Mark Dodge, Inc.*, 934 So.2d 375, 380-81 (Ala. 2006) (requiring, under Alabama law, that arbitration agreements contain "sufficiently broad language that indicates that the nonsignatory was contemplated as a party")). Again, Alabama is not at issue here because none of the TPP-PBM contracts that invoke Alabama law contain delegation clauses.

compel the TPPs with Category 2 Claims to arbitrate their disputes. This Court reaches the same conclusion.

Accordingly, the Court will lift the stay and remove from the Caremark and MedImpact Subclasses the claims of absent TPP class members with delegated arbitration agreements governed by the law of the following 6 jurisdictions: Colorado, Illinois, Indiana, New Jersey, Oregon, and Wisconsin. These claims may proceed.

In addition, because all absent TPP class members have been removed from the Caremark and MedImpact Subclasses, the Court will eliminate the Subclasses.

## II.    CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' Motion (ECF No. 273). Upon reconsideration of its prior Arbitration Orders, *see* ECF No. 238; Text Order (Feb. 14, 2025), the Court will modify its rulings as follows:

- The Court's earlier stay is LIFTED;

- The claims of TPPs with delegated arbitration agreements governed by Arizona, California, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia law are DISMISSED;

- The claims of TPPs with delegated arbitration agreements governed by Colorado, Illinois, Indiana, New Jersey, Oregon, and Wisconsin law may proceed; and

- The Caremark and MedImpact Subclasses are ELIMINATED.[27]


IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

February 3, 2026

---

[27] The Court notes that this case was filed 10 years ago this week.  As the Reverend Dr. Martin Luther King, Jr. stated in his *Letter from Birmingham Jail*: "We must come to see, with one of our distinguished jurists, that 'justice too long delayed is justice denied.'"  Martin Luther King, Jr., *Letter from Birmingham Jail* (1963).  The resolution of this case is long overdue.