UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND; and INDIANA CARPENTERS WELFARE FUND, *on behalf of themselves and all others similarly situated*,<br>    Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br>    Defendant. | C.A. No. 16-cv-046-JJM-PAS |
| PLUMBERS WELFARE FUND, LOCAL 130, *on behalf of itself and all others similarly situated*,<br>    Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br>    Defendant. | C.A. No. 16-cv-447-JJM-PAS |

ORDER

I. INTRODUCTION

Last year, Plaintiffs (also known as "third-party payors" or "TPPs") in this class action filed a motion,[1] requesting that the Court reconsider its prior Arbitration

---

[1] Though styled as a "Motion to Vacate," the Court treated Plaintiffs' motion as a "Motion for Reconsideration" because Plaintiffs invoked Rule 54(b) of the Federal Rules of Civil Procedure, which authorizes courts to "reconsider" interlocutory orders "within [their] sound discretion." *Homeowner Options for Mass. Elders, Inc. v.*

Orders, which had the effect of placing some of the class members into subclasses and staying their claims. ECF No. 273[2]; *see also* ECF No. 238; Text Order (Feb. 14, 2025). On February 3, 2026, the Court entered an order (i.e., "the February 3rd Order"), granting Plaintiffs' motion, lifting the Court's earlier stay, and eliminating the previously created subclasses. ECF No. 289 at 29-30; *see also Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, Nos. 16-cv-046-JJM-PAS, 16-cv-447-JJM-PAS, 2026 WL 278704, at *13 (D.R.I. Feb. 3, 2026).

As part of the February 3rd Order, the Court also allowed the claims of some class members to proceed in federal court, while also dismissing the claims of other class members because the Court found that CVS Pharmacy, Inc. ("CVS") could compel arbitration of those claims. ECF No. 289 at 29.

Plaintiffs have now filed a Motion to Clarify the February 3rd Order, requesting that the Court address whether CVS has waived its right to arbitrate the claims of class members that have been dismissed from this class action. *See* ECF No. 290 at 2. That motion is GRANTED, and the Court will now undertake the waiver analysis.[3]

---

*Brookline Bancorp, Inc.*, 789 F. Supp. 2d 242, 243 (D. Mass. 2011) (quoting *Campos v. P.R. Sun Oil Co., Inc.*, 536 F.2d 970, 972 n.6 (1st Cir. 1976)). Because the Arbitration Orders were interlocutory in nature, the Court acted within its discretion to "reconsider" those orders. *See Braintree Lab'ys, Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 43 (1st Cir. 2010).

[2] All ECF Nos. in this order correspond with the lead case number, No. 16-cv-046-JJM-PAS.

[3] This is not the first time the Court has engaged in a waiver analysis in this case. As part of the Court's 2021 class certification order, the Court also analyzed whether Caremark, one of the pharmacy benefit managers ("PBMs") involved in this case, had waived its right to arbitration through its litigation conduct. *See* ECF

2

## II. ANALYSIS

### A. Whether CVS Waived Its Ability to Compel Arbitration

The waiver analysis begins by asking "whether a valid arbitration clause exists, whether the movant is entitled to invoke the clause, whether the non-moving party is bound by it, and whether the clause covers the claims asserted." *FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (citing *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)).

The Court has determined, not only that valid arbitration clauses exist here, but also that CVS is entitled to arbitrate several of those claims. *See* ECF No. 289 at 29. Specifically, CVS may arbitrate the claims of TPPs with delegated arbitration agreements governed by Arizona, California, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia law. ECF No. 289 at 29. This is so because CVS may enforce the agreements under a theory of equitable estoppel. *Id.* at 19-26.

Not so fast, say the Plaintiffs. They argue that the Court should determine whether CVS has nevertheless waived its ability to compel arbitration of those claims through its litigation conduct. ECF No. 290 at 2. As relevant here, the party arguing

---

No. 14-19. As the Court concluded, Caremark had not waived its right to arbitrate, and, in any event, the Court later dismissed Caremark from this lawsuit entirely. *See* ECF No. 238 at 4-5.

waiver by conduct bears the burden of proving waiver. *See Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 64 (1st Cir. 2021).

