UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND; and INDIANA CARPENTERS WELFARE FUND, *on behalf of themselves and all others similarly situated*,<br>　　Plaintiffs,<br><br>　　v.<br><br>CVS PHARMACY, INC.,<br>　　Defendant. | No. 16-cv-046-JJM-PAS |
| PLUMBERS WELFARE FUND, LOCAL 130, *on behalf of itself and all others similarly situated*,<br>　　Plaintiff,<br><br>　　v.<br><br>CVS PHARMACY, INC.,<br>　　Defendant. | No. 16-cv-447-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiffs are third-party payors ("TPPs"), or health plans, that have brought a class action lawsuit against Defendant CVS Pharmacy, Inc. ("CVS"). In essence, Plaintiffs claim that CVS conspired with various pharmacy benefit managers

("PBMs") to defraud and overcharge Plaintiffs for prescription drugs. ECF No. 171.[1]
In 2021, the Court granted Plaintiffs' Motion to Certify this case as a class action (i.e., the "Certification Order"). ECF No. 179.

CVS has now asked the Court to amend the class to exclude the claims of class members that contracted with PBM Express Scripts.[2] *See* ECF No. 276. Plaintiffs oppose CVS's motion. *See* ECF No. 282. For the reasons explained below, the Court DENIES CVS's Motion to Amend the Class Definition.

## I. BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and the Court's previous orders in this long-running dispute. *See, e.g., Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.* (*Sheet Metal Workers I*), 221 F. Supp. 3d 227, 239-40 (D.R.I. 2016) (denying CVS's motion to dismiss); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.* (*Sheet Metal Workers II*), 540 F. Supp. 3d 182, 220 (D.R.I. 2021) (certifying this class action); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.* (*Sheet Metal Workers III*), Nos. 16-046 WES, 16-447 WES, 2024 WL 6881816, at *8 (D.R.I. May 23, 2024) (amending *Sheet Metal Workers II* and excluding the claims of

---

[1] All ECF Nos. in this order correspond with the lead case number, No. 16-cv-046-JJM-PAS.

[2] CVS's motion also seeks to exclude the claims of class members that contracted with PBM Medco. ECF No. 276-1 at 9 n.4 ("[T]he relief sought pertains to both [PBMs]."). Express Scripts acquired Medco in 2012, so the parties have generally addressed the two PBMs together. *Id.* For simplicity, whenever the Court refers to "Express Scripts" in this order, it means to refer to *both* Express Scripts *and* Medco.

2

certain class members with non-delegated arbitration agreements); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.* (*Sheet Metal Workers IV*), Nos. 16-cv-046-JJM-PAS, 16-cv-447-JJM-PAS, 2026 WL 278704, at *13 (D.R.I. Feb. 3, 2026) (modifying *Sheet Metal Workers III* on reconsideration and dismissing the claims of certain class members with delegated arbitration agreements); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.* (*Sheet Metal Workers V*), Nos. 16-cv-046-JJM-PAS, 16-cv-447-JJM-PAS, 2026 WL 394830, at *5 (D.R.I. Feb. 12, 2026) (clarifying *Sheet Metal Workers IV* and finding that CVS had not waived its right to compel arbitration).

The Court will briefly recount a few facts that are relevant to the present motion. Generally, pharmacies must report their Usual and Customary ("U&C") prices, which are the prices for generic prescription drugs that they charge to consumers at the retail level without the use of insurance. *See Sheet Metal Workers I*, 221 F. Supp. 3d at 229-30. In 2008, CVS introduced its Health Savings Pass ("HSP") program, which provided reduced pricing for generic prescription drugs to individuals who paid an annual membership fee. *Id.* at 230. Plaintiffs allege that CVS, by failing to treat its HSP prices as its U&C prices, thereafter engaged in a nationwide scheme with various PBMs to overcharge Plaintiffs for drugs. *See* ECF No. 171.