Generally, there is a "strong presumption *against* inferring waiver—so strong that any 'reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration.'" *Id.* (emphasis in original) (quoting *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005)); *see also FPE Found.*, 801 F.3d at 29 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)). "Such an approach is consistent with a liberal federal policy favoring arbitration." *FPE Found.*, 801 F.3d at 29 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

To determine whether a party has waived its ability to compel arbitration through its litigation conduct, courts consider the following non-exclusive factors:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; [and] (5) whether discovery not available in arbitration has occurred[.]

*Id.* (quoting *Restoration Pres. Masonry v. Grove Eur., Ltd.*, 325 F.3d 54, 60-61 (1st Cir. 2003)). "[N]o one factor dominates the analytical framework for determining whether a party has implicitly waived its right to arbitrate." *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir. 2004). The key consideration is whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022).

4

Here, Plaintiffs argue that CVS has waived its right to arbitrate because CVS has been litigating this case in federal court for several years, which Plaintiffs claim is shown by the numerous motions CVS has filed here.[4]  ECF No. 273 at 19, 20. Plaintiffs assert that "CVS did not attempt to arbitrate until late 2023," and they claim that CVS has therefore engaged in a "long delay" such that waiver is warranted. *Id.* at 20, 21.

To be sure, CVS did not move to exclude from the class the claims of Plaintiffs whose contracts contain arbitration agreements until November 10, 2023.  *See* ECF No. 213-1.  However, to claim that CVS did not attempt to arbitrate until then ignores the circumstances leading up to the filing of CVS's motion.

Dating back to 2019, CVS has consistently expressed its desire to arbitrate the claims involved in this case.  In its opposition to class certification,[5] CVS stated as follows: "If any proposed class is certified, Defendants will file motions seeking to arbitrate the claims of class members with arbitration agreements."  ECF No. 130-1 at 53.  Back then, CVS observed that whether it could compel arbitration "would

---

[4] Plaintiffs argue that CVS has "pulled just about every litigation lever possible," including:

> moving to dismiss; moving to certify a question to the Indiana Supreme Court; answering the complaint; opposing leave to amend the complaint (with a sur-reply); opposing class certification (with a sur-reply); appealing the class certification decision; filing a confidential arbitration award from an unrelated case on the docket to influence the judge; and opposed the form of notice to the class.

ECF No. 273 at 20-21 (citing ECF Nos. 13, 24, 38, 60, 63, 128, 156, 184, 187, 197).

[5] Both CVS and Caremark filed this opposition to class certification.  *See* ECF No. 130-1.  However, as previously stated, the Court later dismissed Caremark from this lawsuit.

5

require an individualized analysis of thousands of contracts to determine which class members agreed to arbitrate and which of the arbitration agreements covers the claims in this case." *Id.* at 54. Rather prophetically, CVS predicted that "Defendants' arbitration rights also will implicate complex questions of equitable estoppel," and that "[w]hether equitable estoppel applies will present an individual question of state law that must be answered for each class member based on varying factors, including the language of the class member's particular arbitration agreement." *Id.*

The Court also contemplated arbitration once it certified this class in 2021. The certification order provides in relevant part that, because some class members may be subject to mandatory arbitration, "Defendants may pursue … motions to compel arbitration and/or dismiss following class certification, and the Court will employ the procedural tools at its disposable to exclude those TPPs from the class or place them in a subclass." ECF No. 179 at 58-59.

Following certification, the parties engaged in a months-long discovery process, which, as relevant here, produced several thousands of contracts containing arbitration agreements. In a joint status report filed with the Court on October 20, 2023, CVS again expressed its intent to pursue arbitration: "CVS [intends] … to dismiss the claims of certain absent class members whose contracts with Caremark contain alternative dispute resolution provisions." ECF No. 209 at 9. CVS noted that "[t]he timing and substance of these motions is appropriate because … any such motion could not have been filed and ruled upon prior to Caremark's production of the contracts containing the operative alternative dispute resolution agreements,"

6

and that "[n]ow that Caremark has produced its contracts, these arbitration motions will be properly before the Court."[6] *Id.*

At the time, Plaintiffs did not argue that CVS had waived its right to compel arbitration but that "CVS could not compel arbitration as a non-signatory to the contract."[7] *Id.* Similarly, when CVS filed its arbitration motion a month later, Plaintiffs did not raise the waiver issue in their response in opposition. ECF No. 217.