In 2021, the Court certified this case as a class action. *See Sheet Metal Workers II*, 540 F. Supp. 3d at 220. As part of its Certification Order, the Court certified four distinct classes: (1) a "Nationwide Class"; (2) an "Unjust Enrichment

3

Class"; (3) an "Unfair and Deceptive Conduct Consumer Protection Class"; and (4) an "Omissions Consumer Protection Class." *Id.* at 197. Each class definition currently begins as follows: "All health plans that, at any time between November 2008 and February 1, 2016, (1) had Caremark, L.L.C., Express Scripts, Medco, or MedImpact (or any of their predecessors) as their pharmacy benefit managers."[3] *See* ECF No. 285 at 2-4. The Court has referred to the contracts between the Plaintiff TPPs and the PBMs as "the TPP-PBM contracts."

Before going any further, there are two important things to bear in mind about this case. **First**, CVS is not a party to any of the contracts at issue in this action; as the name would suggest, the TPP-PBM contracts are just between the TPPs and the PBMs. **Second**, none of the PBMs, including Express Scripts, are a party to this litigation; this class action is solely between the TPPs and CVS.[4]

Moving on, after the Court entered its Certification Order, the parties engaged in discovery and requested that the PBMs (again, non-parties to this litigation) produce their TPP-PBM contracts. Two PBMs, Caremark and MedImpact, complied with this request. *See* ECF No. 211-1 at 1 (observing that Caremark "completed its production of contracts with those TPPs who might be members of the certified

---

[3] Each class definition previously included PBM OptumRx as well. *See Sheet Metal Workers II*, 540 F. Supp. 3d at 197. However, as of December 11, 2025, the parties have jointly stipulated to amend the class definitions to exclude the OptumRx-related claims. *See* ECF No. 285. The Court entered that stipulation a day later. *See* Text Order (Dec. 12, 2025).

[4] PBM Caremark initially was a named defendant, but the Court dismissed Caremark from this lawsuit on May 23, 2024. *See Sheet Metal Workers III*, 2024 WL 6881816, at *2.

classes"); ECF No. 253-1 at 1 (observing that MedImpact "completed its contract production related to the certified class").

PBM Express Scripts, however, has so far refused to produce any of its TPP-PBM contracts. *See* ECF No. 276-1 at 16. In 2023, both Plaintiffs and CVS moved to compel Express Scripts to produce its contracts in the U.S. District Court for the Eastern District of Missouri, where Express Scripts is based. *See Sheet Metal Works Local No. 20 Welfare & Benefit Fund v. Express Scripts, Inc.*, No. 4:23-mc-1075-HEA (E.D. Mo. Sept. 22, 2023). The status of that case still remains pending at this time.[5]

Last year, CVS moved to amend the class to exclude the claims of Plaintiffs that contracted with Express Scripts. ECF No. 276. CVS argues that, because Express Scripts has failed to produce its contracts, then the class definitions must be modified to omit the Express Script-related claims. *Id.* at 3. CVS's proposed amendment reads as follows: "All health plans that, at any time between November 2008 and February 1, 2016, (1) had Caremark, L.L.C. or MedImpact (or any of their predecessors) as their pharmacy benefit managers." *Id.* at 19 n.8. Plaintiffs object to amending the class definitions. *See* ECF No. 282.

Since that motion was filed, Plaintiffs have filed a notice, informing the Court that Express Scripts produced a "data dictionary" to Plaintiffs' damages expert, Dr.

---

[5] Though the Missouri federal court initially granted the parties' motion to compel Express Scripts to produce its TPP-PBM contracts, Express Scripts later filed a motion for reconsideration, which the court has yet to rule on. *See* ECF No. 276-1 at 16. Plaintiffs have since withdrawn their motion to compel. ECF No. 295 at 3. CVS, however, continues to actively pursue the motion. ECF No. 302 at 3.