Ultimately, CVS has the better of the argument. Though this case has now been around for over 10 years,[8] CVS has consistently taken the position that it intends to pursue its arbitration rights. *See Morgan*, 596 U.S. at 419 (considering, as a key point in the waiver analysis, whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right"); *see also Jubilant Generics Ltd. v. Dechra Veterinary Prods., LLC*, No. 23-cv-00237-JDL, 2024 WL 1329714, at *4 (D. Me. Mar. 28, 2024) (declining to find waiver where a party has "consistently

---

[6] In a joint status report filed with the Court on January 31, 2024, CVS also noted its intention "to file similar arbitration-related motions after … MedImpact Healthcare Systems, Inc. … produce[s] [its] responsive contracts identifying additional class members and revealing which of them agreed to arbitrate." ECF No. 225 at 4-5. Again, Plaintiffs did not raise the waiver issue. *Id.*
CVS followed through on its promise and filed a Motion to Dismiss the claims of certain MedImpact-related absent class members. *See* ECF No. 253. Plaintiffs did not raise the waiver issue in its response in opposition to that motion either. *See* ECF No. 256.

[7] As this Court has determined, under the equitable estoppel laws of certain states, CVS is entitled to compel arbitration as a nonsignatory. *See* ECF No. 238 at 24; ECF No. 289 at 29.

[8] In fact, Plaintiffs filed an amended complaint in 2018. *See* ECF No. 81. If the Court considers the start of this lawsuit as 2018 instead of 2016, then there is only a year difference from when CVS notified Plaintiffs of its intent to pursue arbitration.

taken the position" of arbitrability). Unlike in other cases where courts have found waiver, it cannot fairly be said that CVS has "turned a blind eye" to the possibility of arbitration. *See, e.g.*, *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2014).

Additionally, to the extent Plaintiffs argue that there has been a "long delay" or that CVS has "taken advantage of judicial discovery procedures," *see* ECF No. 273 at 19-22, the Court notes that both of Plaintiffs' complaints stem from the very nature of CVS's nonsignatory status. As a nonparty to the contracts at issue here, it took quite a while for CVS to determine which of Plaintiffs' claims were subject to arbitration agreements and which were not. The discovery process was therefore essential in producing the relevant contracts such that CVS could follow through on its desire to pursue arbitration. *See In re Intuniv Antitrust Litig.*, No. 1:16-cv-12653-ADB, 2021 WL 517386, at *9 (D. Mass. Feb. 11, 2021) (finding that, for a nonsignatory attempting to pursue arbitration, "the relevant time period [for the waiver analysis] begins when [the nonsignatory] learned of [the] arbitration agreements"). Once these contracts had been produced for CVS, the company then promptly filed its arbitration motions. *Id.* ("Upon learning of the agreements, [the nonsignatory] promptly filed its motion to compel arbitration.").

Plaintiffs also claim that the Court must consider a sixth factor in its waiver analysis—a "prejudice" factor. ECF No. 273 at 22. Specifically, Plaintiffs argue that CVS's "inconsistent positions on arbitration have caused considerable prejudice"

8

because the parties have spent significant resources, time, and effort going back and forth between this Court and arbitration. *Id.*

Plaintiffs' "prejudice" claim is similarly unavailing. Courts within the First Circuit used to consider in their waiver analyses "whether the party asserting waiver has suffered prejudice." *FPE Found.*, 801 F.3d at 29 (citing *Restoration Pres. Masonry*, 325 F.3d at 60-61). However, in 2022, the Supreme Court rejected consideration of prejudice in the waiver context. *Morgan*, 596 U.S. at 419. Accordingly, like other courts within the circuit, prejudice will not factor into this Court's analysis of the waiver issue. *See, e.g.*, *Buruk v. Experian Info. Sols., Inc.*, 732 F. Supp. 3d 165, 171 n.3 (D. Mass. 2024); *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 332, 342 n.3 (D. Mass. 2025).

In sum, Plaintiffs have failed to persuade the Court that CVS has waived its right to pursue arbitration. If there remain any doubts, the Court resolves them in favor of arbitration, as the First Circuit has instructed. *FPE Found.*, 801 F.3d at 29.

9

## III.  CONCLUSION

In response to Plaintiffs' Motion to Clarify the Court's February 3rd Order, *see* ECF No. 290, for the reasons stated, the Court finds that CVS has not waived its ability to arbitrate with absent class members.

IT IS SO ORDERED.

*s/John J McConnell, Jr.*
_____
John J. McConnell, Jr.
Chief United States District Judge

February 12, 2026