Rena Conti,[6] which allowed her to identify those class members that had contracted with Express Scripts by using the criteria identified by the Court in its Certification Order. ECF No. 295 at 2-3. As such, Plaintiffs now contend that Express Scripts' contract production is no longer necessary. *Id.* at 3. CVS has filed a response to this notice, disputing Plaintiffs' assertion and arguing that it still requires Express Scripts' TPP-PBM contracts. ECF No. 302 at 3.

## II. LEGAL STANDARD

Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "Indeed, it is not uncommon to defer final decision on certifications pending completion of relevant discovery." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 26-27 (1st Cir. 2008).

"When a party—typically the plaintiff—moves for class certification, it bears the burden of establishing that its claim satisfies each element of Rule 23(a)." Herbert B. Newberg & William B. Rubenstein, 3 Newberg & Rubenstein on Class Actions § 7:39 (6th ed. Dec. 2025 update). However, when a party—typically the

---

[6] When this class was first certified, Dr. Conti was the same expert who assured the Court that the methods to be used to identify class members and demonstrate liability were reliable and methodologically sound. *See Sheet Metal Workers II*, 540 F. Supp. 3d at 202-03, 217.

defendant—later moves for decertification or modification of the class, courts within the First Circuit have held that the movant bears the burden of proving that the class no longer meets the requirements of Rule 23.[7] *See id.*; *cf. Barrett v. Option One Mortg. Corp.*, No. 08-10157-RWZ, 2012 WL 4076465, at *2 (D. Mass. Sept. 18, 2012) (holding that, under Rule 23(c)(1)(C), [t]he moving party bears the burden of showing that decertification is proper"); *Donovan v. Philip Morris USA*, No. 06-12234-DJC, 2012 WL 957633, at *4 (D. Mass. Mar. 21, 2012) (same).

Decertifying or redefining the scope of a class is viewed as a "drastic" step and should only be done where a movant has met their "heavy burden" of proving the necessity of taking such a step. *Donovan*, 2012 WL 957633, at *4 (citing *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571(RJH)(HBP), 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009)). "In assessing whether class certification remains viable, the Court must consider not only developments of the factual record but also any

---

[7] Some courts in other circuits considering motions for decertification or modification have held that the party that initially sought certification continues to bear the burden to prove that certification remains appropriate. *See, e.g., Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 984-85 (E.D. Cal. 2020) ("Although plaintiffs are the non-moving party, as the party seeking to maintain class certification, they nonetheless 'bear[ ] the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'"); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 644 (N.D. Okla. 2011) (holding that the plaintiffs "have met the burden … to survive defendants' motion to decertify the class").

Other courts acknowledge that "[t]he question of which party has the burden on a motion to decertify a previously certified class is not settled." *Walney v. SWEPI LP*, No. 13-102 Erie, 2019 WL 1436938, at *3 n.3 (W.D. Pa. Mar. 31, 2019) (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, Nos. 06-1782, 03-4730, 06-4305, 06-4114, 06-4115, 2017 WL 275398, at *34 (E.D. Pa. Jan. 18, 2017)).

newly announced legal precedent." *Loef v. First Am. Title Ins. Co.*, No. 2:08-cv-311-GZS, 2012 WL 6113844, at *1 (D. Me. Dec. 10, 2012).

## III. DISCUSSION

Consistent with the decisions of its sister courts, this Court will place the burden on CVS to show that modification of the class definition to exclude Express Scripts-related claims is necessary. *Barrett*, 2012 WL 4076465, at *2; *Donovan*, 2012 WL 957633, at *4. In its motion, CVS advances three arguments, each of which center on Express Scripts' failure thus far to produce its TPP-PBM contracts: (1) without the contracts, the parties will be unable to identify the individuals that meet the criteria for class membership; (2) without the contracts and the "generic effective rate" ("GER") clauses[8] contained in those contracts, the parties will be unable to properly assess liability; and (3) without the contracts and the "alternative dispute resolution" ("ADR") provisions[9] contained in those contracts, the parties will be unable to

---

[8] A GER clause "guarantees that a TPP will receive an average percentage discount off a benchmark price (e.g., average wholesale price) for all drugs in a category (e.g., all generic drugs) for a specified period of time (e.g., one calendar year)." *Sheet Metal Workers I*, 540 F. Supp. 3d at 213. "In practice, it looks something like this: a PBM guarantees its contracting TPP that it will receive an average discount of 70% off the average wholesale price ("AWP") for generic prescription drugs for calendar year 2021." *Id.* "For any one generic drug, the TPP's discount may be higher than 70%.... But in the aggregate, the health plan is entitled to a 70% (or greater) discount off AWP for generic drugs." *Id.* "In this example, if the TPP paid more than 30% of AWP for the generic drugs purchased in 2021, the PBM would issue a reconciliation payment to make up the difference." *Id.*

[9] An ADR provision is a provision in a contract that permits a party to that contract (or, in some cases, a nonparty) to compel the other party to take their dispute out of federal court and into arbitration or mediation. *See Sheet Metal Workers III*, 2024 WL 6881816, at *2; *Sheet Metal Workers IV*, 2026 WL 278704, at *2.

8

determine which claims must be sent to arbitration or mediation. *See* ECF No. 276-1 at 21-28. The Court will address each argument in turn.

### A.     Ascertainability Requirement

CVS first argues that the class, as presently constituted, raises ascertainability concerns. *See* ECF No. 276-1 at 21-23. The First Circuit has explained that "the definition of the class must be 'definite,' that is, the standards must allow the class members to be ascertainable." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (internal citations omitted). CVS claims that, without the contracts from Express Scripts, Plaintiffs have no way of identifying which class members have Express Scripts-related claims. ECF No. 276-1 at 22 ("It all depends on the contracts.").

CVS's position is unpersuasive, especially given that the Court already addressed this exact issue in its Certification Order. *See Sheet Metal Workers II*, 540 F. Supp. 3d at 202-205. Back in 2021, CVS argued that there was no manageable way to identify which TPPs belonged in the class and asserted that "to determine class membership, one would need to review thousands of contracts." *Id.* at 203. At the time, Plaintiffs countered and stated that class members could be identified, not only from the TPP-PBM contracts themselves, but also from "existing PBM data." *Id.* at 204. Plaintiffs proposed that their expert, Dr. Conti, could develop and deploy a computer program using electronic claims data maintained by the PBMs for each TPP to identify those who would be properly included in the putative class. *Id.* Plaintiffs also offered that, "[a]s a fallback position, if the PBMs fail[ed] to produce the requisite

9

data," then they would "review each of the contracts … [to] determine whether each contract indicated 'presumptive class membership.'" *Id.*

In its Certification Order, the Court approved of Plaintiffs' methodology, stating that it was "satisfied that Plaintiffs have demonstrated an administratively feasible method by which to determine which TPPs" belong in the class. *Id.* Indeed, the Court expressly endorsed Plaintiffs' approach of using *either* contracts *or* datasets to identify class members. *Id.* ("At bottom, whether a health plan or TPP is a member of the proposed class is objectively ascertainable from either documents (i.e., contracts) or datasets.").

Since then, Express Scripts has produced a "data dictionary" to Dr. Conti, which has allowed her to identify class members with Express Scripts-related claims "without the need for any contract review." ECF No. 295 at 2-3.[10] That Express Scripts has not yet produced its TPP-PBM contracts is beside the point. The Court viewed contract production as merely a "fallback position" and endorsed Dr. Conti's use of datasets. *Sheet Metal Workers II*, 540 F. Supp. 3d at 204. CVS is simply attempting to relitigate[11] ascertainability, but five years later, Plaintiffs have done

---

[10] Dr. Conti's report has been filed under seal and can be found at ECF No. 296.
[11] As before, the Court notes that this case was previously assigned to Judge William E. Smith but was later transferred to the current presiding judge after Judge Smith's retirement from judicial service. *Sheet Metal Workers IV*, 2026 WL 278704, at *2 n.8. As at least one federal court of appeals has observed, the transfer of a case to a new judge does not open the door for a litigant to have a second bite of the apple. *See Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993) ("Litigants have a right to expect that a change in judges will not mean going back to square one. The second judge may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so … merely because he has a different view of the law or facts from the first judge.").

exactly what was expected of them. The Court therefore remains satisfied that Plaintiffs meet the ascertainability requirement.

### B. Predominance Requirement

CVS next argues that Plaintiffs cannot prove liability—neither injury nor damages—without Express Scripts' TPP-PBM contracts and their accompanying GER clauses. ECF No. 276-1 at 23-28. CVS contends that such issues risk undermining Rule 23(b)(3)'s predominance requirement, which requires a court to "find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* at 23 (quoting Fed. R. Civ. P. 23(b)(3)).

With respect to predominance, where a putative class action raises individual issues for adjudication, a class may be certified only if "the proposed adjudication will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'" *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018) (quoting *Nexium*, 777 F.3d at 19). Thus, before certifying a class, a court must "offer a reasonable and workable plan for how that opportunity will be provided in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *Id.* at 58.

#### 1. Injury

First, with respect to CVS's injury argument, the Court has previously stated that "each alleged injury [in this class action] stems from an overcharge paid by a TPP as a result of an inflated U&C price." *Sheet Metal Workers II*, 540 F. Supp. 3d

11

at 214. When CVS initially opposed class certification, it argued that it was necessary to review each of the TPP-PBM contracts because it viewed the GER clauses contained in those contracts as "negat[ing] injury in fact and/or any damages from alleged overstated U&C prices." *Id.* at 213. However, the Court later concluded that "GERs are not relevant to putative class TPP injury in fact." *Id.* This was so because the injuries Plaintiffs allege fully accrued when each claim was adjudicated and paid; they did not occur, by contrast, at a future point when some Plaintiffs (but not all) may have received GER reconciliation payments. *Id.* at 214. Five years later, CVS maintains that GER data is "essential" to prove injury, *see* ECF No. 284 at 6, but this Court's opinion remains unchanged on this issue.

But the contracts still remain relevant for identifying those Plaintiffs who were or were not entitled to "lower-of U&C pricing," so says CVS. ECF No. 276-1 at 10, 24. Recall that, to fall within the class, "a TPP or health plan must have been entitled to 'lower-of U&C pricing' … during the class period." *Sheet Metal Workers II*, 540 F. Supp. 3d at 203. "Lower-of pricing provides that, for specified prescription drugs, a TPP will pay the lowest of several pricing metrics, often including the U&C." *Id.* In other words, CVS cannot be held liable to those Plaintiffs who were not entitled to "lower-of U&C pricing," *see id.* at 207, but CVS argues that "there is no way" for it to challenge liability as to each Plaintiff without reviewing each contract for its lower-of U&C pricing language. ECF No. 276-1 at 25; *see also* ECF No. 284 at 17-18.

Once again, this is an issue previously contemplated by the Court in its Certification Order—and not one that requires modification of the class. Back then,

12

Plaintiffs had demonstrated to the Court that, through their expert, they were "capable of using algorithms, or undertaking contract-by-contract review, to identify the universe of lower-of U&C pricing." *Sheet Metal Workers II*, 540 F. Supp. 3d at 208. Indeed, Dr. Conti purports to have done just that: she has since produced an expert report, which explains that Express Scripts has provided a data dictionary that has allowed her to identify the Express Script-related claims "with U&C in the lower of formula." ECF No. 295 at 2. Of course, if this case proceeds to trial, a jury will determine whether this evidence is sufficient to prove that CVS is liable for the Express Scripts-related claims. For now, however, this is not a valid reason to exclude those claims from this class action.

### 2. Damages

The Court's Certification Order also addressed any concerns relating to the calculation of damages. *See Sheet Metal Workers II*, 540 F. Supp. 3d at 215-219. With respect to whether damages will be offset by GER reconciliation payments, the Court approved of Dr. Conti using two types of methods to incorporate GER offsets into her damages calculation: either a calculation involving reconciliation payment data or, in the alternative, a calculation involving the review of "all PBM contracts for a range of annual GER guarantees and [the identification of] each PBM's highest GER guarantee for each year." *Id.* at 215-16. The Court was assured that either method would be a "'reasonable and workable plan' for determining the effect of a GER on the putative class members' damages 'that is protective of the [CVS's]

constitutional rights and does not cause individual inquiries to overwhelm common issues.'" *Id.* at 216 (quoting *Asacol*, 907 F.3d at 58).

At least with regard to the Express Script-related claims, Plaintiffs' expert appears to be using the first method contemplated by the Court. *See* ECF No. 295 at 2-3. Dr. Conti is using the data supplied by Express Scripts, *see id.*, as well as data supplied by CVS itself earlier in this litigation, *see* ECF No. 282 at 12-13, which this Court previously approved of being used as a proxy for any missing data in calculating damages. *Sheet Metal Workers II*, 540 F. Supp. 3d at 218. Based on this methodology, Dr. Conti has proceeded in producing a damages calculation, albeit a "conservative" one that likely "underestimates the overcharges attributable to [CVS's] alleged fraud." *Id.* at 218; *see* ECF No. 295 at 2-3. As the Supreme Court has observed, "[c]alculations need not be exact," but the model used to calculate damages should at least, between the class certification stage and trial, be consistent with the plaintiff's theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citing *Stroy Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). Here, Dr. Conti continues to use a method endorsed by this Court and one that is consistent with Plaintiffs' theory of liability. Thus, the Court sees no reason to amend the class definition on this basis either.

### C.   ADR Provisions

Finally, CVS argues that it has no way of determining which Express Scripts-related claims it is entitled to send to arbitration or mediation without access to Express Scripts' contracts and their accompanying ADR provisions. ECF No. 276-1

at 27-28; ECF No. 284 at 5. CVS suspects that there is likely a "significant" number of Express Scripts contracts with ADR provisions. ECF No. 276-1 at 27. Plaintiffs counter by pointing out that it is CVS that must "prove its right to invoke arbitration, especially as a nonparty to those agreements," and that "it makes little sense to decertify a class as to certain class members where the defendant failed to gather the evidence necessary to support its defenses against them." ECF No. 282 at 15-16.

The Court agrees with Plaintiffs. On this issue, the First Circuit has been clear: "a party that attempts to compel arbitration 'must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope.'" *Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 38 (1st Cir. 2019) (quoting *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017)); *see also Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 318 (1st Cir. 2025) ("A nonsignatory 'faces a steep climb' to show that it may enforce an agreement to which it is not a party, and must, as we have noted, make that showing with 'special clarity.'" (internal citations omitted)).

Thus, as the party seeking to arbitrate the Express Scripts-related claims, CVS bears the burden of seeking and obtaining the Express Scripts contracts. *See Hogan*, 914 F.3d at 38; *Morales-Posada*, 141 F.4th at 318. Indeed, after obtaining the contracts of PBMs Caremark and MedImpact, CVS successfully moved to compel arbitration of those claims once the Court found that it was entitled to nonsignatory enforcement. *See Sheet Metal Workers III*, 2024 WL 6881816, at *3-8; *Sheet Metal*

15

*Workers IV*, 2026 WL 278704, at *9-12. Here, by contrast, CVS simply cannot show that it is entitled to invoke the ADR provisions that may be contained in the Express Scripts contracts. The Court therefore sees no reason to amend the class on this ground either.

## IV. CONCLUSION

For the following reasons, the Court DENIES CVS's Motion to Amend the class to exclude the Express Scripts-related claims. ECF No. 276. The class will proceed as presently constituted.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

March 9, 2026